1   **ROBBINS GELLER RUDMAN**
        **& DOWD LLP**
2   SHAWN A. WILLIAMS (213113)
    Post Montgomery Center
3   One Montgomery Street, Suite 1800
    San Francisco, CA 94104
4   Telephone: 415/288-4545
    415/288-4534 (fax)
5   shawnw@rgrdlaw.com

6           -and-

7   **LABATON SUCHAROW LLP**
    HOLLIS SALZMAN
8   GREGORY ASCIOLLA
    140 Broadway
9   New York, NY 10005
    Telephone: 212/ 907-0700
10  212/818-0477 (fax)
    hsalzman@labaton.com
11  gasciolla@labaton.com

12  *Co-Lead Counsel for Plaintiffs and the Proposed Class*

13  [Additional counsel appears on signature page.]

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16

17  IN RE CLOROX CONSUMER                Master File No. 3:12-cv-00280-SC
18  LITIGATION                          CLASS ACTION

19  ――――――――――――――――                    **CONSOLIDATED CLASS ACTION**
                                        **COMPLAINT**
20  This Document Relates To:

21  All Actions                         **Judge: Honorable Samuel Conti**

22

23

24

25

26

27

28

1    Plaintiffs Megan Sterritt, Kristin Luszcz, Lori Kowalewski, Tina Butler-Furr, Catherine

2    Lenz, Susan Doyle, and Jose Segarra (collectively, "Plaintiffs"), by their undersigned attorneys,

3    on behalf of themselves and all others similarly situated (the "Class," as defined below), based

4    on personal knowledge as to themselves and upon information and belief as to all other matters,

5    bring this class action against The Clorox Company ("Clorox" or "Defendant") and allege as

6    follows:

7    <u>**NATURE OF THE ACTION**</u>

8    1.    Through an extensive, nationwide marketing and advertising campaign, Clorox

9    has conveyed two clear messages: (1) Clorox's Fresh Step cat litter ("Fresh Step" of "Product"),

10   which contains carbon, is more effective at eliminating cat odors than other cat litters that do not

11   contain carbon; and (2) cats "choose" Fresh Step over other cat litters due to its purported ability

12   to eliminate odors.    These messages are, in fact, false, misleading, and likely to deceive a

13   reasonable consumer.    Specifically, Clorox's Fresh Step cat litter is not more effective at

14   eliminating odors than other cat litters, and cats do not "choose" Fresh Step over other cat litters.

15   To be sure, scientific studies prove the exact opposite.[1]

16   2.    Clorox's claims that Fresh Step is superior to other cat litters is premised on its

17   false assertion that carbon-based cat litter is more effective at eliminating odors than cat litters

18   that contain other odor-eliminating ingredients, such as baking soda.  This, as Clorox is aware, is

19   simply not true.

20   3.    Despite the falsity of its claims, Clorox boasts about the purported "superiority"

21   of the odor-eliminating capabilities of carbon throughout its television advertising campaign.

22   For example, since early fall of 2010, Clorox televised a series of commercials proclaiming the

23   superior odor-eliminating properties of the carbon contained in its Fresh Step cat litter.  These

24

25

26

27   [1]    All references to "Fresh Step" or "Product" shall include all Clorox carbon-based cat
     litters.

28

CONSOLIDATED CLASS ACTION COMPLAINT - 3:12-cv-00280-SC          - 1 -

1  commercials even went so far as to portray cats "choosing" Fresh Step litter over other cat litters

2  because of the "superior" odor-eliminating carbon contained in it.

3       4.    To illustrate further, one of Clorox's initial commercials portrayed multiple cats

4  being presented with a choice between carbon-based Fresh Step or a baking soda-based cat litter,

5  and choosing Fresh Step. In the commercial, cats first sniffed the baking soda-based cat litter

6  box before stepping into it and then quickly stepping out of that litter box in favor of a nearby

7  litter box filled with Clorox's carbon-based Fresh Step cat litter, while a voiceover narrated:

8  "cats like boxes . . . with Fresh Step litter inside. That's because Fresh Step's Scoopable litter

9  with carbon is better at eliminating odor. . . . Cats know what they like."

10       5.    Likewise, a more recent Clorox commercial portrayed two laboratory beakers

11  allegedly demonstrating that the odor-eliminating properties of carbon-based Fresh Step are

12  superior to baking soda based litter. Consistent with Clorox's aforementioned "cats choose

13  Fresh Step" marketing message, a voiceover in this commercial stated that "cats are smart" and

14  "smart enough to choose the litter with less odors . . . so we make Fresh Step Scoopable litter

15  with carbon, which is more effective at absorbing odors than baking soda."

16       6.    Put simply, Clorox's marketing and advertising campaign is purposefully

17  designed to cause consumers to buy Fresh Step over other brands of cat litter by claiming that

18  Fresh Step's carbon-based litter is more effective at eliminating odor than competitors' cat litter

19  which contain other ingredients, such as baking soda, and because cats themselves "choose"

20  Fresh Step.

21       7.    The truth, however, is that Clorox's superiority representations are false,

22  misleading, and likely to deceive a reasonable consumer. Indeed, as scientific studies have

23  shown, carbon-based cat litter is not superior to other cat litters as far as odor elimination is

24  concerned, and moreover, cats do not "choose" Fresh Step cat litter over other, baking soda

25  based cat litters.

26       8.    As a result of the materially false and misleading misrepresentations conveyed

27  through Clorox's advertising and marketing campaign, Clorox has been able to charge a

28

CONSOLIDATED CLASS ACTION COMPLAINT - 3:12-cv-00280-SC     - 2 -

1  significant premium for Fresh Step.  Indeed, according to Wal-Mart's website, a 25-pound box

2  of Clorox's Fresh Step costs $10.77, or $.43 per pound, while a 25-pound box of Clorox's Scoop

3  Away cat litter brand (which does not contain odor-eliminating carbon) costs $9.37, or $.37 per

4  pound.[1]  Moreover, a 20-pound box of Arm & Hammer's Super Scoop, a baking soda-based

5  litter, costs $7.88, or $.39 per pound.

6      9.    Clorox's deceptive marketing and advertising campaign has proven to be

7  successful.  According to Clorox's most recent Form 10-K for the fiscal year ended June 30,

8  2011, Clorox attributed "increased shipments of Fresh Step cat litter" to "promotional activities"

9  and "increased merchandising events."

10     10.    Plaintiffs bring this action on behalf of themselves and other similarly situated

11 consumers who purchased Fresh Step, seeking to stop the dissemination of Clorox's false,

12 deceptive, and misleading advertising, correct the false and misleading perception Clorox has

13 created in the minds of consumers, and to obtain redress for those who have purchased Fresh

14 Step.  Herein, Plaintiffs allege violation of the Consumers Legal Remedies Act, Civil Code

15 §1750, *et seq.*, violation of the Unfair Competition Law, California Business and Professions

16 Code §17200, *et seq.*, violation of the False Advertising Law, California Business and

17 Professions Code §17500, *et seq.*, breach of express warranty, and in the alternative, unjust

18 enrichment and other state consumer protection law claims.

19                        **JURISDICTION AND VENUE**

20     11.    This Court has jurisdiction over the subject matter presented by this Complaint

21 because it is a class action arising under the Class Action Fairness Act of 2005, 28 U.S.C.

22 §1332(d).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of

23 $5,000,000.  The total number of members of the proposed Class is greater than 100.

24     12.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because Clorox's

25 principal place of business is located within the Northern District of California at 1221

26 _____

27 [1]    *See* www.Walmart.com (last visited Jan. 12, 2012).

28

1  Broadway, Oakland, California 94612, and because a substantial part of the events giving rise to

2  the claims alleged herein occurred in this District.

3       13.    The misrepresentations and unfair business practices forming the basis of the

4  claims of Plaintiffs and the Class emanated from California because: (a) Clorox's principal place

5  of business is located in California; (b) Clorox manufactures Fresh Step in California; (c) Clorox

6  regularly conducts business in California; (d) the significant decisions regarding the content and

7  distribution of the marketing and advertising at issue occurred in California; and (e) a significant

8  number of Class members are located in California.

9       14.    Furthermore, Clorox's conduct has included the systematic and continuing

10 practice of disseminating false and misleading information throughout the United States,

11 emanating from California, via pervasive commercial advertising, which was intended to induce

12 unsuspecting consumers, including Plaintiffs and the members of the Class, into purchasing the

13 more expensive Fresh Step, which does not have the benefits that Defendant represents, although

14 those purported benefits serve as the basis for consumers' decision to purchase Fresh Step as

15 opposed to other cat litter brands.

16                             **PARTIES**

17      15.    At all times relevant to this matter, Plaintiff Megan Sterritt ("Sterritt") was a

18 citizen of and continues to be a citizen of Florida.  During the class period, Sterritt was exposed

19 to and saw Clorox's marketing and advertising claims, purchased Fresh Step based on those

20 claims, and suffered injury in fact because of the unfair and deceptive trade practices described

21 herein. Sterritt did not receive the benefit of her bargain in each purchase of Fresh Step.

22 Furthermore, Sterritt paid a price premium for each purchase of Fresh Step, which she would not

23 have paid if she were aware of Defendant's deception alleged herein.

24      16.    At all times relevant to this matter, Plaintiff Kristin Luszcz ("Luszcz") was a

25 citizen of and continues to be a citizen of New York.  During the class period, Luszcz was

26 exposed to and saw Clorox's marketing and advertising claims, purchased Fresh Step based on

27 those claims, and suffered injury in fact because of the unfair and deceptive trade practices

28

1    described herein. Luszcz did not receive the benefit of her bargain in each purchase of Fresh

2    Step.  Furthermore, Luszcz paid a price premium for each purchase of Fresh Step, which she

3    would not have paid if she were aware of Defendant's deception alleged herein.

4        17.    At all times relevant to this matter, Plaintiff Lori Kowalewski ("Kowalewski")

5    was a citizen of and continues to be a citizen of New Jersey.  During the class period,

6    Kowalewski was exposed to and saw Clorox's marketing and advertising claims, purchased

7    Fresh Step based on those claims, and suffered injury in fact because of the unfair and deceptive

8    trade practices described herein.  Kowalewski did not receive the benefit of her bargain in each

9    purchase of Fresh Step.  Furthermore, Kowalewski paid a price premium for each purchase of

10   Fresh Step, which she would not have paid if she were aware of Defendant's deception alleged

11   herein.

12       18.    At all times relevant to this matter, Plaintiff Tina Butler-Furr ("Butler-Furr") was

13   a citizen of and continues to be a citizen of Texas.  During the class period, Butler-Furr was

14   exposed to and saw Clorox's marketing and advertising claims, purchased Fresh Step based on

15   those claims, and suffered injury in fact because of the unfair and deceptive trade practices

16   described herein.  Butler-Furr did not receive the benefit of her bargain in each purchase of Fresh

17   Step.  Furthermore, Butler-Furr paid a price premium for each purchase of Fresh Step, which she

18   would not have paid if she were aware of Defendant's deception alleged herein.

19       19.    At all times relevant to this matter, Plaintiff Catherine Lenz ("Lenz") was a

20   citizen of and continues to be a citizen of Texas.  During the class period, Lenz was exposed to

21   and saw Clorox's marketing and advertising claims, purchased Fresh Step based on those claims,

22   and suffered injury in fact because of the unfair and deceptive trade practices described herein.

23   Lenz did not receive the benefit of her bargain in each purchase of Fresh Step.  Furthermore,

24   Lenz paid a price premium for each purchase of Fresh Step, which she would not have paid if

25   she were aware of Defendant's deception alleged herein.

26       20.    At all times relevant to this matter, Plaintiff Susan Doyle ("Doyle") was a citizen

27   of and continues to be a citizen of California.  During the class period, Doyle was exposed to and

28

1    saw Clorox's marketing and advertising claims, purchased Fresh Step based on those claims, and

2    suffered injury in fact because of the unfair and deceptive trade practices described herein.

3    Doyle did not receive the benefit of her bargain in each purchase of Fresh Step.  Furthermore,

4    Doyle paid a price premium for each purchase of Fresh Step, which she would not have paid if

5    she were aware of Defendant's deception alleged herein.

6        21.    At all times relevant to this matter, Plaintiff Jose Segarra ("Segarra") was a citizen

7    of and continues to be a citizen of Florida.  During the class period, Segarra was exposed to and

8    saw Clorox's marketing and advertising claims, purchased Fresh Step based on those claims, and

9    suffered injury in fact because of the unfair and deceptive trade practices described herein.

10   Segarra did not receive the benefit of his bargain in each purchase of Fresh Step.  Furthermore,

11   Segarra paid a price premium for each purchase of Fresh Step, which he would not have paid if

12   he were aware of Defendant's deception alleged herein.

13       22.    Clorox is incorporated in the State of Delaware and is headquartered in Oakland,

14   California.  Clorox is registered to do business in the State of California, and regularly conducts

15   business in the State of California.  Clorox is a leading manufacturer and marketer of consumer

16   and institutional products with approximately 8,100 employees worldwide and has net sales of

17   $5.2 billion for the fiscal year 2011.  Clorox sells its products primarily through mass

18   merchandisers, grocery stores, and other retail outlets.  Clorox markets some of consumers' most

19   trusted and recognized brand names, including Fresh Step, to consumers throughout the United

20   States, including tens of thousands of consumers in the State of California.

21                              **FACTUAL ALLEGATIONS**

22       **A.    Cat Litter and the Significance of Odor Elimination**

23       23.    A litter box is an indoor feces and urine disposal receptacle for indoor cats who

24   cannot, or do not, relieve themselves outdoors.  In the wild, cats naturally excrete in soft or sandy

25   soil for easy burial.  To simulate this instinctive behavior, a litter box is filled with a soft, sand-

26   like substance known as "litter."  While at one time cat owners preferred their cats to roam

27   outside, most contemporary cat owners prefer to keep their cats indoors, as their cats may

28

1    become sick, injured, or lost while roaming outdoors.  Accordingly, the cat litter industry is a

2    huge market.  Indeed, in 2010, it was reported that the cat litter market totaled $1.8 billion.

3        24.    In the majority of these indoor-cat households, the litter box is located inside the

4    residence.  Cat waste, however, has an extremely strong and unpleasant odor, thus, eliminating

5    odor is a major concern for indoor-cat owners.  Accordingly, odor-control is a major marketing

6    hook for cat litter manufacturers, whose advertising frequently focuses on reducing or

7    eliminating odor.

8        25.    Cat litter reduces odors through one or more of the following methods: (1) the

9    litter clumps when it comes into contact with urine; (2) fragrances contained in the litter may

10   mask cat waste odors; (3) additional substances in the litter may either reduce the human

11   perception of bad odors or react with the odors to reduce their odor-like properties; and/or (4)

12   odor-fighting additives, like carbon or baking soda, neutralize and/or adsorb odors.  With respect

13   to neutralization, a chemical process occurs to eliminate the odor molecule.  Adsorption is a

14   process by which a substance binds odors to its surface, preventing the odor from entering the

15   surrounding air.

16       **B.    Clorox's Cat Litter and Fresh Step Advertising Campaign**

17       26.    Clorox is one of the leading manufacturers of cat litter in the United States.

18       27.    In 1984, Clorox began producing Fresh Step.  According to its website, Fresh

19   Step prides itself on being the "only litter that contains carbon."[2]

20       28.    Even though it is a leading manufacturer of cat litter, Clorox's market share began

21   to decline.  In response, beginning in fall 2010, Clorox began a two-fold marketing and

22   advertising campaign via television, claiming that: (1) Fresh Step's carbon-containing cat litter is

23   more effective at eliminating cat odors than other cat litters; and (2) that as a result, cats

24   "choose" Fresh Step over other cat litters.  These superiority claims went far beyond merely

25

26

27   [2]    *See* http://www.freshstep.com/ourdifference.php (last visited Jan. 12, 2012).

28

1  promoting the odor-eliminating capabilities of carbon.  Instead, they are false, misleading, and
2  likely to deceive a reasonable consumer.

3      29.     Clorox's advertising campaign consisted of multiple television commercials,
4  including visuals, voiceovers, and demonstrations, representing the purported superiority of
5  Fresh Step litter in eliminating odor, as well as cats' preference towards Fresh Step litter because
6  of its carbon content, as opposed to other, "inferior" odor-eliminating ingredients, such as baking
7  soda.

8      30.     Clorox first began airing its false, misleading, and deceptive commercials around
9  October 2010 (the "First Commercials").  One commercial, for example, overtly stated that cats
10 prefer Fresh Step over other litters, because cats "know" Fresh Step is better at eliminating odors
11 than Arm & Hammer Super Scoop:

12
13
14
15
16
17



(MUSIC IN)  MALE ANNCR:  Cats like boxes.

*        *        *



And ones with Fresh Step



litter inside.

1

2

3

4

5



That's because Fresh Step's

6

7

8

9



scoopable litter with carbon

10

11

12

13



is better at eliminating odors than

14

15

16

17

18



Arm & Hammer Super Scoop.

19

20

21

22

23



Fresh Step.  Cats know what they like.

24

The full storyboard of Clorox's October 4, 2010 commercial is attached hereto as **Exhibit "A"**.

25

      31.     Defendant aired multiple other commercials that echoed these same verbal and

26

visual messages, showing cats consistently "choosing" Fresh Step over other, carbonless brands.

27

28

1  The storyboards for Clorox's December 27, 2010 and January 3, 2011 commercials are attached

2  hereto as **Exhibits "B" and "C,"** respectively.

3       32.    In February 2011, Clorox launched a new false, deceptive, and misleading

4  advertising and marketing campaign, which continued to depict cats' purported preference

5  towards Fresh Step litter, but in addition, the new commercials expressly stated that "Fresh Step

6  Scoopable litter with carbon . . . is more effective at absorbing odors than baking soda."  (the

7  "Second Commercials").

8       33.    One of the Second Commercials showed two laboratory beakers, one filled with a

9  black substance labeled "carbon" and the other filled with a white substance labeled "baking

10 soda."  Green gas was then shown floating through the beakers; the green gas in the Fresh Step

11 beaker rapidly dissipated, while the gas in the baking soda beaker barely dissipated.  During this

12 "scientific" demonstration, a voiceover stated: "That's why Fresh Step Scoopable has carbon,

13 which is more effective at absorbing odors than baking soda."

14      34.    The content of this commercial is depicted in the following storyboard:

15
16
17
18
19



We get cats.

20
21
22
23
24



They're into the royal treatment.

25
26
27
28



So they deserve the smartest choice in litter.



That's why Fresh Step Scoopable has carbon, which is more effective at absorbing odors than baking soda.



The full storyboard of Clorox's February 21, 2011 commercial above, and a similar February 14, 2011 commercial, are attached as **Exhibits "D" and "E,"** respectively.

35.    The superiority representations made in Clorox's commercials described above are false, misleading, and likely to deceive a reasonable consumer because, in fact: (1) Fresh Step's carbon-containing cat litter is not more effective at eliminating cat odors than other cat litters; and (2) cats do not "choose" Fresh Step over other cat litters.

36.    Because of this false, misleading, and deceptive marketing campaign, Clorox has profited and continues to profit as consumers have been deceived by Clorox into believing they

purchased a cat litter that has better odor eliminating abilities than its competitors and is preferred by cats, thus justifying a price premium for this deceptively advertised product.

**C.      Testing Demonstrates that Clorox's Representations Do Not Pass the Smell Test**

37.      In response to Clorox's First Commercials, which represented, among other things, that cats "prefer" Fresh Step carbon-based cat litter over baking soda-based cat litter, Church & Dwight ("C&D"), the creator of Arm & Hammer's baking soda based cat litter, Super Scoop, commissioned a study to determine the frequency with which cats would reject either litter when used in the cat's litter box (the "C&D Study").

38.      The results of the C&D Study conclusively prove that cats do not reject baking soda based cat litter more than they reject carbon-based cat litter.  In fact, the C&D study proves just the opposite, that cats reject Defendant's carbon-based Fresh Step more often than Arm & Hammer's baking soda based Super Scoop.  Indeed, less than 4% of the cats involved in the study rejected their litter box and relieved themselves elsewhere in the home when the litter box was filled with C&D's Super Scoop cat litter, while slightly more than 5% of the cats involved in the study rejected their litter box when the litter box was filled with Clorox's Fresh Step cat litter.

39.      Accordingly, Clorox's claim that cats "choose" or prefer Fresh Step is false and misleading, as the results of C&D's Study demonstrate that cats do not prefer carbon-based Fresh Step to baking soda based Super Scoop.

40.      In response to Clorox's Second Commercials, which represented, among other things, that Clorox's carbon-containing Fresh Step cat litter is more effective at eliminating odors than other cat litters, C&D commissioned an independent study to run a sensory laboratory test to compare the cat waste odor elimination performance of Fresh Step with carbon to one of Arm & Hammer's cat litters with baking soda, Double Duty (the "Independent Study").

41.      In the Independent Study, panelists were asked to rate the odor emanating from two litter boxes, one filled with Fresh Step and one filled with Double Duty, over the course of 10 days.  On every single day of the 10-day study, the panelists' average odor rating for C&D's

1  Double Duty cat litter with baking soda was lower than the average odor rating for Clorox's

2  Fresh Step carbon-based cat litter.  These results clearly demonstrate that Arm & Hammer's cat

3  litter was significantly superior to Fresh Step at the 95% confidence level in terms of cat waste

4  odor elimination overall.

5      42.    The results of the Independent Study demonstrate that Clorox's Second

6  Commercials contain false, misleading, and deceptive claims regarding Fresh Step's purported

7  superiority.  Indeed, contrary to Clorox's claim, its Fresh Step cat litter is not more effective at

8  eliminating odors than other cat litters.

9      **D.    A Competitor Successfully Challenges Clorox's Superiority Claims**

10     43.    In response to the First Commercials, C&D filed a lawsuit against Clorox alleging

11  that Clorox's claims that Fresh Step has superior odor-eliminating capabilities and that cats

12  prefer carbon-based Fresh Step to baking soda based Super Scoop were false and misleading. As

13  a result, Clorox immediately ceased airing the First Commercials, and C&D dismissed their case

14  without prejudice.

15     44.    C&D reacted to the Second Commercials by filing another lawsuit in March

16  2011, alleging that Clorox's representations that Fresh Step cat litter products with carbon are

17  superior to Arm & Hammer cat litter products with baking soda at eliminating cat waste odor

18  were false and misleading and deceptive to consumers.  C&D sought to enjoin Clorox from

19  making these false claims about Fresh Step, and brought claims against Clorox under the

20  Lanham Act, New York's General Business Law, and unfair competition under New York

21  common law, among others.

22     45.    On January 4, 2012, Judge Jed S. Rakoff, United States District Court for the

23  Southern District of New York, entered an Opinion and Order enjoining Clorox from airing the

24  commercials portraying the beaker test, finding Clorox's claims about the odor elimination

25  abilities of carbon as compared to baking soda were "literally false."

26     46.    In his opinion, Judge Rakoff held:

27     In short, because the Jar Test on which Clorox based its claims is unreliable and,
       even if it were reliable could not possibly support Clorox's implied claims about

28

1  the relative merits of carbon and baking soda in cat litter, the Court finds Clorox's
2  claims are literally false.

                              *       *       *

3
4  Put simply, Clorox, cloaking itself in the authority of a "a lab test," made literally
   false claims going to the heart of one of the main reasons for purchasing cat litter.
5  In such circumstances, where the misrepresentation is so plainly material on its
   face, no detailed study of consumer reactions is necessary to conclude
6  inferentially that Clorox is likely to divert customers from C&D's products to its
   own unless the offending commercial is enjoined.

7      47.    Despite Judge Rakoff's Order, Clorox continues to profit from its false and

8  deceptive marketing campaign based on the purported "superiority" of carbon-based cat litter.

9  Purchasers of Fresh Step have been deceived by Clorox into believing that they purchased a

10 product that had better odor eliminating abilities than its competitors and was preferred by cats,

11 paying a price premium for this deceptively advertised product.

12     48.    Plaintiffs seek to recover damages on behalf of themselves and the Class either in

13 an amount equal to the unlawful price premium Plaintiffs and the members of the Class paid for

14 Fresh Step, or alternatively, for the entire purchase price Plaintiffs and the Class paid for

15 Defendant's deceptively advertised product.   Plaintiffs also seek other damages, as well as

16 equitable and injunctive relief, as further described herein.

17                        **CLASS ACTION ALLEGATIONS**

18     49.    Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure

19 23(a) and 23(b)(2) and (b)(3) on behalf of a Class defined as:

20         All persons or entities that purchased Fresh Step cat litter in the
           United States during the period between October 2010 and the date
21         of the final disposition of this action.

22     50.    In the alternative to a national class, Plaintiffs seek certification of the following

23 subclasses:

24     51.    Plaintiff Susan Doyle (the "California Plaintiff") also brings this action, pursuant

25 to Rule 23, on behalf of all persons or entities who purchased Fresh Step cat litter in the United

26 States during the period between October 2010 and the date of the final disposition of this action

27 (the "California Subclass").

28

52.     Plaintiffs Megan Sterrit and Jose Segarra (the "Florida Plaintiffs") also bring this action, pursuant to Rule 23, on behalf of all persons or entities who purchased Fresh Step cat litter in the United States during the period between October 2010 and the date of the final disposition of this action (the "Florida Subclass").

53.     Plaintiff Kristin Luszcz  ( the "New York Plaintiff") brings this action, pursuant to Rule 23, on behalf of all persons or entities who purchased Fresh Step cat litter in State of New York during the period between October 2010 and the date of the final disposition of this action (the "New York Subclass").

54.     Plaintiffs Lori Kowalewski and Catherine Lenz (the "New Jersey Plaintiffs") also bring this action, pursuant to Rule 23, on behalf of all persons or entities who purchased Fresh Step cat litter in the United States during the period between October 2010 and the date of the final disposition of this action (the "New Jersey Subclass").

55.     Plaintiff Tina Butler-Furr (the "Texas Plaintiff") also brings this action, pursuant to Rule 23, on behalf of all persons or entities who purchased Fresh Step cat litter in the United States during the period between October 2010 and the date of the final disposition of this action (the "Texas Subclass").

56.     The Subclasses described in paragraphs 51 to 55 are collectively referred to herein as the "Subclasses."

57.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions may be expanded or narrowed by amendment or amended consolidated complaint.

58.     The Class and Subclasses exclude Clorox and any entity in which Clorox has a controlling interest, as well as its officers, directors, legal representatives, successors, and assigns.

59.     The claims asserted herein are applicable to all individuals throughout the United States who purchased Fresh Step cat litter.  The State of California has sufficient state interest

1  through a significant contact or aggregation of contacts to the claims asserted by each member of

2  the Class and Subclasses so that the choice of California law is not arbitrary or unfair

3      60.    There is a well-defined community of interest among members of the Class and

4  Subclasses , and the disposition of the claims of these members of the Class and Subclasses  in a

5  single action will provide substantial benefits to all parties and to the Court.

6      61.    Notice can be provided to the members of the Class and Subclasses through

7  publication, or otherwise, using techniques and a form of notice similar to those customarily used

8  in consumer class actions arising under California state law and federal law.

9      62.    The Class members and Subclasses are so numerous that joinder of all Class and

10  Subclasses members are impracticable.  At this time, Plaintiffs are informed and believe that the

11  Class and Subclasses include thousands of members.  Therefore, the Class and Subclasses are

12  sufficiently numerous that joinder of all members of the Class and Subclasses in a single action

13  is impracticable under Federal Rule of Civil Procedure 23(a)(1), and the resolution of their

14  claims through the procedure of a class action will be of benefit to the parties and the Court.

15      63.    Plaintiffs' claims are typical of the claims of the Class and Subclasses members

16  whom they seek to represent because Plaintiffs and Subclasses and each member of the Class

17  and Subclasses have been subjected to the same deceptive and improper practices by Clorox and

18  have been damaged in the same manner.

19      64.    Plaintiffs classes will fairly and adequately represent and protect the interests of

20  the Class members and Subclasses as required by Federal Rule of Civil Procedure 23(a)(4).

21  Plaintiffs have no interests that are adverse to those of the members of the Class that they seek to

22  represent.  Plaintiffs are committed to the vigorous prosecution of this action and, to that end,

23  Plaintiffs have retained counsel who are competent and experienced in handling complex class

24  action litigation on behalf of consumers.

25      65.    A class action is superior to all other available methods of the fair and efficient

26  adjudication of the claims asserted in this Complaint under Federal Rule of Civil Procedure

27  23(b)(3) because:

28

1    (a)    The expense and burden of individual litigation would not be

2 economically feasible for members of the Class and Subclasses to seek to redress their "negative

3 value" claims other than through the procedure of a class action; and

4    (b)    If separate actions were brought by individual members of the Class and

5 Subclasses, the resulting multiplicity of lawsuits would cause members to seek to redress their

6 "negative value" claims other than through the procedure of a class action.

7    66.    Absent a class action, Clorox likely would retain the benefits of its wrongdoing,

8 and there would be a failure of justice.

9    67.    Common questions of law and fact exist as to all Class and Subclass members and

10 predominate over questions affecting only individual Class and Subclass members.  Common

11 legal and factual questions include, but are not limited to:

12    (a)    Whether Clorox's claims are true, misleading, or likely to deceive a

13 reasonable consumer;

14    (b)    Whether Clorox engaged in false or deceptive advertising;

15    (c)    Whether Clorox knew that its representations were false, misleading and

16 reasonably likely to deceive but continued to disseminate them;

17    (d)    Whether Clorox violated the Consumers Legal Remedies Act, California

18 Civil Code §1750, *et seq.*;

19    (e)    Whether Clorox violated the Unfair Competition Law, California Business

20 and Professions Code §17200, *et seq.*;

21    (f)    Whether Clorox violated the False Advertising Law, California Business

22 and Professions Code §17500, *et seq.*;

23    (g)    Whether Clorox violated the various state consumer protection laws as set

24 forth herein;

25    (h)    Whether Clorox breached an express warranty to Plaintiffs and the Class

26 and Subclasses;

27    (i)    Whether Clorox was unjustly enriched by its acts complained of herein;

28

1          (j)      Whether Plaintiffs and the Class and Subclasses have sustained monetary

2   loss and the proper measure of that loss;

3          (k)      Whether Plaintiffs and the Class and Subclasses are entitled to punitive

4   damages; and

5          (l)      Whether Plaintiffs and Class and Subclass members are entitled to

6   declaratory and injunctive relief.

7      68.    Certification of the Class and Subclasses under the laws of California is

8   appropriate because:

9          (a)      Clorox is a corporation conducting substantial business in and from

10  California;

11         (b)      Clorox's principle place of business and corporate headquarters are

12  located in California;

13         (c)      Decisions regarding Fresh Step representations were made in California;

14         (d)      Clorox's marketing, promotional activities and literature, as well as their

15  warranties, were coordinated at, emanated from and/or were developed at Clorox's California

16  headquarters; and

17         (e)      A significant number of Class members reside in the State of California.

18     69.    However, in the event that California substantive law is found not to apply to

19  Plaintiffs' claims, Plaintiffs seek certification, in the alternative, of the Subclasses.

20     70.    Plaintiffs are not aware of any difficulty that will be encountered in the

21  management of this litigation, which should preclude its maintenance as a class action.

22                                    **COUNT I**

23                    **Violation of the Consumers Legal Remedies Act**
                        **California Civil Code §1750,** *et seq.*
24

25     71.    Plaintiffs and the Class and/or California Subclass incorporate by reference the

    allegations in paragraphs 1 through 70 as if fully set forth herein.
26

27     72.    This cause of action is brought pursuant to the Consumers Legal Remedies Act,

    California Civil Code §1750, *et seq.* (the "CLRA").  Plaintiffs are consumers as defined by
28

1  California Civil Code §1761(d).   Fresh Step cat litter is a good within the meaning of the

2  California Act.

3          73.    Clorox violated the CLRA by engaging in the following practices proscribed by

4  California Civil Code §1770(a) in transactions with Plaintiffs and the Class and/or California

5  Subclass which were intended to result in, and did result in, the sale of Fresh Step cat litter:

6                  (a)      Representing that Fresh Step has characteristics and benefits which it does

7  not have;

8                  (b)      Disparaging the goods, services, or business of another by false or

9  misleading representation of fact;

10                  (c)      Representing that Fresh Step is of a particular standard, quality or grade,

11  which it is not;

12                  (d)      Advertising Fresh Step with intent not to sell it as advertised; and

13                  (e)      Representing Fresh Step has been supplied in accordance with a previous

14  representation when it has not.

15          74.    Clorox violated the CLRA by representing through its advertisements of the

16  product as described above when it knew, or should have known, that the representations and

17  advertisements were unsubstantiated, false and misleading.

18          75.    Pursuant to California Civil Code §1782(d), Plaintiffs seeks a Court order

19  enjoining the above-described wrongful acts and practices of Clorox and for restitution and

20  disgorgement.

21          76.    Pursuant to §1782 of the CLRA, on January 23, 2012, counsel for Plaintiff Luszcz

22  sent a notice and demand letter by certified mail to Clorox's Chief Executive Officer, Donald K.

23  Knauss.  *See* Demand Letter, attached hereto as **Exhibit "F."**  Counsel for Luszcz provided

24  Clorox with 30 days from the date of the Luszcz complaint to rectify or agree to rectify the issues

25  addressed in her complaint, after which she reserved the right to amend her complaint to seek

26  damages, as appropriate.  The requisite 30 days have expired, and Clorox has not rectified the

27

28

1   issues in Luszcz's complaint.   Plaintiffs therefore seek damages in this Consolidated Class

2   Action Complaint ("Complaint").

3                                                    **COUNT II**

4                                    **Violation of the Unfair Competition Law**
    **California Business and Professions Code §17200, *et seq.***

5
6       77.     Plaintiffs and the Class and/or California Subclass incorporate by reference the

    allegations in paragraphs 1 through 70 as though fully set forth herein.

7
8       78.     California Business and Professions Code §17200 also prohibits any "unlawful…

    business act or practice." Clorox violated §17200's prohibition against engaging in unlawful acts

9
    and practices by, *inter alia*, making the representations and omissions of material facts, as set

10  forth more fully herein, and violating California Civil Code §§1572, 1573, 1709, 1710, 1711,

11  1770, Business & Professions Code §17200, *et seq.*, and the common law.

12      79.     Plaintiffs reserve the right to allege other violations of law, which constitute other

13  unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

14      80.     California Business & Professions Code §17200 also prohibits any "unfair or

15  fraudulent business act or practice."

16      81.     Clorox's acts, omissions, misrepresentations, practices and non-disclosures

17  alleged herein also constitute "unfair" business acts and practices within the meaning of

18  California Business & Professions Code §17200, *et seq.* in that its conduct is substantially

19  injurious to consumers, offends public policy, and is unethical, oppressive, and unscrupulous as

20  the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

21      82.     As stated in this Complaint, Plaintiffs allege violations of consumer protection,

22  unfair competition and truth in advertising laws in California resulting in harm to consumers.

23  Plaintiffs assert violations of the public policy of engaging in false and misleading advertising,

24  unfair competition and deceptive conduct towards consumers.   This conduct constitutes

25  violations of the "unfair prong" of California Business & Professions Code §17200, *et seq.*

26      83.     There were reasonably available alternatives to further Clorox's legitimate

27  business interests, other than the conduct described herein.

28

CONSOLIDATED CLASS ACTION COMPLAINT - 3:12-cv-00280-SC        - 20 -

1      84.    Business & Professions Code §17200 also prohibits any "fraudulent business act

2   or practice."

3      85.    Clorox's misleading statements, as more fully set forth above, are false,

4   misleading and/or likely to deceive a reasonable consumer within the meaning of California

5   Business & Professions Code §17200.

6      86.    Clorox's conduct caused and continues to cause substantial injury to Plaintiffs and

7   the Class and/or California Subclass.   Plaintiffs and the Class and/or California Subclass have

8   suffered injury in fact and have lost money as a result of Clorox's unlawful conduct.

9      87.    Clorox has thus engaged in unlawful, unfair, and fraudulent business acts and

10  practices.  The above-described unlawful, unfair, and fraudulent business acts and practices by

11  Clorox present a threat to the Class and/or California Subclass and the general public.

12     88.    Pursuant to California Business and Professions Code §§17203 and 17535,

13  Plaintiffs seek an order disgorging Clorox's ill-gotten gains, awarding Plaintiffs and the Class

14  and/or California Subclass full restitution of all monies wrongfully acquired by Clorox by means

15  of such acts of unlawful, unfair and fraudulent business acts and practices, plus interest and

16  attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure §1021.5, so as to

17  restore any and all monies to Plaintiffs and the Class and/or California Subclass, which were

18  acquired and obtained by means of such unlawful, unfair, and fraudulent business acts and

19  practices, and which ill-gotten gains are still retained by Clorox.  Plaintiffs additionally request

20  that such funds be impounded by the Court or that an asset freeze or trust be imposed upon such

21  revenues and profits to avoid dissipation and/or fraudulent transfers or concealment of such

22  monies by Clorox.  Plaintiffs and the Class and/or California Subclass will be irreparably harmed

23  and/or denied an effective and complete remedy if such an order is not granted.

24     89.    Additionally, pursuant to California Business & Professions Code §17203,

25  Plaintiffs seek an order requiring Clorox to engage in a corrective advertising campaign.

26

27

28

# COUNT III

### False and Misleading Advertising in Violation of California
### Business and Professions Code §§17200 and 17500 *et seq.*

90.    Plaintiffs and the Class and/or California Subclass incorporate by reference the allegations in paragraphs 1 through 70 as though fully set forth herein.

91.    The misrepresentations by Clorox of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of, *inter alia*, Business and Professions Code §17500, *et seq*.

92.    Clorox's use of various forms of media to advertise, call attention to, or give publicity to the sale of Fresh Step, which were not as represented, constitutes unfair competition and unfair, deceptive, untrue or misleading advertising within the meaning of California Business and Professions code §17500, *et seq*., which advertisements deceived and continue to deceive the consuming public.

93.    Clorox either knew, recklessly disregarded, or reasonably should have known that such advertising was false and/or misleading.  Such conduct also constitutes a violation of Business and Professions Code §17200, *et seq*.

94.    The above-described unlawful, false, and misleading advertising conducted by Clorox presents a threat to and the Class and/or California Subclass and the general public.

95.    Pursuant to California Business and Professions Code §§17203 and 17535, Plaintiffs seek an order disgorging Clorox's ill-gotten gains, awarding Plaintiffs and the Class and/or California Subclass full restitution of all monies wrongfully acquired by Clorox by means of such acts of unfair competition and false advertising, plus interest and attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure §1021.5, so as to restore any and all monies to Plaintiffs and the Class and/or California Subclass which were acquired and obtained by means of such unfair competition and false advertising, and which ill-gotten gains are still retained by Clorox.  Plaintiffs additionally request that such funds be impounded by the Court or that an asset freeze or trust be imposed upon such revenues and profits to avoid dissipation and/or fraudulent transfers or concealment of such monies by Clorox.  Plaintiffs and the Class and

1   California Subclass will be irreparably harmed and/or denied an effective and complete remedy

2   if such an order is not granted.

3                                        **COUNT IV**

4                   **Violations of the Florida Deceptive and Unfair Trade Practices Act,**
                               **Fla. Stat. §501.201, *et seq.***

5                        (The Florida Plaintiffs and the Florida Subclass)

6           96.     The Florida Plaintiffs and the Florida Subclass reallege and incorporate by

7   reference the allegations contained in paragraphs 1-70 as though fully set forth herein.

8           97.     The Florida Plaintiffs brings this cause of action on behalf of the Florida Subclass

9   in the alternative to all other California law claims in the event the Court finds that California

10  substantive law does not apply to the Florida Plaintiffs' Claims.

11          98.     This cause of action is brought on behalf of the Florida Class pursuant to the

12  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq*. (the "Act").  The

13  stated purpose of the Act is to "protect the consuming public . . . from those who engage in

14  unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the

15  conduct of any trade or commerce."  Fla. Stat. §501.202(2).

16          99.     Plaintiffs are consumers as defined by Fla. Stat. §501.203.  The Products are

17  goods within the meaning of the Act.  Defendant is engaged in trade or commerce within the

18  meaning of the Act.

19          100.    Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition,

20  unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any

21  trade or commerce."

22          101.    Fla. Stat. §501.204(2) states that "due consideration and great weight shall be

23  given to the interpretations of the Federal Trade Commission and the federal courts relating to

24  [section] 5(a)(1) of the Federal Trade Commission Act."  Defendant's  unfair and deceptive

25  practices are likely to mislead – and have misled – the consumer acting reasonably in the

26  circumstances, and violate Fla. Stat. §500.04 and 21 U.S.C. §343.

27

28

102.    Defendant has violated the Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

103.    The Florida Plaintiffs and the Florida Subclass have been aggrieved by Defendant's unfair and deceptive practices in that they paid for these Products after exposure to the false and misleading advertising.

104.    The damages suffered by the Florida Plaintiffs and the Florida Subclass were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant, as more fully described herein.

105.    Pursuant to Fla. Stat. §501.211(1), the Florida Plaintiffs and the Florida Subclass seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

106.    Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, the Florida Plaintiffs and the Florida Subclass make claims for damages, attorneys' fees and costs.

## COUNT V

### Misleading Advertising, Florida Statutes §817.41, *et seq.*
### (The Florida Plaintiffs and the Florida Subclass)

107.    The Florida Plaintiffs and the Florida Subclass reallege and incorporates by reference the allegations contained in paragraphs 1 through 70 as though fully set forth herein.

108.    The Florida Plaintiffs bring this cause of action on behalf of the Florida Subclass in the alternative to all other California law claims in the event the Court finds that California substantive law does not apply to the Florida Plaintiffs' Claims.

109.    This cause of action is brought on behalf of the Florida Plaintiffs and the Florida Subclass    pursuant to Fla. Stat. §817.41, *et seq.* (the "Advertising Act"), which makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement."  Fla. Stat. §817.41(1).

110.    Fla. Stat. §817.40 defines misleading advertisements as:

[A]ny statements made, or disseminated, in oral, written, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services. Fla. Stat. §817.40(5).

111.    Defendant has violated the Advertising Act by disseminating misleading advertisements in connection with the unfair and deceptive practices as described herein.

112.    Specifically, Defendant knew that the representations, as set forth above, as to its Products were false, but continued to make these representations in order to profit off of consumers' deception.

113.    In so doing, Defendant disseminated various advertisements to the public, which were false and misleading, knowing that these representations were false.

114.    Thus, Defendant's advertisements constitute misleading advertisements in violation of the Advertising Act.

115.    The Florida Plaintiffs and the Florida Subclass have been aggrieved by Defendant's unfair and deceptive practices in that they paid for Products and services.

116.    The damages suffered by the Florida Plaintiffs and the Florida Subclass were directly and proximately caused by Defendant's misleading advertisements, as more fully described herein.

117.    Moreover, pursuant to Fla. Stat. §817.41(5), the Florida Plaintiffs and the Florida Subclass seek punitive damages, as well as attorneys' fees and costs.

118.    All conditions precedent to this claim have been waived or satisfied.

1

**COUNT VI**

2

**Violations of the Texas Deceptive Trade Practices Act ("DTPA"),**
**Tex. Bus. & Com. Code Ann. §17.50,** *et seq.*

3

(The Texas Plaintiffs and the Texas Subclass)

4

119.    The Texas Plaintiffs incorporate by reference paragraphs 1 through 70 above as

5

though fully set forth herein.

6

120.    The Texas Plaintiffs bring this cause of action on behalf of the Texas Subclass in

7

the alternative to all other California law claims in the event the Court finds that California

8

substantive law does not apply to the Texas Plaintiffs' Claims.

9

121.    The Texas Plaintiffs and the Texas Subclass are consumers as defined by the

10

Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"), Tex. Bus. & Com.

11

Code Ann. §17.50, *et seq.* Defendant may be sued under the DTPA.

12

122.    Defendant engaged in false, misleading, or deceptive acts and practices, and the

13

Texas Plaintiffs and the Texas Subclass relied on Defendant to their detriment.   Defendant

14

engaged in false, misleading, and/or deceptive acts and practices by representing that Fresh Step

15

cat litter had characteristics, uses, and benefits that it did not have.  Defendant further engaged in

16

deceptive trade practices by representing that the Fresh Step cat litter was of a particular

17

standard, quality, or grade that it was not.

18

123.    Defendant has further violated the DTPA by violating express and implied

19

warranties related to Fresh Step cat litter.

20

124.    Defendant further violated the DTPA by failing to disclose the above referenced

21

information about the Fresh Step litter, which Defendant was aware of at all times pertinent

22

hereto, and Defendant's failure to disclose these material facts was intended to induce the Texas

23

Plaintiffs and the Texas Subclass into purchasing Fresh Step cat litter when they otherwise would

24

not have entered into such transactions if this information had been disclosed.

25

125.    The Texas Plaintiffs and the Texas Subclass relied on Defendant false statements

26

and omissions to their detriment.

27

28

126.    Defendant further acted unconscionably by committing acts or practices that to the Texas Plaintiffs and the Texas Subclass' detriments and took advantage of the Texas Plaintiffs and the Texas Subclass' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

127.    Defendant's violations of the DTPA were committed knowingly and intentionally

**COUNT VII**

**Deceptive Acts and Practices in Violation of**
**N.Y. Gen. Bus. Law §349**
(The New York Plaintiff and the New York Subclass)

128.    The New York Plaintiff and the New York Subclass incorporate by reference paragraphs 1 through 70 above as though fully set forth herein.

129.    The New York Plaintiff brings this cause of action on behalf of the New York Subclass in the alternative to all other California law claims in the event the Court finds that California substantive law does not apply to the New York Plaintiffs' claims.

130.    Defendant's representations and omissions complained of herein are likely to mislead a reasonable consumer acting reasonably under the circumstances.

131.    Thus, Defendant's actions constitute deceptive trade practices within the meaning of N.Y. Gen. Bus. Law §349(a).

132.    As a direct and proximate result of the aforementioned acts of Defendant, the New York Plaintiff and the New York Subclass have been harmed.

133.    As such, the New York Plaintiff and the New York Subclass are entitled to recover damages under §349.

134.    Moreover, pursuant to §349, the New York Plaintiff and the New York Subclass pray for an order enjoining Defendant's wrongful conduct.

**COUNT VIII**

**False Advertising in Violation of**
**N.Y. Gen. Bus. Law §350,** *et seq.*
(The New York Plaintiff and the New York Subclass)

135.    The New York Plaintiff and the New York Subclass incorporate by reference paragraphs 1 through 70 above as though fully set forth herein.

136.    The New York Plaintiff  brings this cause of action on behalf of the New York Subclass in the alternative to all other California law claims in the event the Court finds that California substantive law does not apply to the New York Plaintiff and the New York Subclasses' Claims.

137.    Defendant's advertisements and representations complained of herein are "misleading in a material respect," as defined by N.Y. Gen. Bus. Law §350-a.

138.    As a result, Defendant's advertisements and representations are unlawful under N.Y. Gen. Bus. Law §350.

139.    As a direct and proximate result of the aforementioned acts of Defendant, the New York Plaintiff and the New York Subclass have been harmed.

### COUNT IX

**Violation of the New Jersey Consumer Fraud Act**
**N.J. Stat. Ann. §56:8-1, *et seq.***
(The New Jersey Plaintiff and the New Jersey Subclass)

140.    The New Jersey Plaintiff and the New Jersey Subclass incorporate by reference paragraphs 1 through 70 above as though fully set forth herein.

141.    The New Jersey Plaintiff brings this cause of action on behalf of the New Jersey Subclass in the alternative to all other California law claims in the event the Court finds that California substantive law does not apply to the New Jersey Plaintiff's Claims.

142.    The New Jersey Plaintiff and the New Jersey Subclass and Defendant are "persons" within the   meaning of the Consumer Fraud Act ("CFA").

143.    The New Jersey Plaintiff and the New Jersey Subclass "consumers" within the meaning of the CFA.

144.    The Product is "merchandise" within the meaning of the CFA.

145.    At all relevant times material hereto, Defendant conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

1    146.    The CFA is, by its terms, a cumulative remedy, such that remedies under its

2    provisions can be awarded in addition to those provided under separate statutory schemes.

3    147.    Defendant has engaged in deceptive practices in the sale of Fresh Step because

4    Defendant knew that they had purposely marketed and sold the Product in a manner that made

5    the New Jersey Plaintiff and reasonable consumers believe that Fresh Step eliminated odors

6    better than other cat litters.

7    148.    Defendant has engaged in deceptive practices in the sale of Fresh Step because

8    Defendant knew that Fresh Step does not eliminate odors better than other cat litters.

9    149.    Defendant's unconscionable conduct described herein included its false

10    representations concerning Fresh Step.

11    150.    Defendant intended that the New Jersey Plaintiff and the New Jersey Subclass

12    rely on these representations, so that the New Jersey Plaintiff and the New Jersey Subclass would

13    purchase Fresh Step at a premium.

14    151.    The false and misleading representations were intended to, and likely to, deceive a

15    reasonable consumer.

16    152.    The facts not disclosed would be material to the reasonable consumer, and are

17    facts that a reasonable consumer would consider important in deciding whether to purchase the

18    Product and how much to pay.

19    153.    Defendant's representations were, and are, material to reasonable consumers,

20    including the New Jersey Plaintiff and the New Jersey Subclass, in connection with their

21    respective decisions to purchase the Product.

22    154.    Had Defendant not engaged in false and misleading advertising regarding the

23    Product, the New Jersey Plaintiff and the New Jersey Subclass would not have purchased Fresh

24    Step, or would have paid less for it.

25    155.    Had Defendant disclosed all material information regarding Fresh Step to Plaintiff

26    and other members of the Class, they would not have purchased Fresh Step or would have paid

27    less for it.

28

156.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused the New Jersey Plaintiff and the New Jersey Subclass to suffer an ascertainable loss in the form of, *inter alia*, monies spent to purchase Fresh Step at a premium price, and they are entitled to recover such damages, together with appropriate penalties, including, but not limited to, treble damages, attorneys' fees and costs of suit.

**COUNT X**
**Breach of Express Warranty**

157.    Plaintiffs incorporate by reference the allegations in paragraphs 1 through 70 as though fully set forth herein

158.    Plaintiffs, and each member of the Class, formed a contract with Clorox at the time Plaintiffs and the other members of the Class purchased Fresh Step.  The terms of that contract include the promises and affirmations of fact made by Clorox on its product labels and through its marketing campaigns, as described above.  This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Clorox on the other.

159.    As set forth above, Defendants expressly warranted, *inter alia*, the following:

(1)     Clorox's "Fresh Step Scoopable litter with carbon is better at eliminating odors" than other cat litters containing baking soda;

(2)     Clorox's Fresh Step Scoopable cat litter "has carbon, which is more effective at absorbing odors than baking soda"; and

(2)     cats "are smart enough to choose" carbon-based Fresh Step "with less odors" over other cat litters with baking soda.

160.    Plaintiffs and the Class were exposed to these statements and reasonably relied upon them in their purchase of Fresh Step.

161.    In reality, Fresh Step with carbon is not better at fighting odors than other brands of cat litter containing baking soda, and thus, Defendant breached its warranty.

162.    Plaintiffs and the Class were damaged by Defendant's breach of warranty and have suffered the losses alleged herein.

163.    All conditions precedent to Clorox's liability under this contract, including notice, have been performed by Plaintiffs and the Class.

164.    Clorox breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing the Fresh Step products as advertised and described above.

165.    As a result of Clorox's breach of its contract and warranties, Plaintiffs and the Class have been damaged in the amount of the purchase price of the Clorox Fresh Step product they purchased.

166.    As a direct and proximate result of Defendant's breach of express warranty, the Plaintiffs and the Class have sustained damages and losses as alleged herein.

**COUNT XI**
**Unjust Enrichment**

167.    Plaintiffs incorporate by reference the allegations in paragraphs 1 through 70 as though fully set forth herein

168.    Plaintiffs and the Class conferred a benefit on Clorox by purchasing Fresh Step products.

169.    Clorox has been unjustly enriched in retaining the revenues derived from the Class members' purchases of Fresh Step products, which retention under these circumstances is unjust and inequitable because Clorox misrepresented that: (1) Clorox's carbon-containing Fresh Step cat litter is more effective at eliminating odors than other cat litters; and (2) cats "choose" Fresh Step over other cat litters.   Moreover, by making these misrepresentations, Clorox caused injuries to Plaintiffs and the Class because: (a) they paid a price premium for Fresh Step products; (b) they would not have purchased the Fresh Step products on the same terms if the true facts regarding cat behavior and the efficacy of carbon were known; and (c) Fresh Step products did not have the quality, functionality or value as promised.

1    170.    Because Clorox's retention of the non-gratuitous benefit conferred on it by

2   Plaintiffs and the Class is unjust and inequitable, Clorox must pay restitution to Plaintiffs and the

3   Class for its unjust enrichment, as ordered by the Court.

4                                **PRAYER FOR RELIEF**

5          Wherefore, Plaintiffs request the following relief, on behalf of themselves and the Class:

6          A.    Certification of this action as a class action, appointment of Plaintiffs as Class

7   representatives and the appointment of Robbins Geller Rudman & Dowd LLP and Labaton

8   Sucharow LLP as Co-Lead Class Counsel;

9          B.    An order declaring the actions complained of herein to be in violation of the

10  statutory laws set forth above;

11         C.    An order permanently enjoining and restraining Clorox from any further acts in

12  violation of the CLRA and the Business and Professions Code §17200 as set forth above;

13         D.    An award of actual and/or statutory damages for injuries suffered by Plaintiffs and

14  the Class and in the maximum amount permitted by law;

15         E.    An award of compensatory damages for breach of warranty in an amount deemed

16  appropriate by the trier of fact against Clorox;

17         F.    An order disgorging Clorox's ill-gotten gains, awarding Plaintiffs and the Class

18  full restitution of all monies wrongfully acquired by Clorox pursuant to Business and Professions

19  Code §§17203 and 17535;

20         G.    An award of interest and attorneys' fees pursuant to, *inter alia*, California Code of

21  Civil Procedure §1021.5;

22         H.    An award of prejudgment and post-judgment interest;

23         I.    An award of costs, including, but not limited to, discretionary costs, attorneys'

24  fees and expenses incurred in prosecuting this case; and

25         J.    Any other and further relief to which Plaintiffs and the Class may be entitled at

26  law or in equity that this Court deems just and proper.

27

28

1

**JURY DEMAND**

2          Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and the Class

3     demand a trial by jury as to all matters so triable.

4     DATED:  April 11, 2012                         **ROBBINS GELLER RUDMAN**
                                                      **& DOWD LLP**
5

6

7
                                                  _____
8                                                        S/ MARK J. DEARMAN
                                                         MARK J. DEARMAN
9
                                                    PAUL J. GELLER
                                                    STUART A. DAVIDSON
10                                                  MARK J. DEARMAN
                                                    KATHLEEN L. BARBER
11                                                  120 East Palmetto Park Road, Suite 500
                                                    Boca Raton, FL  33432
12                                                  Telephone:  561/750-3000
                                                    561/750-3364 (fax)
13
                                                    **ROBBINS GELLER RUDMAN**
14                                                  **& DOWD LLP**
                                                    SHAWN A. WILLIAMS (213113)
15                                                  Post Montgomery Center
                                                    One Montgomery Street, Suite 1800
16                                                  San Francisco, CA  94104
                                                    Telephone:  415/288-4545
17                                                  415/288-4534 (fax)
                                                    shawnw@rgrdlaw.com
18
                                                    **ROBBINS GELLER RUDMAN**
19                                                  **& DOWD LLP**
                                                    ROBERT M. ROTHMAN
20                                                  58 South Service Road, Suite 200
                                                    Melville, NY  11747
21                                                  Telephone: 631/367-7100
                                                    631/367-1173 (fax)
22
                                                    **LABATON SUCHAROW LLP**
23                                                  HOLLIS L. SALZMAN
                                                    GREGORY ASCIOLLA
24                                                  140 Broadway
                                                    New York, NY  10005
25                                                  Telephone:  212/907-0700
                                                    212/818-0477 (fax)
26                                                  hsalzman@labaton.com
                                                    gasciolla@labaton.com
27
                                                    *Co-Lead Counsel for Plaintiff and the Proposed*
28                                                  *Class*

1

2    and

3    **SHEPHERD, FINKELMAN, MILLER
       & SHAH, LLP**
     JAMES C. SHAH
4    475 White Horse Pike
     Collingswood, NJ  08107-1909
5    Telephone: 856/858-1770
     856/858-7012 (fax)
6    jshah@sfmslaw.com
     nzipperian@sfmslaw.com
7
     **HARKE CLASBY & BUSHMAN LLP**
8    LANCE A. HARKE
     SARAH CLASBY ENGEL
9    HOWARD M. BUSHMAN
     9699 NE Second Avenue
10   Miami Shores, FL  33138
     Telephone: 305/536-8220
11   305/536-8229 (fax)

12   **FARUQI & FARUQI, LLP**
     DAVID E. BOWER\
13   VAHN ALEXANDER
     CHRISTOPHER B. HAYES
14   10866 Wilshire Boulevard, Suite 1470
     Los Angeles, CA  90024
15   Telephone:  424/256-2884
     424/257-2885 (fax)
16   dbower@farquilaw.com
     valexander@faruqilaw.com
17   chayes@faruqilaw.com

18   *Plaintiffs' Executive Committee*

19   and

20   **BERMAN DEVALERIO**
     JOSEPH J. TABACCO, JR.
21   CHRISTOPHER T. HEFFELFINGER
     ANTHONY D. PHILLIPS
22   One California Street, Suite 900
     San Francisco, CA  94111
23   Telephone: 415/433-3200
     415/433-6382 (fax)
24   jtabacco@bermandevalerio.com
     cheffelfinger@bermandevalerio.com
25   aphillips@bermandevalerio.com

26

27

28

1

2

3

4

**THE FEINBERG LAW FIRM**
Jeffrey Feinberg
382 Springfield Avenue, Suite 201
Summit, NJ 07901
Telephone (212) 372-0297
jfeinberg@nfcounsel.com

5

6

7

**THE TERRELL LAW GROUP**
Reginald Terrell
P.O. Box 13315, PMB #148
Oakland, CA 94661
reggiet2@aol.com

8

9

*Additional Plaintiffs' counsel*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28