**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
Kelly M. Morrison (Cal. Bar No. 255513)
kmorrison@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA  90071-2054
Phone:       (213) 239-5100
Facsimile:   (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (admitted *pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Phone:       (312) 222-9350
Facsimile:   (312) 527-0484

Attorneys for Defendant
The Clorox Pet Products Company, improperly sued as The Clorox Company.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CLOROX CONSUMER LITIGATION<br>_____<br><br>This Document Relates To:<br><br>  All Actions | Master File No. 3:12-cv-00280-SC<br><br>**CLOROX'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT PURSUANT TO RULES 9(b) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Proposed Order filed concurrently herewith]<br><br>Hearing Date: August 10, 2012<br>Time: 10:00 a.m.<br>Courtroom: 1 – 17th Floor<br>Judge:  Hon. Samuel Conti<br><br>Action Filed: January 23, 2012<br><br>Amended Complaint Filed: April 11, 2012 |

* * *

PLEASE TAKE NOTICE that, on August 10, 2012, at 10:00 a.m., or as soon thereafter as the Court is available, in Courtroom 1 – 17th Floor of the federal courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant The Clorox Pet Products Company, improperly sued as The Clorox Company, will and hereby does move the Court to dismiss this action pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), or, in the alternative, to strike Plaintiffs' class allegations under Federal Rule of Civil Procedure 12(f), on the grounds that (1) the representations challenged by Plaintiffs are non-actionable because there is no consumer claim for lack of substantiation, (2) the alleged misstatements are mere non-actionable puffery, (3) Plaintiffs fails to plead their fraud-based claims with the necessary particularity, (4) Plaintiffs fails to properly plead a claim for breach of express warranty, and (5) Plaintiffs cannot maintain a nationwide class based on California consumer protection statutes, or subclasses requiring application of various states' consumer protection laws.

Clorox's Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Declaration of Jon Schlesinger and Request for Judicial Notice, any additional briefing on this subject, and the evidence and arguments that will be presented to the Court at the hearing on this matter.

Dated: May 16, 2012

JENNER & BLOCK LLP

 /s Kenneth K. Lee
By: Kenneth K. Lee

Attorneys for Defendant
The Clorox Pet Products Company

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND ...................................................................................3

   I.    Clorox's Initial Commercials and Church & Dwight's Claim of Lack of
       Substantiation..........................................................................................4

   II.   Clorox Runs New Commercials Stating That Carbon Is Superior to Backing Soda ........5

PROCEDURAL HISTORY.....................................................................................9

ARGUMENT ........................................................................................................10

   I.    The Complaint Must Be Dismissed Because Alleged Lack of Substantiation for
       Clorox's Statements in Its Commercials Is Not Actionable as a Matter of Law in
       California ...............................................................................................12

      A.  California does not recognize a consumer claim for alleged lack of substantiation..12

      B.  The New York judge's preliminary injunction is not entitled to preclusive effect....16

   II.   Claims Based on the Statements that Cats "Like" or "Are Smart Enough to Choose
       Fresh Step" Must Be Dismissed as Puffery That No Reasonable Consumer Would
       Rely Upon ..............................................................................................18

   III.  Plaintiffs Fail to Plead Their Statutory Claims with the Requisite Particularity ............19

   IV.  Plaintiffs Fail to Properly Plead a Claim for Breach of Express Warranty ....................20

   V.   Plaintiffs' Nationwide Class and Subclass Allegations Should be Stricken...................22

      A.  The Ninth Circuit has strongly suggested that California's consumer protection
         laws cannot be applied nationwide to out-of-state putative class members..............22

      B.  Out-of-state Plaintiffs lack standing to sue under California's law ..........................23

CONCLUSION.....................................................................................................25

1

2

## **<u>Table of Authorities</u>**

**CASES**                                                               **PAGE(S)**

*Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*,
No. 04-2123, 2007 WL 1239220 (N.D. Cal. Apr. 27, 2007)...............................................16, 17

*Anunziato v. eMachines, Inc.*,
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ................................................................................18

*Barrera v. Pharmavite, LLC*,
No. 11-4153, Dkt. No. 31, at 3-4 (C.D. Cal. Sept. 19, 2011) (RJN Ex. 9 ) .................13, 14, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................10, 20

*Blanco v. Baxter Health Care Corp.*,
158 Cal. App. 4th 1039 (2008) ...........................................................................................22

*Buetow v. A.L.S. Enters., Inc.*,
650 F.3d 1178 (8th Cir. 2011) ............................................................................................18

*Cabrera v. Cordis Corp.*,
134 F.3d 1418 (9th Cir. 1998) ..............................................................................................8

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
No. 10-1044, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011)....................................................11

*Chavez v. Nestle USA, Inc.*,
No. 09-9192, 2011 WL 2150128 (C.D. Cal. May 19, 2011)...........................................14, 16

*Church & Dwight Co., Inc. v. The Clorox Company*,
No. 11-cv-1865, Dkt. No. 51 (S.D.N.Y. January 4, 2012) at 6 ..................................... *passim*

*Churchill Village, L.L.C. v. Gen. Elec. Co.*,
169 F. Supp. 2d 1119 (N.D. Cal. 2000), *aff'd*, 361 F.3d 566 (9th Cir. 2004) ........................24

*City of Arcadia v. U.S. Envtl. Prot. Agency*,
411 F.3d 1103 (9th Cir. 2005) ............................................................................................10

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir.1999) ...............................................................................................18

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
911 F.2d 242 (9th Cir. 1990) ..............................................................................................10

*Don King Prods., Inc. v. Douglas*,
742 F. Supp. 741 (S.D.N.Y. 1990).......................................................................................17

*Edmunson v. Proctor & Gamble Co.*,
No. 10-2256, 2011 WL 1897625 (S.D. Cal. May 17, 2011) ...........................................18, 21

*Eshagh v. Terminiz Int'l Co., L.P.*,
   No. 11-222, 2011 U.S. Dist. LEXIS 80848 (E.D. Cal. July 25, 2011) ...................................20

*Fraker v. Bayer Corp.*,
   No. 08-1564, 2009 U.S. Dist. LEXIS 125633 (E.D. Cal. Oct. 2, 2009).....................15, 16, 21

*Fraker v. KFC Corp.*,
   No. 06-1284, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007)...................................................11

*Franulovic v. Coca Cola Co.*,
   390 F. App'x 125 (3d Cir. 2010) ........................................................................................15

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) .....................................................................................11, 12, 16

*Haskell v. Time, Inc.*,
   857 F. Supp. 1392 (E.D. Cal. 1994).....................................................................................18

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
   No. 09-1597, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ....................................................11

*Hoyte v. Yum! Brands, Inc.*,
   489 F. Supp. 2d 24 (D.D.C. 2007) ......................................................................................11

*In re High-Tech Emple. Antitrust Litig.*,
   No. 11-CV-02509-LHK, 2012 U.S. Dist. LEXIS 55302 (N.D. Cal. Apr. 18, 2012).........22, 23

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   801 F. Supp. 2d 993 (S.D. Cal. 2011) .......................................................................19, 20, 21

*In re Stac Elecs. Secs. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) ...............................................................................................10

*In re Super Premium Ice Cream Distrib. Antitrust Litig.*,
   691 F. Supp. 1262 (N.D. Cal. 1988) ....................................................................................17

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab.
Litig.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011) .................................................................................24

*In re Verifone Secs. Litig.*,
   11 F.3d 865 (9th Cir. 1993) .................................................................................................10

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .....................................................................................11, 19, 20

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ...............................................................................................4

*Kourtis v. Cameron*,
   419 F.3d 989 (9th Cir. 2005) ...............................................................................................17

*Kuzinich v. County of Santa Clara*,
  689 F.2d 1345 (9th Cir. 1982) ...........................................................................17

*Lavie v. Proctor & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ...........................................................................12

*Luszcz v. The Clorox Company*,
  No. CV 12-0356, Dkt. No. 1 ("Luzscz Compl.") .................................................1

*Lyons v. Coxcom, Inc.*,
  No. 08-2047, 2009 WL 347285 (S.D. Cal. Feb. 6, 2009), *vacated on other grounds*, 718
  F. Supp. 2d 1232 (S.D. Cal. 2009) ...................................................................18

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) ...............................................................................4

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ......................................................................22, 23

*McKinney v. Google, Inc.*,
  No. 10-1177, 2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) ..............................21

*McKinniss v. Sunny Delight Beverages Co.*,
  No. 07-2034, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) .....................11, 12, 16

*Moncada v. Allstate Ins. Co.*,
  471 F. Supp. 2d 987 (N.D. Cal. 2006) ..............................................................22

*Morgan v. Harmonix Music Sys., Inc.*,
  No. 08-5211, 2009 WL 2031765 (N.D. Cal. July 30, 2009) ...............................24

*Moses v. GMAC Mortg., Inc.*
  No. 09-CV-1961 ...............................................................................................12

*Nabors v. Google, Inc.*,
  No. 10-3897, 2011 WL 3861893 (N.D. Cal. Aug. 30, 2011) ..........................20, 21

*Newcal Indus., Inc. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir. 2008) ...........................................................................18

*Norwest Mortgage, Inc. v. Superior Court*,
  72 Cal. App. 4th 214 (1999) ..............................................................................24

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
  290 F.3d 578 (3d Cir. 2002).............................................................................15

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ..............................................................18

*Ralston v. Mortgage Investors Group, Inc.*,
  2012 U.S. Dist. LEXIS 45545 (N.D. Cal. Mar. 30, 2012)....................................23

*Rosal v. First Fed. Bank of Cal.*,
    671 F. Supp. 2d 1111 (N.D. Cal. 2009) ................................................................4

*Sanders v. Apple, Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ..........................................................12, 22

*Stanley v. Bayer Healthcare LLC*,
    No. 11cv862, 2012 WL 1132920 (S.D. Cal. Apr. 3, 2012) ..................................15

*Sugawara v. Pepsico, Inc.*,
    No. 08-1335, 2009 WL 1439115 (E.D. Cal. May 21, 2009) ................................11

*Tidenberg v. Bidz.com, Inc.*,
    No. 08-5553, 2009 U.S. Dist. LEXIS 21916 (C.D. Cal. Mar. 4, 2009)................24

*Utility Consumers' Action Network v. Sprint Solutions, Inc.*,
    259 F.R.D. 484 (S.D. Cal. 2009) .........................................................................23

*Videtto v. Kellogg USA*,
    08-1324, 2009 WL 1439086 (E.D. Cal. May 21, 2009) ......................................11

*Williams v. Beechnut Nutrition Corp.*,
    185 Cal. App. 3d 135 (1986) ...............................................................................20

*Zinser v. Accufix Research Institute, Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .............................................................................23

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23(b)(3)(D)......................................................................22

Federal Rule of Civil Procedure 12(b)(6) ............................................................10, 18, 23

Federal Rule of Civil Procedure 12(c) ...............................................................................10

Federal Rule of Civil Procedure 12(f) ................................................................................11

Federal Rule of Civil Procedure 23 ....................................................................................22

Federal Rule of Civil Procedure 9(b).......................................................................3, 11, 18, 19

1

## **INTRODUCTION**

2    Clorox's Fresh Step is a well-known and popular brand of cat litter that has been purchased

3    by millions of consumers for over a quarter-century.  From late 2010 to early 2012, Clorox ran a

4    series of light-hearted television commercials featuring humorous home-videos of playful and

5    "smart" cats, such as a clip showing a cat appearing to close the door on a dog. Relying on various

6    sensory tests, the commercials had voiceovers stating either that (i) Fresh Step is more effective than

7    Arm & Hammer's Super Scoop cat litter in eliminating odors, or (ii) carbon, a key ingredient in

8    Fresh Step, fights odors better than baking soda.  These commercials are now the target of this

9    putative class action lawsuit.

10    Perhaps what is most notable about Plaintiffs' amended complaint is what it still does *not*

11    allege.  It does not claim that Fresh Step fails to reduce odors from cat waste.  Nor does it allege that

12    carbon is ineffective at eliminating odors.  And unlike most class action lawsuits, this complaint

13    does not assert that consumers received a defective product or that Fresh Step did not perform in the

14    way a reasonable consumer would expect a cat litter to perform.  Rather, Plaintiffs try to piggyback

15    off of a narrow and preliminary decision in a New York case brought by Church & Dwight, a

16    competitor company that produces Arm & Hammer's cat litter made with baking soda.  In that case,

17    the judge stated that he did not believe that one of the sensory tests relied upon by Clorox was

18    sufficiently reliable or that Clorox could substantiate an implied claim that a carbon-based cat litter

19    was more effective than a baking soda-based one.  Clorox filed an emergency motion for expedited

20    appeal, pointing out the various legal and factual errors made by the judge in his preliminary

21    injunction order.  No final judgment issued in that matter because, without any admission of

22    wrongdoing or liability by either party, the parties entered into a confidential settlement agreement,

23    and the action, the complaint, the counterclaims and the appeal of the order, were dismissed and/or

24    withdrawn with prejudice on April 20, 2012.

25    But within days of the preliminary injunction decision being issued, plaintiffs' attorneys

26    began stitching together complaints based solely on the allegation that "Clorox has no evidence to

27    support its . . . claims" that carbon is more effective than baking soda at eliminating odors.  *See*

28    Complaint, *Luszcz v. The Clorox Company*, No. CV 12-0356, Dkt. No. 1 ("Luzscz Compl.") ¶ 7; *see*

*also id.* ¶ 29 (contending Clorox's claims about carbon are not supported by testing).  Several other lawsuits were filed in California, New Jersey, and Florida.  Following consolidation of the actions against Clorox, Clorox filed a motion to dismiss on the basis that, among other things, lack of alleged substantiation for an advertisement claim is not cognizable under California's consumer protection statutes.  Dkt. No. 25.  In response to Clorox's motion, Plaintiffs filed their amended consolidated complaint ("Amended Complaint" or "Compl.").  Plaintiffs attempt to evade dismissal by simply excising the word "substantiation" from the Amended Complaint, but their claims remain substantively identical as in the original complaint.  *Compare* Luzscz Compl. ¶ 7 (alleging that "Clorox has no evidence to support its superiority claims") *with* Compl. ¶ 1 (alleging that "Clorox's Fresh Step cat litter is not more effective at eliminating odors than other cat litters").  This lawsuit was and remains essentially an attempt to transform a narrow dispute between two competitors about a highly technical aspect of one sensory test into a broad-based consumer fraud class action.  *See* Compl. ¶ 47.  But there is no consumer fraud or harm here, and the complaint must be dismissed.

<u>First</u>, several courts in the Ninth Circuit have held that the mere lack of substantiation for an advertisement is not a cognizable theory under California's consumer protection statutes.  Only competitors, not consumers, have standing to pursue a lack of substantiation claim and can only do so under the Lanham Act.  Here, this lawsuit is not about Fresh Step being a defective product or not reducing odors as promised.  Rather, despite Plaintiffs' excising of the term "unsubstantiated" from their Amended Complaint, the crux of the lawsuit remains that Clorox supposedly did not have substantiation for its claim that carbon is more effective at controlling cat waste odor than baking soda.  But even if there is no substantiation (and there is), that alone is not enough to make a statement "likely to mislead" a reasonable consumer.

Plaintiffs also cannot rely on the New York judge's tentative ruling because it is not entitled to any res judicata effect and in any event is not relevant here.  The issues in that Lanham Act case are different from those in this consumer fraud suit.  For example, although the judge preliminarily found that one of Clorox's television advertisements was "likely to divert customers" from one of its competitors, he did not indicate that those customers would be harmed in any way.  *See* Order, *Church & Dwight*, No. 11-cv-1865, Dkt. No. 51 at 13.  Further, that opinion was much narrower in

scope than this lawsuit, focusing on only one commercial that began running in February 2011 and addressing only a single sensory test.

Second, Plaintiffs' claims based on Clorox's statements that "cats 'choose' Fresh Step over other cat litters" (Compl. ¶ 28) must be dismissed because they amount to mere puffery. One commercial showed humorous home-video clips of cats jumping into and playing with boxes, and stated, "Cats like boxes. Big ones. Little ones. And ones with Fresh Step litter inside. That's because Fresh Step Scoopable Litter with carbon is better at eliminating odors than Arm & Hammer Super Scoop." Another commercial showed cats appearing to act in seemingly ingenious ways with the following voiceover: "Cats are smart. They can outsmart their humans. Their canines. And locked doors. They're also smart enough to choose litter with less odors." But much like a typical consumer does not believe that cats can actually outsmart humans or that they "like" or "choose" a specific cat litter brand, a reasonable consumer would not literally believe that cats are actually smart enough to prefer Fresh Step as the superior brand of cat litter. These are classic, non-actionable puffery statements.

Third, the complaint must be dismissed for not stating allegations with particularity as required under Rule 9(b). It does not state when Plaintiffs allegedly saw the challenged advertisements, which advertisements they saw, or where they saw them.

Fourth, Plaintiffs' express warranty claim must be dismissed because there was no such warranty made here and the complaint has not adequately pled the elements for that claim.

Finally, Plaintiffs' nation-wide class allegations must be stricken because the Ninth Circuit has recently indicated that a nationwide class cannot be maintained solely on the basis of California consumer protection statutes. Moreover, Plaintiffs' alternative proposed subclasses divided by state law are unmanageable. And even if this Court believes that California law can apply nationwide, the out-of-state Plaintiffs lack standing, as they do not claim to have purchased Fresh Step in California and California's consumer fraud statutes do not have force or operate beyond the boundaries of California.

**FACTUAL BACKGROUND**

In 1984, Clorox began selling Fresh Step, a cat litter that soon became one of the "most trusted and recognized brand names" in America. *See* Compl. ¶¶ 22, 27. Fresh Step uses carbon particles to control cat waste odors (the smell of cat feces and urine), while other cat litter brands use different active ingredients to control those odors. For example, Church & Dwight markets baking soda as the key ingredient in its line of Arm & Hammer's Super Scoop cat litter. *See id.* ¶ 37. Clorox and Church & Dwight compete against each other in a cat litter market that was reportedly worth $1.8 billion as of 2010. *See id.* ¶ 23.

## I. Clorox's Initial Commercials and Church & Dwight's Claim of Lack of Substantiation.

In fall 2010, Clorox began running a television commercial featuring humorous home videos of cats jumping into boxes, including one cat that jumps into a box filled with Fresh Step cat litter instead of one with Super Scoop. *See id.* ¶¶ 28-30. As images of the cats played on the screen, the narrator stated:

> "Cats like boxes. Big ones. Little ones. And ones with Fresh Step litter inside.
> That's because Fresh Step's scoopable litter with carbon is better at eliminating odors
> than Arm & Hammer's Super Scoop. Fresh Step. Cats know what they like."

Compl. Ex. A; Declaration of Jon Schlesinger ("Schlesinger Decl.") ¶ 1, Ex. A (video-clip of commercial).[1] Clorox ran an abbreviated version of the same commercial from approximately December 2010 to January 2011. Schlesinger Decl. ¶ 2, Ex. A (video-clip of commercial); Compl. Ex. B.

---

[1] Under the incorporation by reference doctrine, this court can consider the transcript and video clips of the commercials. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference doctrine applies to "situations in which the plaintiff's claim depends on the contents of a document"). This motion also references various pleadings and filings submitted by the parties in the Lanham Act proceeding in New York. Plaintiffs have repeatedly cited such documents in their complaint and indeed their case relies primarily on that proceeding. This court may consider "evidence on which the complaint 'necessarily relies,'" even if it is not physically attached to the complaint. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). *See also Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1121 (N.D. Cal. 2009) (on a motion to dismiss, taking judicial notice of "documents recorded in the Official Records of Alameda County" and "bankruptcy court filings"). Clorox has submitted a Request for Judicial Notice of these documents, along with this motion.

---

Another commercial ran in January 2011 that showed cats doing clever things (*e.g.*, appearing to close a door to prevent a dog from entering the house), and then again showed the same image of a cat jumping into a box filled with Fresh Step cat litter. Those images were accompanied by the following voiceover:

> "Cats are smart. They can outsmart their humans. Their canines. And locked doors. They're also smart enough to choose the litter with less odors. That's because Fresh Step Scoopable Litter with Carbon is better at eliminating litter box odors than Arm & Hammer Super Scoop. Fresh Step, cats know what they like."

Schlesinger Decl. ¶ 3, Ex. A (video-clip of commercial); Compl. Ex. C.

In January 2011, Church & Dwight sued Clorox in New York on, among other things, a federal Lanham Act claim, arguing that Clorox's commercials lacked proper substantiation and unfairly disparaged Arm & Hammer's Super Scoop. *See* Request for Judicial Notice ("RJN") Ex. 1. According to Church & Dwight, Clorox's claim that cats preferred Fresh Step was "flawed" because "cats do not talk." *Id.* ¶¶ 2, 28. Therefore, Church & Dwight disputed "Clorox's supposed substantiation for the advertising claims in the Clorox Advertisements." *Id.* ¶ 29.

Highlighting that the case was merely a business-to-business dispute, Church & Dwight stated in its complaint that "Fresh Step and Super Scoop are directly competitive products." *Id.* ¶ 39. Nowhere in the complaint, however, did it allege that Fresh Step or carbon does not reduce odors. It also did not allege that consumers were injured. *See id.* ¶¶ 39, 51. Rather, the alleged harm was to "Church & Dwight's business reputation and goodwill." *Id.* ¶ 53.

Church & Dwight never served the complaint upon Clorox. After the parties engaged in confidential discussions, Church & Dwight voluntarily dismissed the lawsuit. RJN Ex. 2.

## II. Clorox Runs New Commercials Stating That Carbon Is Superior to Baking Soda.

In February 2011, Clorox began running new commercials that also included home videos of playful and seemingly ingenious cats that, for example, open drawers in a kitchen to pilfer cat food. *See* RJN Ex. 3 at ¶ 45. In one commercial, the voiceover stated:

> "We get cats. They're smart. They can outsmart their humans. And their canines. That's why they deserve the smartest choice in litter. So we make Fresh Step

1  scoopable litter with carbon, which is more effective at absorbing odors than baking

2  soda.  Fresh Step, your cat deserves the best."

3  Schlesinger Decl. ¶ 4, Ex. A; Compl. Ex. E.  Another commercial showed a dog on his hind legs

4  pushing a cat lounging in a baby stroller. The voiceover stated:

5  "We get cats.  They're into the royal treatment.  So they deserve the smartest choice in litter.

6  That's why Fresh Step Scoopable has carbon, which is more effective at absorbing odors

7  than baking soda.  Fresh Step, your cat deserves the best."

8  Schlesinger Decl. ¶ 5, Ex. A; Compl. Ex. C.

9  These commercials differed from the prior ones in two key ways.  First, they made an

10  ingredient-to-ingredient comparison (carbon to baking soda) and did not explicitly say that Fresh

11  Step was superior to Super Scoop.  In fact, neither the Arm & Hammer brand nor Super Scoop was

12  mentioned at all.  Second, they had a visual demonstration of two beakers labeled carbon and baking

13  soda with green gas in them; the gas in the carbon-based beaker showed more dissipation than the

14  one in the baking soda-based beaker.  RJN Ex. 3 at ¶ 51.  The text below it said: "Dramatization of

15  cat waste malodor after 1 day.  Based on sensory lab test."  *Id.*

16  On March 17, 2011, Church & Dwight filed a lawsuit against Clorox in New York.  RJN Ex.

17  3.  The complaint alleged that Clorox's lab test was not reliable and that its own commissioned study

18  disputed Clorox's test results.  *See id.* ¶ 56.  And like before, the lawsuit was not concerned about

19  any harm caused to consumers.  To the contrary, it conceded that "*carbon in Clorox's cat litters*

20  *works to reduce odors by adsorption.*"  *Id.* ¶ 29 (emphasis added).  Rather, the alleged harm was that

21  Clorox's commercials would likely "cause consumers to shun Arm & Hammer cat litter products

22  and other Arm & Hammer products" and convince "significant numbers of cat owners to purchase

23  Fresh Step rather than Arm & Hammer cat litter products."  *Id.* ¶¶ 64, 74.

24  Clorox strongly denied the allegations and filed a counterclaim, alleging that Church &

25  Dwight lacked the substantiation for its advertising claims that its baking soda ingredient is "the

26  secret to destroying both (urine and feces) odors on contact."  RJN Ex. 7 at ¶ 112.  In the ensuing

27  litigation, it was undisputed that Clorox relied on *three different* sensory tests to substantiate the

28  claim that carbon is more effective than baking soda in fighting odor or that Fresh Step is more

effective than Super Scoop: (i) the "jar test", (ii) the litter test, and (iii) in-home usage (IHUT) test. *See* RJN Ex. 4 at 3-6.

**Jar test:** The "jar test" is a sensory test comparing carbon with baking soda that was designed and administered with assistance from Sensory Spectrum, an independent company that advises government agencies, universities, and companies on smell and taste. *See* RJN Ex. 8 at 77. Sensory valuation is taught in at least 40 to 45 universities, and there are peer-reviewed journals dedicated to this field. *See Church & Dwight Co., Inc. v. The Clorox Company*, No. 11-cv-1865, Dkt. No. 51 (S.D.N.Y. January 4, 2012) at 6; *see also* RJN Ex. 8 at 85-86. For this test, Clorox prepared six separate containers of (i) fresh cat feces covered with carbon, (ii) fresh cat feces covered with baking soda, (iii) fresh cat urine covered with carbon, (iv) fresh cat urine covered with urine, (v) uncovered feces, and (vi) uncovered urine. *See Church & Dwight*, No. 11-cv-1865, Dkt. No. 51 at 5; Ex. 5 at ¶ 11 (referenced in the court order). All of the jars were covered with paper to hide the contents and ensure a blind test. *See* RJN Ex. 5 at ¶ 11. After allowing the sealed containers to sit for approximately 24 hours, the containers were placed in three sensory testing booths — one with carbon samples, another with baking soda samples, and the final one with the uncovered waste. *See id.* Eleven panelists were chosen after a screening process that included tests to measure olfactory acuity and interviews to weed out any negative bias against certain odors. *Id.* ¶ 13. The panelists also underwent proper training. *See* RJN Ex. 8 at 79. Each panelist opened the door to the booth (which was about the size of a small bathroom), took sniffs for five seconds, and then assessed the smell from a scale of 0 to 15. RJN Ex. 5 at ¶ 14; *see also* Order, *Church & Dwight*, No. 11-cv-1865, Dkt. No. 51 at 5. This test was then repeated four times for a total of 44 samplings. RJN Ex. 5 at ¶ 15. These blind test results showed that carbon was significantly more effective than baking soda. *Id.* ¶ 17.

**Litter test:** This test involved burying actual cat feces and urine in litter boxes filled with either Fresh Step or Super Scoop. Specifically, eight litter boxes (four with Fresh Step, the other four with Super Scoop) were prepared, and equal amounts of fresh cat feces and urine were placed into each of the litter boxes. *See* RJN Ex. 5 at ¶ 19. The boxes were scooped and replenished daily. *See id.* Trained sensory panelists then evaluated the boxes three times a week over 32 days, and

assessed the intensity of the smell emanating from each box. *See id.* at ¶¶ 25-26; *see also* RJN Ex. 4 at 4. The panelists were not informed of the identity of the cat litter brand to ensure blind testing. *See* RJN Ex. 5 at ¶ 20.   The test results showed that Fresh Step (with carbon) was superior to Super Scoop (with baking soda) in reducing cat waste odors. *See id.* at ¶¶ 25-27.

**IHUT test:** For the in-home usage test, an independent research company screened and selected consumers in 20 different cities, who were given unmarked packages of cat litter to take home and use for three weeks.  They were then interviewed extensively and responded to questions about the odor control of the unmarked packages of cat litter they used. *See* RJN Ex. 5 at ¶¶ 28-33; RJN Ex. 4 at 5.  Like the other two tests, this was performed in a blind fashion to ensure there was no bias.  This test again confirmed that Fresh Step was more effective than Super Scoop, and that consumers gave high marks to Fresh Step's ability to fight cat waste odor. *See id.*

During a hearing held for Church & Dwight's motion for a preliminary injunction, the judge limited the scope to "the reliability and validity of the so-called jar test, nothing else."  RJN Ex. 8 at 2.  He did not hear any evidence on either the litter test or the in-home usage test at that hearing. Further, Church & Dwight's preliminary injunction motion concerned only the February 2011 commercial, not any of the other commercials in dispute here.

Nearly seven months after holding that hearing and more than nine months after Church & Dwight moved for a preliminary injunction, the judge issued a preliminary injunction barring the telecast of Clorox's February 2011 commercial solely on the basis that "Clorox's [jar] test is insufficiently reliable." *See* Order, *Church & Dwight*, No. 11-cv-1865, Dkt. No. 51 at 1. First, the judge believed that the results of the jar test were implausible because he believed that too many of the odor results for the Fresh Step jars were too low.[2] *Id.* at 8-9.  Second, the judge suggested that

---

[2]   The judge appeared to ignore the well-accepted *Daubert* rule that a court must scrutinize the methodology, not the results, of a scientific test in assessing its validity. *See, e.g., Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1422 (9th Cir. 1998) ("The district court properly considered the methodology [the expert] used, rather than the test results").  The judge also appeared to misunderstand the nature of the jar test:  In criticizing the low odor results, he stated that the jar test involved panelists "stick[ing] their noses in the jars of excrement."  Order, *Church & Dwight*, No. 11-cv-1865, Dkt. No. 51 at 10.  As noted above, the jars were placed in a booth for approximately 24 hours, and each panelist opened the door to the booth and sniffed for five seconds.  They never placed their noses in

(Continued…)

even if carbon generally is more effective than baking soda at eliminating odor in the jar test, it cannot be inferred that carbon performs better than baking soda in the specific context of cat litter. *Id.* Notably, the judge did not consider Clorox's additional substantiation – the cat litter test and IHUT test that both showed that Fresh Step with carbon was more effective than Super Scoop with baking soda.  His decision ignored these two other tests in stating that Clorox lacked the substantiation for the implied claim that Fresh Step is more effective.

After the preliminary injunction decision was issued, Clorox filed an emergency motion for expedited review. Shortly after the Second Circuit Court of Appeals granted the motion, the parties entered into settlement discussions.  No final judgment issued in that matter because the appeal was withdrawn and the Lanham Act matter was dismissed with prejudice on April 20, 2012.

## **PROCEDURAL HISTORY**

Within days of the preliminary injunction order, the first set of plaintiffs' lawyers cobbled together a class action lawsuit against Clorox, relying on the New York judge's decision to allege consumer fraud and harm.  Five additional copycat lawsuits were then filed in the Northern District of California and two other out-of-state district courts.   All of these cases have now been consolidated before this Court.  Dkt. Nos. 20, 28.

On March 21, 2012, Clorox filed a motion to dismiss the consolidated action.  Dkt. No. 25. One of Clorox's key arguments was that Plaintiffs' claims were not actionable under California's consumer protection statutes because Plaintiffs relied entirely on a lack of substantiation theory that federal courts in the Ninth Circuit have rejected.  *Id*. at 9-13.  Specifically, Plaintiffs' complaint alleged that "Clorox has no evidence to support its superiority claims," and identified a common question of fact as "[w]hether Clorox had adequate substantiation for its claims prior to making them."  Luszcz Compl. ¶¶ 7, 44(a).  Further, Plaintiff claimed that Clorox had violated California consumer protection statutes by "representing through its advertisements of the product as described above when it knew, or should have known, that the representations and advertisements were *unsubstantiated*, false and misleading."  *Id*. ¶ 49 (emphasis added).

---

the jars and never even entered the booth itself.  RJN Ex. 5 at ¶ 11.

Plaintiffs opted not to respond to the motion to dismiss, and instead on April 11, 2012 filed their Amended Complaint. Dkt. No. 29. In an implicit admission that California does not recognize a lack of substantiation theory outside the Lanham Act context, Plaintiffs amended their complaint by removing almost every reference to the word "substantiation."[3] *Compare* Luszcz Compl. ¶ 7 ("The truth, however, is that Clorox has no evidence to support its superiority claims.") *with* Compl. ¶ 7 ("The truth, however, is that Clorox's superiority representations are false, misleading, and likely to deceive a reasonable consumer."). However, Plaintiffs did not excise all references to Clorox's alleged lack of substantiation. The amended complaint continues to allege that Clorox knew or should have known "that the representations and advertisements were *unsubstantiated*, false and misleading." Compl. ¶ 74 (emphasis added). And, more importantly, Plaintiffs' revisions do not alter the substantive basis of Plaintiffs' complaint. At its core, Plaintiffs' claims remain rooted in Clorox's alleged lack of substantiation for its advertising claims, based on the preliminary finding in the Church & Dwight litigation.[4]

## ARGUMENT

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where a plaintiff's complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See, e.g.*, *City of Arcadia v. U.S. Envtl. Prot. Agency*, 411 F.3d 1103, 1106 n.3 (9th Cir. 2005). Although factual averments must be accepted as true, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Secs. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (quoting *In re Verifone Secs. Litig.*, 11

[3] Plaintiffs have also abandoned their claims related to statements made on Fresh Step's packaging and on Clorox's website. The amended complaint is thus limited to Clorox's Fresh Step television commercials.

[4] Plaintiffs' amended complaint also includes causes of action arising under Florida, New York, New Jersey, and Texas law. Compl. ¶¶ 96-156. Plaintiffs allege that they intend to rely on these out-of-state claims only "in the event the Court finds that California substantive law does not apply to the [out-of-state] Plaintiffs' claims." Compl. ¶¶ 97, 108, 120, 129, 136, 141. For this reason, Clorox has not addressed in this motion the merits of the six causes of action arising under non-California law. In the event this Court holds that other states' laws apply here, Clorox intends to brief the merits of Plaintiffs' Florida, New York, New Jersey, and Texas causes of action under Federal Rule of Civil Procedure 12(c).

F.3d 865, 868 (9th Cir. 1993); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a "formulaic recitation of the elements of a cause of action will not do").  A complaint that fails to satisfy this pleading standard should be dismissed with prejudice if amendment cannot cure the deficiency.  *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990) (holding statement in advertisement was non-actionable puffery and denying leave to amend).  Federal courts in the Ninth Circuit and elsewhere routinely grant motions to dismiss where, as here, it is evident from the packaging or advertisement itself that the representations are unlikely to deceive a reasonable consumer because they are objectively true or amount to mere puffery.[5]

Federal Rule of Civil Procedure 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud."  Rule 9(b)'s pleading requirement applies to California's consumer fraud statutes.  *See Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. 09-1597, 2010 WL 3448531, at *7 (N.D. Cal. Sept. 1, 2010) ("UCL, FAL and CLRA claims sound in fraud and are therefore subject to the scrutiny of Rule 9(b)"); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) (same).    Claims alleging misrepresentations in advertisements or on product packaging may be disposed of on a Rule 9(b) motion to dismiss.  *See, e.g.*, *Herrington*, 2010 WL 3448531, at *7.

---

[5] *See, e.g.*, *Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (dismissing UCL, FAL, and CLRA claims challenging statements on promotional mailers on the ground that they were unlikely to deceive the public); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. 10-1044, 2011 WL 159380, at *5-6 (N.D. Cal. Jan. 10, 2011) (dismissing UCL, FAL, and CLRA claims challenging representations on packaging of Drumstick and Dibs ice cream products because representations not likely to deceive a reasonable consumer); *Videtto v. Kellogg USA*, 08-1324, 2009 WL 1439086, at *2-3 (E.D. Cal. May 21, 2009) (dismissing UCL, FAL, and CLRA claims challenging representations and images on Froot Loops packaging as unlikely to deceive a reasonable consumer); *Sugawara v. Pepsico, Inc.*, No. 08-1335, 2009 WL 1439115, at *2-4 (E.D. Cal. May 21, 2009) (dismissing UCL, FAL, and CLRA claims challenging representations and images on Cap'n Crunch packaging as unlikely to deceive a reasonable consumer); *McKinniss v. Sunny Delight Beverages Co.*, No. 07-2034, 2007 WL 4766525, at *5 (C.D. Cal. Sept. 4, 2007) (dismissing UCL, FAL, and CLRA claims challenging representations and images on SunnyD packaging as unlikely to deceive a reasonable consumer); *Fraker v. KFC Corp.*, No. 06-1284, 2007 WL 1296571, at *3 (S.D. Cal. Apr. 30, 2007) (dismissing case on the ground that the challenged statements constituted non-actionable puffery); *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 30 (D.D.C. 2007) (granting motion to dismiss because challenged statements were puffery).

1    Federal Rule of Civil Procedure 12(f) permits a court to strike from the pleadings any

2    "immaterial" or "impertinent" matter.  *Moses v. GMAC Mortg., Inc.* No. 09-CV-1961 W(BLM),

3    2011 WL 1259818, at *1 (S.D. Cal. Apr. 4, 2011) (citation omitted).  A motion to strike is designed

4    to "avoid the unnecessary expenditures that arise throughout litigation by dispensing of any spurious

5    issues prior to trial." *Id.* (citations omitted).  Courts are willing to strike class allegations at the

6    pleading stage if the allegations are improper on their face. *See, e.g., Sanders v. Apple, Inc.*, 672 F.

7    Supp. 2d 978, 990–91 (N.D. Cal. 2009).

8    **I.    The Complaint Must Be Dismissed Because Alleged Lack of Substantiation for Clorox's**
9        **Statements in Its Commercials Is Not Actionable as a Matter of Law in California.**

10    Plaintiffs' claims must be dismissed because the alleged misrepresentations are not

11    actionable.  To state a claim for false advertising under the UCL, FAL, or CLRA, Plaintiffs must

12    allege that Clorox made statements "likely to deceive a reasonable consumer." *Freeman*, 68 F.3d at

13    289; *Sunny Delight*, 2007 WL 4766525, at *3.  "'Likely to deceive' implies *more than a mere*

14    *possibility that the advertisement might conceivably be misunderstood by some few consumers*

15    *viewing it in an unreasonable manner.*" *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508

16    (2003) (emphasis added).  The alleged misstatements must be "such that it is probable that a

17    significant portion of the general consumer public or of targeted consumers, acting reasonably in the

18    circumstances, could be misled." *Id.*

19    Courts in the Ninth Circuit have held that lack of alleged substantiation alone is not a

20    cognizable theory under California's consumer protection statutes, and therefore Plaintiffs' claims

21    must be dismissed.  Further, the New York judge's prior Lanham Act decision has no preclusive

22    effect and is not relevant to this consumer class action.  Accordingly, this Court must conduct its

23    own independent analysis into whether Plaintiffs' complaint states a plausible claim that the

24    challenged representations are likely to deceive a reasonable consumer.

25        **A.  California does not recognize a consumer claim for alleged lack of substantiation.**

26    This Court must dismiss Plaintiffs' complaint because it is premised solely on the allegation

27    that Clorox's representations about the relative effectiveness of carbon versus baking soda are not

28    supported by sufficiently rigorous scientific tests.  Federal courts in California and elsewhere have

1    held that the mere alleged lack of substantiation is not sufficient to sustain a claim of *consumer*

2    fraud.  Only competitors can bring such a lack of substantiation claim under the Lanham Act.

3         Plaintiffs claim that they purchased Fresh Step cat litter "based on" advertising claims such

4    as cats "choose" Fresh Step, and Fresh Step is made "with carbon, which is more effective at

5    absorbing odors than baking soda."  Compl. ¶¶ 1, 5, 15.  Plaintiffs do *not* contend that the cat litter

6    they purchased was not "effective at absorbing odors" or otherwise failed to serve its intended

7    purpose.  For example, although they acknowledge that "odor-control is a major marketing hook for

8    cat litter manufacturers" since cat waste has "an extremely strong and unpleasant odor" (*id.* ¶ 24),

9    Plaintiffs never allege that the Fresh Step cat litter they purchased failed to eliminate their cat's

10   waste odors or that it did not perform in the manner a reasonable consumer would expect a cat litter

11   to perform.  Instead, the gravamen of Plaintiffs' complaint is still that the advertising claims are

12   improper because they lack scientific proof and, thus are "unsubstantiated."  *Id.* ¶ 74 (claiming

13   Clorox violated the CLRA by making representations it knew or should have known were

14   "unsubstantiated"); *see also id.* ¶ 46 (quoting Judge Rakoff's statement that "the Jar Test on which

15   Clorox based its claims is unreliable"); ¶ 35 (alleging that "Fresh Step's carbon-containing cat litter

16   is not more effective at eliminating cat odors than other cat litters").[6]

17        But Plaintiffs cannot state a consumer fraud claim on the ground that Clorox's advertising

18   statements are supposedly "unsubstantiated" since lack of substantiation is not a cognizable theory

19   under the UCL, FAL, or CLRA.  And Plaintiffs' attempt to conceal the essence of their complaint by

20   deleting nearly all references to the word "substantiation" does not save their complaint from

21   dismissal.  In the recent *Barrera v. Pharmavite, LLC* decision, the plaintiff claimed that the

22   defendant did not have "competent scientific evidence to support its health benefit claims" that its

23   TripleFlex supplements would "improve joint comfort, mobility and flexibility."  *Barrera v.*

24   *Pharmavite, LLC*, No. 11-4153, Dkt. No. 31, at 3-4 (C.D. Cal. Sept. 19, 2011) (RJN Ex. 9 ).  The

25   court dismissed the case "[b]ecause there is no private remedy for unsubstantiated advertising [under

---

[6]  As explained above, Clorox's assertions are in any event substantiated by three different tests — litter test, jar test, and in-home usage test.

California law]." *Id.* at 3 (alteration in original). Notably, the court rejected the same tactic the Plaintiffs attempt here: The plaintiff in that case argued that her amended complaint alleged that the defendant's claims are in fact "false, misleading and/or likely to deceive the consuming public." *Id.* at 4. But the court held that while "some of the claims in [plaintiff's new] complaint conclusorily state that [defendant] makes false and misleading statements, when considered as a whole as it must be for the purposes of a 12(b)(6) motion, the complaint primarily alleges the claims . . . lack substantiation." *Id.* at 4 (internal citation omitted).

Likewise here, Plaintiffs do not allege that Fresh Step failed to perform as expected of a cat litter in reducing odors. Further, although Plaintiffs have removed most of their direct references to lack of substantiation, "when considered as a whole" it is clear that the "primary focus" of the complaint is the "supposed lack of substantiation" for Clorox's claim that carbon is more effective than baking soda at fighting odors. *Id.* at 4. A side-by-side comparison of Plaintiffs' allegations with those in *Barrera* confirms that both sets of plaintiffs in the two cases failed to "articulate[] what about defendant's advertising claim [wa]s deceptive beside the fact that it [wa]s supposedly unsubstantiated." *Barrera*, No. 11-4153, ECF No. 31 at 3-4 (RJN Ex. 9):

| The Complaint Dismissed in *Barrera* | Plaintiffs' Complaint |
|---|---|
| "[D]efendant represented (and continues to represent) . . . that it had competent scientific evidence to back up these assertions when it did not possess such evidence." (at 3-4) | "'[T]he Jar Test on which Clorox based its claims is unreliable . . . .'" ¶ 46. |
| "Defendant failed to inform plaintiff . . . that it did not possess competent scientific evidence to support these health benefit claims." (at 3-4) | Clorox "knew, or should have known, that the representations were unsubstantiated." ¶ 74. |
| "[T]here is no competent scientific evidence that taking glucosamine . . . results in the body metabolizing it." (at 3-4) | "[S]cientific studies have shown, carbon-based cat litter is not superior to other cat litter." ¶ 7. |

Another instructive case is *Chavez v. Nestle USA, Inc.*, No. 09-9192, 2011 WL 2150128, at *5 (C.D. Cal. May 19, 2011). In that case, plaintiffs complained that Nestle lacked substantiation for its claim that DHA, an ingredient in its juice products, may help support early-age brain and eye development. *Id.* at *2. Noting that "there are no allegations that consumers were misled [for

example] regarding the actual amount of DHA in the products," the court stated that the "primary focus" of the lawsuit was the "supposed lack of substantiation for the advertised attributes of the nutrients contained in the Brain Development and Immunity products." *Id.* at *5.  But the court held that there is no case law "support for the contention that a lack of substantiation could render Defendant's claim misleading." *Id.* at *6.  Unlike competitor companies who can sue for lack of substantiation, "[p]rivate plaintiffs are not authorized to demand substantiation for advertising claims." *Id.* at *5.  Similarly, in *Stanley v. Bayer Healthcare LLC*, No. 11cv862, 2012 WL 1132920 (S.D. Cal. Apr. 3, 2012), plaintiff alleged that defendant's health claims regarding its probiotic supplements were false and misleading because "they lack[ed] proper scientific substantiation." *Id.* at *4.  The court rejected plaintiff's theory as non-actionable.  Noting that plaintiffs' experts had "[a]t no time" opined that the supplements were "ineffective," but rather "repeatedly assert[ed] the statements are rendered false or misleading due to a lack of substantiation," the court dismissed plaintiff's complaint because "alleged lack of substantiation does not render claims false and misleading under the UCL or CLRA." *Id.* at *4-6.

Other decisions have similarly dismissed consumer lawsuits based on lack of substantiation. *See, e.g.*, *Fraker v. Bayer Corp.*, No. 08-1564, 2009 U.S. Dist. LEXIS 125633, at *22 (E.D. Cal. Oct. 2, 2009) ("Plaintiff has provided no authority for the proposition that the absence of substantiation of an advertising claim is, itself, false or somehow misleading").[7]    In other words, while a competitor, such as Church & Dwight, can sue a company for making unsubstantiated advertising claims under the Lanham Act, a consumer cannot do so under the consumer protection laws.  *Compare Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 590 (3d Cir. 2002)) *with Fraker*, 2009 U.S. Dist. LEXIS 125633, at *21.  These cases underscore that consumer protection laws are intended to protect consumers and ensure that products or services perform as advertised; these laws are not aimed at resolving disputes between

---

[7]  Other courts have similarly suggested that lack of substantiation is not a cognizable claim under other states' consumer protection laws.  *See, e.g., Franulovic v. Coca Cola Co.*, 390 F. App'x 125, 128 (3d Cir. 2010) (claim for false advertising under New Jersey consumer fraud statute concerning "calorie-burning" claim of a drink "cannot be premised on a prior substantiation theory of liability").

1    competing companies about substantiation or other technical claims.   Here, as Plaintiffs concedes, a

2    reasonable consumer is concerned about whether a cat litter eliminates cat waste odor (*see* Compl. ¶

3    24).  And there is no dispute that Fresh Step fights odors and performs what a reasonable consumer

4    would expect from cat litter.

5        Under California's consumer fraud statutes, a plaintiff must plausibly allege that an

6    advertisement is false or misleading such that it is "likely to deceive a reasonable consumer."

7    *Freeman*, 68 F.3d at 289; *Sunny Delight*, 2007 WL 4766525, at *3.  Plaintiffs have failed to do so

8    here. As explained above, Plaintiffs do not contend that the cat litter they purchased was not

9    "effective at absorbing odors" or otherwise failed to serve its intended purpose.  Nor do Plaintiffs

10   articulate how Clorox's supposed lack of substantiation renders false the over-arching message that

11   Fresh Step is effective at controlling waste odor.  As in *Fraker* and *Chavez*, "Plaintiff[s] ha[ve]

12   provided no authority for the proposition that the absence of substantiation of an advertising claim is,

13   itself, fals[e] or somehow misleading."  *See Fraker*, 2009 U.S. Dist. LEXIS 125633, at *22

14   (dismissing complaint alleging plaintiffs were damaged by purchasing weight-loss product based on

15   "unsubstantiated claims of weight control benefits"); *Chavez*, 2011 WL 2150128, at *6 (dismissing

16   UCL and FAL claims where "Plaintiffs have offered no support for the contention that a lack of

17   substantiation could render Defendant's claims misleading").  In short, "the 'primary focus' of

18   [Plaintiffs' complaint] can only be said to be 'a supposed lack [of] substantiation for the advertised

19   attributes" of Fresh Step cat litter.  *Barrera*, No. 11-4153, ECF No. 31 at 3 (quoting *Chavez*, 2011

20   WL 2150128, at *5).  And, because lack of substantiation is not a cognizable theory under

21   California's consumer statutes, Plaintiffs' claims must be dismissed.

22       **B.  The New York judge's preliminary injunction is not entitled to preclusive effect.**

23       Plaintiffs cannot rely on the New York judge's preliminary injunction order in the Lanham

24   Act matter to claim that Clorox's claims violate California consumer protection laws.  *See* Compl. ¶¶

25   45-46.  That order is irrelevant to the proceeding before this Court, and moreover is not entitled to

26   preclusive effect because it was not a final adjudication on the merits.  "A prior decision has

27   preclusive effect where: (1) the issue necessarily decided at the previous proceeding is identical to

28   the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the

merits; and (3) the party against whom collateral estoppels is asserted was a party or in privity with a party at the first proceeding." *Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, No. 04-2123, 2007 WL 1239220, at *11 (N.D. Cal. Apr. 27, 2007) (citing *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005)).

It is well established that a preliminary injunction — which is decided in an expedited manner with limited evidence and a lower burden of proof — is not a final adjudication on the merits. *See In re Super Premium Ice Cream Distrib. Antitrust Litig.*, 691 F. Supp. 1262, 1269 (N.D. Cal. 1988). As a result, "issues litigated in a preliminary injunction action are not res judicata and do not form a basis for collateral estoppel." *Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1350 (9th Cir. 1982); *see also Abbott*, 2007 WL 1239220, at *12-13 (refusing to afford preclusive effect to preliminary injunction order); *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 754 (S.D.N.Y. 1990) (same). The judge's order itself acknowledges the tentative nature of its ruling by noting that the court intended "to schedule further proceedings" to address the merits of the parties' claims. *See Church & Dwight*, No. 11-1865, ECF No. 51 at 13.[8]

Further, the preliminary injunction order has no preclusive effect because the issues addressed in that proceeding are not "identical" to the issues before this Court. *See Abbott*, 2007 WL 1239220, at *11. The New York decision concerned whether (i) a single commercial (ii) violated the federal Lanham Act on the grounds that (iii) one of Clorox's sensory tests was "not sufficiently reliable" or "simply irrelevant" to substantiate Clorox's claim about the relative effectiveness of carbon. *See* No. 11-1865, ECF No. 51 at 3-5. In contrast, this California class action concerns (i) whether various "visuals, voiceovers, and demonstrations" on "multiple television commercials" (ii) violate California's consumer protection laws on the ground that (iii) the statements are likely to mislead a reasonable consumer. *See* Compl. ¶ 29. Further, the New York case focused on harm to a competitor, not the consumer. The New York court accordingly dealt with whether Clorox's ads were "likely to divert customers" from Church & Dwight's products to

---

[8] Those "further proceedings" did not occur because the case was dismissed on April 20, 2012. *See Church & Dwight Co.*, No. 11-1865, ECF No. 58 (S.D.N.Y. April 20, 2012). As set forth above, Clorox believes that the district court made significant factual and legal errors in its ruling.

Fresh Step.  *Id.* ¶ 46 (quoting Church & Dwight preliminary injunction decision).  The court *did not* find that those customers were harmed by the commercial in any way.  As one court put it, "Lanham Act false advertising cases invariably involve claims asserted by 'competitors of the wrongdoer' or by plaintiffs protecting other *commercial* interests." *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1183 (8th Cir. 2011) (holding district court erred in "equating the standards for relief under the Lanham Act" with state-law consumer statutes).

## II. Claims Based on the Statements that Cats "Like" or "Are Smart Enough to Choose Fresh Step" Must Be Dismissed as Puffery That No Reasonable Consumer Would Rely Upon.

Plaintiffs' claims based on Clorox's message that cats are "smart enough" to choose Fresh Step or that they "like" Clorox's brand of cat litter must be dismissed because such "an alleged misrepresentation would not deceive a reasonable consumer or amounts to mere puffery."  *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994); Compl. ¶ 28 (objecting to the claim that "cats 'choose' Fresh Step over other cat litters") *see also Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("the determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion").

It is well settled that "[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (quoting *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005)).   "To be actionable, advertisements must be verifiable factual representations that can be demonstrated to be true, or false."  *Lyons v. Coxcom, Inc.*, No. 08-2047, 2009 WL 347285, at *11 (S.D. Cal. Feb. 6, 2009), *vacated on other grounds*, 718 F. Supp. 2d 1232 (S.D. Cal. 2009); *see also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir.1999) (affirming dismissal where representation "was not a specific and measurable claim, capable of being proved false"); *Edmunson*, 2011 WL 1897625, at *3, 6 ("subjective representations related to product superiority" "are non-actionable puffery and do not establish express warranties").

Here, statements such as "cats like boxes . . . with Fresh Step Litter inside," "cats are smart" and cats are "smart enough to choose the litter with less odors" are classic examples of puffery. In claiming that cats are "smart enough" to choose Fresh Step, the commercials showed humorous clips of cats appearing to open a kitchen cabinet drawer to steal food or preventing a dog from entering the house, along with the voiceover, "Cats are smart. They can outsmart their humans. Their canines. And locked doors. They're also smart enough to choose litter with less odors." Schlesinger Decl. ¶ 3, Ex. A. No reasonable consumer would believe that, based on the light-hearted home movies shown, that cats are smart enough to understand that carbon is more effective than baking soda in reducing odors or that cats "like" or "choose" Fresh Step. These statements are quintessential non-actionable puffery.

### III.    Plaintiffs Fail to Plead Their Statutory Claims with the Requisite Particularity.

Plaintiffs allege that Clorox engaged in "fraudulent business acts and practices" though its television advertising. Compl. ¶¶ 87, 88; *see also id.* ¶ 73(d) (alleging Clorox sold Fresh Step "with intent not to sell it as advertised"); *id.* ¶ 93 (alleging Clorox knew its advertising was false or misleading). Because their statutory claims sound in fraud, Plaintiffs' allegations "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124-25 (holding that "Rule 9(b)'s heightened pleading standards apply to violations of the CLRA and UCL"). Plaintiffs must also "set forth what is false or misleading about a statement and why it is false." *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1002 (S.D. Cal. 2011).

Plaintiffs' allegations are not sufficiently particular and the complaint should, therefore, be dismissed. *See Kearns*, 567 F.3d at 1126-27 (affirming dismissal of CLRA and UCL claims for failure to satisfy Rule 9(b)). The complaint is devoid of basic facts of what alleged misrepresentations Plaintiffs saw, when they saw them, or where they saw them. For example, while Plaintiffs claim Clorox made misleading statements through "multiple television commercials" (Compl. ¶ 29), Plaintiffs never specify the particular advertisements or representations on which they supposedly relied. *Compare id.* ¶ 15 (alleging only that "Plaintiff was exposed to and saw Clorox's marketing and advertising claims") *with Hydroxycut*, 801 F. Supp. 2d at 1006 (dismissing complaint

where plaintiff "was exposed to and read Defendants' advertising claims," but did not identify "what representations each Plaintiff relied on").

Nor does Plaintiffs' complaint "specify when [they were] exposed to" the allegedly misleading statements or when they allegedly bought Fresh Step. *Kearns*, 567 F.3d at 1126; *see also Hydroxycut*, 801 F. Supp. 2d at 1006-07 (dismissing claims where "[n]o facts are alleged as to the timing of the purchase in relation to the Plaintiff's exposure to the advertising claims or as to Plaintiff's reliance on the advertising claims"); *Eshagh v. Terminiz Int'l Co., L.P.*, No. 11-222, 2011 U.S. Dist. LEXIS 80848, at *12-13 (E.D. Cal. July 25, 2011) (dismissing UCL and FAL claims where complaint failed to "allege what specific representations or advertising materials Plaintiff relied on" and "when the misleading statements Plaintiff allegedly relied on were made"). As a result, Plaintiffs' complaint should be dismissed for failure to satisfy Rule 9(b).

## IV.    Plaintiffs Fail to Properly Plead a Claim for Breach of Express Warranty.

"To state a claim for breach of express warranty under California law, a plaintiff must allege (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused the plaintiff's injury." *Nabors v. Google, Inc.*, No. 10-3897, 2011 WL 3861893 at *4 (N.D. Cal. Aug. 30, 2011) (citing *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)). Here, Plaintiffs allege that they "formed a contract with Clorox at the time [they] purchased Fresh Step," and that "[t]he terms of that contract include the promises and affirmations of fact made by Clorox on its product labels and through its marketing campaigns." Compl. ¶ 158. Plaintiffs further contend: "This product labeling and advertising constitutes express warranties, became part of the basis of the bargain," and were breached by Clorox "not providing the Fresh Step products as advertised." *Id.* ¶¶ 158, 164.[9]

This "formulaic recitation of the elements of [the] cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, stating a claim for breach of express warranty requires Plaintiffs to, among

---

[9]    As explained above, *see supra* note 3, Plaintiffs abandoned all allegations regarding Clorox's product packaging in their amended complaint. As such, Plaintiffs' reference to Clorox's "product labels" cannot support Plaintiffs' claim for breach of express warranty.

1    other things, "specifically allege[] which representations [they] saw, heard, or read" and, thus,

2    "formed the 'basis of [their] bargain.'" *Hydroxycut*, 801 F. Supp. 2d at 1008; *see also Nabors*, 2011

3    WL 3861893, at *4 ("At the least, [plaintiff] must identify the particular commercial or

4    advertisement upon which he relied and must describe with the requisite specificity the content of

5    that particular commercial or advertisement."). Plaintiffs have failed to do so here. *See McKinney v.*

6    *Google, Inc.*, No. 10-1177, 2011 WL 3862120, at *4 (N.D. Cal. Aug. 30, 2011) ("General assertions

7    about representations or impressions given by Defendants about the phone's 3G capabilities are not

8    equivalent to a recitation of the exact terms of the underlying warranty"); *see also Edmunson v.*

9    *Proctor & Gamble Co.*, No. 10-2256, 2011 WL 1897625, at *6 (S.D. Cal. May 17, 2011) (providing

10   reproductions of the challenged advertisements is insufficient to "demonstrate[] the existence of" an

11   express warranty or "provide[] its exact terms"). Plaintiffs have also failed to allege with adequate

12   specificity their "reasonable reliance on the particular commercial or advertisement." *Nabors*, 2011

13   WL 3861893, at *4.

14        Even assuming Plaintiffs properly identified the advertisements on which they supposedly

15   relied in purchasing Fresh Step, their claims would fail because none of the challenged statements

16   constitute "an affirmation of fact or a promise." *Edmunson*, 2011 WL 1897625, at *5. To qualify as

17   an express warranty, statements must describe specific characteristic of a product; "vague or highly

18   subjective product superiority claims" do not create express warranties. *Id.* The challenged

19   representations are "subjective product superiority claims" (*id.*) and, thus, cannot form the basis of a

20   claim for breach of express warranty. Further, the warranty claim is "predicated on the unsupported

21   legal proposition that an advertising claim creates both a contractual obligation as to the claim's

22   truthfulness *and* a contractually enforceable duty of the advertiser to have at hand scientific evidence

23   to substantiate the claim." *Fraker*, 2009 U.S. Dist. LEXIS 125633, at *24 (dismissing claim that

24   "Defendant's advertisements create[d] a set of express warranties and that Defendant's failure to

25   substantiate those advertising claims constitute[d] breach"). As noted above, lack of alleged

26   substantiation is not a cognizable claim by a consumer.

27        Finally, the breach of warranty claim fails because there is no privity. "The general rule is

28   that privity of contract is required for an action for breach of either express or implied warranty and

1   that there is no privity between the original seller and a subsequent purchaser who is no way a party

2   to the original sale." *Blanco v. Baxter Health Care Corp.*, 158 Cal. App. 4th 1039, 1058-50 (2008);

3   *see also Moncada v. Allstate Ins. Co.*, 471 F. Supp. 2d 987, 998 (N.D. Cal. 2006).  Here, Plaintiffs

4   do not allege that they purchased these products directly from Clorox.  Although some cases have

5   found an exception to the privity rule for personal injury claims, there is no such claim here.

6   **V.      Plaintiffs' Nationwide Class and Subclass Allegations Should be Stricken.**

7              **A.  The Ninth Circuit has strongly suggested that California's consumer protection laws**
8                   **cannot be applied nationwide to out-of-state putative class members.**

9          Courts are willing to strike class allegations at the pleading stage if the allegations are

10  improper on their face.  *See, e.g., Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990–91 (N.D. Cal.

11  2009).  Here, Plaintiffs attempt to bring a nationwide class action solely on the basis of California

12  consumer protection statutes.  Compl. ¶ 49 (defining the proposed class to include "[a]ll persons or

13  entities that purchased Fresh Step cat litter in the United States").  But the Ninth Circuit has strongly

14  suggested that a nationwide class cannot be certified on the basis of California's consumer protection

15  statutes.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).  In *Mazza*, the plaintiffs

16  brought a putative class action against Honda alleging violations of California consumer protection

17  statutes based on Honda's allegedly false advertising of its Collision Mitigation Breaking System

18  ("CMBS").  *Id.* at 587.  The district court granted plaintiffs' motion to certify "a nationwide class of

19  people in the United States" who purchased vehicles equipped with CMBS.  *Id.*  Despite the fact that

20  the class included members from other  states, the district court held that California law applied

21  nationwide.  *Id.*  The Ninth Circuit reversed, finding that "the district court abused its discretion in

22  certifying a class under California law that contained class members who purchased or leased their

23  car in different jurisdictions with materially different consumer protection laws."  *Id.* at 590.  In

24  particular, the Ninth Circuit noted that the "district court did not adequately recognize that each

25  foreign state has an interest in applying its law to transactions within its borders and that, if

26  California law were applied to the entire class, foreign states would be impaired in their ability to

27  calibrate liability to foster commerce."  *Id.* at 593.

28

Courts in the Northern District of California have followed *Mazza* in refusing to certify nationwide classes on the basis of California consumer protection statutes. *See, e.g.*, *In re High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2012 U.S. Dist. LEXIS 55302 (N.D. Cal. Apr. 18, 2012) (citing *Mazza* and recognizing that "the Ninth Circuit has foreclosed the certification of nationwide classes under the UCL"); *Ralston v. Mortgage Investors Group, Inc.*, 2012 U.S. Dist. LEXIS 45545 (N.D. Cal. Mar. 30, 2012) ("In light of the Ninth Circuit's recent decision in *Mazza* . . ., the Court concludes that the class must be limited to California residents."). Here, Plaintiffs' putative nationwide class exhibits the same infirmity as in *Mazza*, and the nationwide class allegations should be stricken.

In the event this Court rejects application of California law to Plaintiffs' putative nationwide class, Plaintiffs seek in the alternative to certify subclasses of out-of-state plaintiffs governed by the laws of their respective jurisdictions. Compl. ¶ 69. These subclasses cannot stand. Under Federal Rule of Civil Procedure 23, courts must consider "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). "[W]hen the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001). For this reason, the court in *Utility Consumers' Action Network v. Sprint Solutions, Inc.*, for example, denied certification of a nationwide class that would have demanded the application of different states' laws to multiple subclasses:

> [T]he Plaintiffs have failed to show that application of California law to a nationwide class is appropriate. Therefore, application of various state laws would have to be applied to several subclasses. The application of several state laws to one action would make the trial exceedingly complex. . . . Certifying a nationwide class in this situation would not be a superior method of adjudicating the Plaintiffs' claims.

259 F.R.D. 484, 487-88 (S.D. Cal. 2009). Plaintiffs' proposed subclasses are similarly complex and unmanageable, and cannot salvage Plaintiffs' class allegations.

**B.  Out-of-state Plaintiffs lack standing to sue under California's law.**

Even if the Court rules that California law can apply nationwide, the out-of-state Plaintiffs do not have standing to bring claims under the UCL, CLRA, or FAL.  Six of the seven named Plaintiffs are Florida, Texas, New York, or New Jersey residents who do not claim to have purchased Fresh Step in California.  *See* Compl. ¶¶ 15-19, 21.  Because Plaintiffs are out-of-state residents, and the complaint does not allege where they purchased Fresh Step, it is reasonable to infer that Plaintiffs' purchase of Fresh Step — and thus their alleged injury — occurred in their state of residence.  *See Tidenberg v. Bidz.com, Inc.*, No. 08-5553, 2009 U.S. Dist. LEXIS 21916, at *11 (C.D. Cal. Mar. 4, 2009) (making "reasonable inference" on motion to dismiss that, in the absence of allegations to the contrary, plaintiff purchased product in her state of residence).

California's consumer fraud statutes do not have force or operate beyond the boundaries of California.  *Morgan v. Harmonix Music Sys., Inc.*, No. 08-5211, 2009 WL 2031765, at *2 (N.D. Cal. July 30, 2009); *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222-23 (1999).  Thus, these California statutes are not applicable to claims of non-California residents injured by conduct that took place outside California's borders.  *Churchill Village, L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000), *aff'd*, 361 F.3d 566 (9th Cir. 2004); *Morgan*, 2009 WL 2031765, at *2.

For example, in *Morgan*, the plaintiff was a resident of Kansas.  2009 WL 2031765, at *2.  He did not purchase the allegedly defective item (Rock Band) in California.  *Id.*  And, although the complaint alleged that one defendant was headquartered in California, it "fail[ed] to allege what conduct of the defendants, if any, that violated the CLRA took place in California or how [plaintiff] was injured in California."  *Id.*  As a result, the court dismissed the CLRA claim under Rule 12(b)(6).  *Id.*; *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 785 F. Supp. 2d 883, 917-18 (C.D. Cal. 2011) (dismissing UCL, CLRA, and FAL claims where non-California resident plaintiffs failed to "allege[] with sufficient detail that the point of dissemination" of the "advertising and promotional literature" was California); *Tidenberg*, 2009 U.S. Dist. LEXIS 21916, at *12-13 (dismissing UCL and FAL claims asserted by Texas resident notwithstanding defendant's residence in California, where plaintiff failed to "allege any

specific facts linking Defendants' contacts with California to [her] claims").    Similarly here, although Plaintiffs allege that Clorox is headquartered in California and does business here, the foreign Plaintiffs do not allege that they purchased Fresh Step in this State, or that Clorox engaged in wrongful conduct in California.  *See* Compl. ¶¶ 15-19, 21.  As a result, their UCL, FAL, and CLRA claims must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Clorox respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety and with prejudice or, in the alternative, strike Plaintiffs' class allegations from the complaint.


Dated:  May 16, 2012                                    JENNER & BLOCK LLP

                                                    /s Kenneth K. Lee
                                                    By: Kenneth K. Lee

                                                    Attorneys for Defendant
                                                    The Clorox Pet Products Company