1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
   Post Montgomery Center
3  One Montgomery Street, Suite 1800
   San Francisco, CA 94104
4  Telephone: 415/288-4545
   415/288-4534 (fax)
5  shawnw@rgrdlaw.com
       – and –
6  STUART A. DAVIDSON
   MARK DEARMAN
7  KATHLEEN BARBER
   BAILIE L. HEIKKINEN
8  CHRISTOPHER MARTIN
   120 East Palmetto Park Road, Suite 500     LABATON SUCHAROW LLP
9  Boca Raton, FL 33432                  HOLLIS L. SALZMAN
   Telephone: 561/750-3000           GREGORY S. ASCIOLLA
10 561/750-3364 (fax)                   140 Broadway
   sdavidson@rgrdlaw.com           New York, NY 10005
11 mdearman@rgrdlaw.com           Telephone: 212/907-0700
   kbarber@rgrdlaw.com             212/818-0477 (fax)
12 bheikkinen@rgrdlaw.com         hsalzman@labaton.com
   cmartin@rgrdlaw.com             gasciolla@labaton.com
13
   Co-Lead Counsel for Plaintiffs
14
   [Additional counsel appear on signature page.]
15
            UNITED STATES DISTRICT COURT
16
          NORTHERN DISTRICT OF CALIFORNIA
17
             SAN FRANCISCO DIVISION
18
   In re CLOROX CONSUMER LITIGATION   )  Master File No. 12-cv-00280-SC
19                             )  CLASS ACTION
                            )
20 This Document Relates To:         )  PLAINTIFFS' MEMORANDUM OF
                            )  POINTS AND AUTHORITIES IN
21     ALL ACTIONS.            )  OPPOSITION TO DEFENDANT'S MOTION
                            )  TO DISMISS CONSOLIDATED CLASS
22                               ACTION COMPLAINT
23
24
25
26
27
28

1

# <u>TABLE OF CONTENTS</u>

2  TABLE OF AUTHORITIES ..................................................................................... ii

3  I.  STATEMENT OF FACTS ........................................................................... 1

4  II.  STANDARD OF REVIEW ........................................................................... 4

5       A.  The Complaint Sufficiently Alleges that Defendant's Representations in
            Its Advertising Campaign Were False and Misleading ............................ 4
6
        B.  Defendant's Contention that the Allegations Amount to a Mere Claim of
7           "Lack of Substantiation" Are Without Merit ............................................ 5

8       C.  Plaintiffs Do Not Seek Preclusive Effect in Connection with the New
            York Judge's Preliminary Injunction at This Time ................................. 8
9
10  III.  CLAIMS BASED ON DEFENDANT'S STATEMENTS THAT CATS "LIKE"
          OR "ARE SMART ENOUGH TO CHOOSE" ITS FRESH STEP  CAT LITTER
          ARE ACTIONABLE  CLAIMS ................................................................... 8
11
12  IV.  PLAINTIFFS SUFFICIENTLY SATISFY RULE 9(B) IN THEIR STATUTORY
         CLAIMS ..................................................................................................... 11

13  V.  EXPRESS WARRANTY ........................................................................... 12

14      A.  Breach of Express Warranty ................................................................. 12

15      B.  Plaintiffs Have Specifically Alleged Which Representations They Were
            Exposed to ............................................................................................. 14
16
17      C.  Plaintiffs Have Specifically Alleged Their Reasonable Reliance on
            Defendant's Representations ................................................................. 15

18      D.  Defendant's Representations Are Clear Affirmations of Fact and/or
            Promises ................................................................................................. 17
19
        E.  Privity Is Not Required in Plaintiffs' Express Warranty Claim ............ 18
20
    VI.  STANDING ................................................................................................ 19
21
22      A.  Plaintiffs Have Sufficiently Alleged a Nationwide Class ...................... 19

23      B.  The Non-Resident Plaintiffs Have Standing to Sue Under California
            Consumer Protection Laws .................................................................... 23

24  VII.  CONCLUSION .......................................................................................... 25

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

3

### FEDERAL CASES

4

*Allen v. Hylands, Inc.*, No. CV 12-01150 DMG MANX,
    2012 WL. 1656750 (C.D. Cal. May 2, 2012) ...................................................................23

5

*Annunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ..........................................................................17

6

7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................4

8

*Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH,
    2011 WL. 2111796 (N.D. Cal. May 26, 2011) .................................................................20

9

*Autodesk, Inc. v. Dassault Systemes Solidworks Corp.*,
    685 F. Supp. 2d 1001 (N.D. Cal. 2009) .......................................................................9, 10

10

11

*Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS,
    2010 WL. 2486353 (N.D. Cal. Jun. 16, 2010) ...........................................................20, 21

12

13

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir .1988) ...............................................................................................4

14

*Beal v. Lifetouch, Inc.*, No. CV 10-8454-JST MLGX,
    2011 WL. 995884 (C.D. Cal. Mar. 15, 2011) ..................................................................20

15

16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................4

17

18

*Bruno v. Eckhart Corp.*, No. SACV 11-0173 DOC EX,
    2012 WL. 752090 (C.D. Cal. Mar. 6, 2012) ....................................................................22

19

*Cardenas v. NBTY, Inc.*, No. CIV. S-11-1615 LKK/CKD,
    2012 WL. 1593196 (E.D. Cal. May 4, 2012).................................................................5, 7

20

21

*In re Century 21-RE/MAX Real Estate Advertising Claims Litig.*,
    882 F. Supp. 915 (C.D. Cal. 1994) ...................................................................................10

22

*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ..............................................................................9

23

24

*Chavez v. Nestle USA, Inc.*, No. 09-9192-GW-CW,
    2011 WL. 2150128 (C.D. Cal. May 19, 2011) ...................................................................6

25

26

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008)...........................................................................................18

27

28

*Colaprico v. Sun Microsystems, Inc.*,
   758 F. Supp. 1335 (N.D. Cal. 1991) ..................................................................19

*Collins v. Gamestop Corp.*,
   No. C10-1210-TEH, 2010 WL. 3077671 (N.D. Cal. Aug. 6, 2010)............................19, 20, 21

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*,
   911 F.2d 242 (9th Cir. 1990)...............................................................................9

*Donohoe v. Apple, Inc.*, No. 11-CV-05337 RMW,
   2012 WL. 1657119 (N.D. Cal. May 10, 2012) ................................................22, 23

*Edmunson v. Proctor & Gamble Co.*, No. 10-CV-2256-IEG NLS,
   2011 WL. 1897625 (S.D. Cal. May 17, 2011) .................................................15, 17

*In re Ferrero Litig.*,
   794 F. Supp. 2d  1107 (S.D. Cal. 2011) ..........................................................10, 11

*Fraker v. Bayer Corp.*, No. CV F 08-1564 AWI GSA,
   2009 WL. 5865687 (E.D. Cal. Oct. 6, 2009) .....................................................17

*Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, CIV.S-09-580 FCD/JFM,
   2009 WL. 2462505 (E.D. Cal. Aug. 11, 2009) ...................................................8

*Fulford v. Logitech, Inc.*, No. C-08-2041 MMC,
   2008 WL. 4914416 (N.D. Cal. Nov. 14, 2008)...................................................24

*Garcia v. M-F Athletic Co., Inc.*, No. CIV. 11-2430 WBS,
   2012 WL. 531008 (E.D. Cal. 2012) ...................................................................18

*Gooden v. Suntrust Mortg., Inc.*,
   No. 2:11-CV-02595-JAM, 2012 WL. 996513 (E.D. Cal. Mar. 23, 2012)........................20, 21

*In re High-Tech Employee Antitrust Litig.*,
   No. 11-CV-02509-LHK, 2012 WL. 1353057 (N.D. Cal. Apr. 18, 2012)................................22

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   801 F. Supp. 2d 993 (S.D. Cal. 2011) ..........................................................13, 14

*In re Intel Laptop Battery Litig.*, No. C 09-02889 JW,
   2010 WL. 5173930 (N.D. Cal. Dec. 15, 2010) ..................................................25

*In re Jamster Mktg. Litig.*,
   No. 05CV0819, 2009 WL. 1456632 (S.D. Cal. May 22, 2009) ..............................20

*Keith v. Buchanan*,
   173 Cal. App. 3d 13 (1985)................................................................................16

*Margarita Cellars v. Pac. Coast Packaging, Inc.*,
   189 F.R.D. 575 (N.D. Cal. 1999) ......................................................................19

*In re Mattel, Inc.*,
   588 F. Supp. 2d 1111 (C.D. Cal. 2008)................................................................24, 25

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)..............................................................21, 22, 25

*McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD,
   2011 WL 3862120 (N.D. Cal. Aug. 30, 2011).........................................................15

*Nabors v. Google, Inc.*,
   No. 5:10-CV-03897, 2011 WL. 3861893 ................................................................15

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001)................................................................................4

*In re NVIDIA GPU Litig., No. C 08-04312 JW*,
   2009 WL. 4020104 (N.D. Cal. Nov. 19, 2009)..................................................20, 25

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008) ..........................................................................24

*Pelletier v. Pac. WebWorks, Inc., No. CIV S-09-3503 KJM KJN*,
   2012 WL. 43281 (E.D. Cal. Jan. 9, 2012)...............................................................11

*Ralston v. Mortg. Investors Group, Inc., No. 5:08-CV-00536-JF PSG*,
   2012 WL. 1094633 (N.D. Cal. Mar. 30, 2012)........................................................22

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................................21

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985)................................................................................11

*Shein v. Canon U.S.A., Inc., No. CV 08-07323 CASEX*,
   2009 WL. 3109721 (N.D. Cal. Sept. 22, 2009) ................................................19, 21

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997)...........................................................................9, 10

*Stanley v. Bayer Healthcare LLC*,
   No. 11cv862-IEG-BLM, 2012 WL. 1132920 (S.D. Cal. Apr. 3, 2012) ......................6

*Starr v. Baca*,
   633 F.3d 1191 (9th Cir. 2011)................................................................................4

*Sutcliffe v. Wells Fargo Bank, N.A.*, No. C-11-06595 JCS,
   2012 WL. 1622665 (N.D. Cal. May 9, 2012) .....................................................4, 24

*Tidenberg v. Bidz.com, Inc., CV 08-5553 PSG(FMOx)*,
   2009 WL. 605249 (C.D. Cal. Mar. 4, 2009) ...........................................................25

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*
    *Practices, & Prods. Liab. Litig.,*
    754 F. Supp. 2d 1145 (C.D. Cal. 2010)...................................................16, 17

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*
    *Practices, & Prods. Liab. Litig.,*
    785 F. Supp. 2d 883 (C.D. Cal. 2011)..............................................................25

*Utility Consumers' Action Network v. Sprint Solutions, Inc.,*
    259 F.R.D. 484 (S.D. Cal. 2009)......................................................................22

*Vicuna v. Alexia Foods, Inc., No. C 11-6119 PJH,*
    2012 WL. 1497507 (N.D. Cal. Apr. 27, 2012) ...............................................11

*Von Koenig v. Snapple Beverage Corp.,*
    713 F. Supp. 2d 1066 (E.D. Cal. 2010)......................................................11, 12

*W.L. Gore & Assocs., Inc. v. Totes, Inc.,*
    788 F. Supp. 800 (D. Del. 1992) .....................................................................10

*Wang v. OCZ Tech. Group, Inc.,*
    276 F.R.D. 618 (N.D. Cal. 2011)......................................................................24

*Weinstat v. Dentsply Int'l, Inc.,*
    180 Cal. App. 4th 1213 (2010).........................................................................16

*Yamada v. Nobel Biocare Holding AG,*
    275 F.R.D. 573 (C.D. Cal. 2011) ...............................................................16, 18


**STATE CASES**

*Norwest Mortg., Inc. v. Super. Ct.,*
    72 Cal. App. 4th 214 (1999).............................................................................23


**DOCKETED CASES**

*Barrera v. Pharmavite, LLC,*
    No. 11-4153, Dkt. No. 31 (C.D. Cal Sept. 19, 2011)........................................5


**STATUTES**

Federal Rule of Civil Procedure 12(b)(6) ...............................................................4

Fed. R. Civ. P. 12(f)...............................................................................................19

U.C.C. §2-313 .......................................................................................................13

I.    STATEMENT OF FACTS

Defendant The Clorox Company ("Clorox" or "Defendant") is a leading manufacturer of cat litter in the United States.  In 1984, Clorox began producing Fresh Step.  According to Clorox's website, Fresh Step prides itself on being the "only litter that contains carbon." [Consolidated Class Action Complaint ("Complaint") [Dkt. No. 29], ¶¶26-27].[1]

In the fall of 2010, Clorox began an extensive two-fold marketing and advertising campaign via television, claiming that: (1) Fresh Step's carbon-containing cat litter is more effective at eliminating cat odors than other cat litters; and (2) as a result, cats "choose" Fresh Step over other cat litters.  These superiority claims went far beyond merely promoting the odor-eliminating capabilities of carbon.  Indeed, they are provably false, misleading, and likely to deceive a reasonable consumer.  [¶28].

Clorox's advertising campaign consisted of multiple television commercials, including visuals, voiceovers, and demonstrations, representing the purported superiority of Fresh Step litter in eliminating odor, as well as cats' preferences towards Fresh Step litter precisely because of its carbon content, as opposed to other, "inferior" odor-eliminating ingredients, such as baking soda.  [¶29].  Clorox first began airing its false, misleading, and deceptive commercials around October 2010 (the "First Commercials").  One commercial, for example, overtly stated that cats prefer Fresh Step over other litters, because cats "know" Fresh Step is better at eliminating odors than Arm & Hammer's Super Scoop.  [¶30].  Defendant aired multiple other commercials that echoed these same verbal and visual messages, showing cats consistently "choosing" Fresh Step over other, carbonless brands.  [¶31].

In February 2011, Clorox launched a new false, deceptive, and misleading advertising and marketing campaign, which continued to depict cats' purported preference towards Fresh Step litter, but, in addition, the new commercials expressly stated that "Fresh Step Scoopable litter with carbon . . . is more effective at absorbing odors than baking soda" (the "Second Commercials").  [¶32].  One of the Second Commercials showed two laboratory beakers, one

---

[1]    All "¶__" and Ex.__" references are to the Complaint, unless otherwise indicated.

1    filled with a black substance labeled "carbon" and the other filled with a white substance labeled

2    "baking soda."   Green gas was then shown floating through the beakers; the green gas in the

3    Fresh Step beaker rapidly dissipated, while the gas in the baking soda beaker barely dissipated.

4    During this "scientific" demonstration, a voiceover stated: "That's why Fresh Step Scoopable

5    has carbon, which is more effective at absorbing odors than baking soda."  [¶33].

6          Plaintiffs allege that the superiority representations made in Clorox's commercials

7    described above are provably false, misleading, and likely to deceive a reasonable consumer

8    because, in fact: (1) Fresh Step's carbon-containing cat litter is not more effective at eliminating

9    odors than other cat litters; and (2) cats do not "choose" Fresh Step over other cat litters.  [¶35].

10          In response to Clorox's First Commercials, which represented, among other things, that

11    cats "prefer" Fresh Step carbon-based cat litter over baking soda-based cat litter, Church &

12    Dwight ("C&D"), the creator of Arm & Hammer's baking soda-based cat litter, Super Scoop,

13    commissioned a study to determine the frequency with which cats would reject either litter when

14    used in the cat's litter box (the "C&D Study").  [¶37].

15          The results of the C&D Study conclusively proved that cats do not reject baking soda-

16    based cat litter more than they reject carbon-based cat litter.  In fact, the C&D Study proved just

17    the opposite, that cats reject Defendant's carbon-based Fresh Step more often than Arm &

18    Hammer's baking soda-based Super Scoop.  Indeed, less than 4% of the cats involved in the

19    study rejected their litter box and relieved themselves elsewhere in the home when the litter box

20    was filled with C&D's Super Scoop cat litter, while slightly more than *5%* of the cats involved in

21    the study rejected their litter box when the litter box was filled with Clorox's Fresh Step cat

22    litter.  [¶38].  Put differently, 25% more cats rejected litter boxes filled with Clorox's Fresh Step

23    than rejected litter boxes filled with C&D's Super Scoop cat litter.

24          In response to Clorox's Second Commercials, which represented, among other things,

25    that Clorox's carbon-containing Fresh Step cat litter is more effective at eliminating odors than

26    other cat litters, C&D commissioned an independent study to run a sensory laboratory test to

27    compare the cat waste odor elimination performance of Fresh Step with carbon to one of Arm &

28

1  Hammer's cat litters with baking soda, Double Duty (the "Independent Study"). [¶40].

2      In the Independent Study, panelists were asked to rate the odor emanating from two litter

3  boxes, one filled with Fresh Step and one filled with Double Duty, over the course of ten days.

4  On every single day of the ten-day study, the panelists' average odor rating for C&D's Double

5  Duty cat litter with baking soda was lower than the average odor rating for Clorox's Fresh Step

6  carbon-based cat litter.  These results clearly demonstrate that Arm & Hammer's cat litter was

7  significantly superior to Fresh Step at the *95%* confidence level in terms of cat waste odor

8  elimination overall. [¶41].

9      In response to the First Commercials, C&D filed a lawsuit against Clorox alleging that

10 Clorox's claims that Fresh Step has superior odor-eliminating capabilities and that cats prefer

11 carbon-based Fresh Step to baking soda-based Super Scoop were false and misleading.  As a

12 result, Clorox immediately ceased airing the First Commercials, and C&D dismissed its case

13 without prejudice. [¶43].

14     C&D reacted to the Second Commercials by filing another lawsuit in March 2011,

15 alleging that Clorox's representations that Fresh Step cat litter products with carbon are superior

16 to Arm & Hammer's cat litter products with baking soda at eliminating cat waste odor were

17 false, misleading, and deceptive to consumers. [¶44].  C&D sought to enjoin Clorox from

18 making these false claims about Fresh Step, and brought claims against Clorox under the federal

19 Lanham Act, New York's General Business Law, and for unfair competition under New York

20 common law, among others. [*Id.*].

21     On January 4, 2012, Judge Jed S. Rakoff of the United States District Court for the

22 Southern District of New York entered an Opinion and Order enjoining Clorox from airing the

23 commercials portraying the beaker test, finding Clorox's claims about the odor elimination

24 abilities of carbon as compared to baking soda were "literally false." [¶45].  In his opinion,

25 Judge Rakoff held:

26         In short, because the Jar Test on which Clorox based its claims is unreliable and, even if
           it were reliable could not possibly support Clorox's implied claims about the relative
27         merits of carbon and baking soda in cat litter, the Court finds Clorox's claims are literally
           false.

28                                    *     *     *

1
2
3

Put simply, Clorox, cloaking itself in the authority of a "a lab test," made literally false claims going to the heart of one of the main reasons for purchasing cat litter.  In such circumstances, where the misrepresentation is so plainly material on its face, no detailed study of consumer reactions is necessary to conclude inferentially that Clorox is likely to divert customers from C&D's products to its own unless the offending commercial is enjoined.

4

[¶46].[2]

5

6

Despite Judge Rakoff's Order, Clorox continues to profit from its false and deceptive

7

marketing campaign based on the purported "superiority" of carbon-based cat litter.  Plaintiffs

8

allege that purchasers of Fresh Step have been deceived by Clorox into believing that they

9

purchased a product that had better odor eliminating abilities than its competitors and was

10

preferred by cats, paying a price premium for this deceptively advertised product.  [¶48].

11

## II.    STANDARD OF REVIEW

This Court has recently articulated the standard of review on a motion to dismiss:

12
13
14
15
16
17
18
19

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir .1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 663.  (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011).

20

*Lam v. Gen. Mills, Inc.*, 11-5056-SC, 2012 WL 1656731, at *2 (N.D. Cal. May 10, 2012) (Conti, J.).

21
22

### A.    The Complaint Sufficiently Alleges that Defendant's Representations in Its Advertising Campaign Were False and Misleading

23

Plaintiffs sufficiently allege a claim for false advertising under California's Unfair

24

Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies

25

Act ("CLRA").  Pursuant to the FAL, "[i]t is unlawful . . . to make and disseminate . . . any

26

statement . . . which is untrue or misleading, and which is known, or by the exercise of

27
28

---

[2]    Emphasis added, citations, internal quotations, and footnotes omitted unless otherwise indicated.

reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. §17500; *see also Cardenas v. NBTY, Inc.*, No. CIV. S-11-1615 LKK/CKD, 2012 WL 1593196, at *9 (E.D. Cal. May 4, 2012). A claim for false advertising will survive a motion to dismiss where the plaintiff can cite to specific studies directly refuting a defendant's false and misleading advertising scheme. *Id.* Plaintiffs have undoubtedly met this burden. Thus, Defendant's contention that Plaintiffs do not state a plausible claim must fail.

### B. Defendant's Contention that the Allegations Amount to a Mere Claim of "Lack of Substantiation" Are Without Merit

Defendant improperly attempts to recast the Complaint as being premised solely on allegations that Defendant's representations lack substantiation, which it contends are not actionable. Contrary to Defendant's arguments, however, Plaintiffs allege that the following representations by Defendant are provably false: (1) Fresh Step, which contains carbon, is more effective at eliminating cat odors than other cat litters that do not contain carbon; and (2) cats "choose" Fresh Step over other cat litters due to its purported ability to eliminate odors. [¶1]. Tellingly, Defendant concedes, as it must, that Plaintiffs alleged Defendant's representations to be false and misleading. [Clorox's Motion to Dismiss ("MTD") [Dkt. No. 43] at 19].[3]

Having mischaracterized the Complaint, Defendant proceeds to attack its straw man by relying on a series of cases pertaining to substantiation claims which are inapplicable here. For instance, in *Barrera v. Pharmavite, LLC*, No. 11-4153, Dkt. No. 31 (C.D. Cal Sept. 19, 2011), plaintiff's claim that "defendant did not have competent scientific evidence to support its health benefit claims that its TripleFlex supplements would improve joint comfort, mobility and flexibility" was dismissed because "there is no private remedy for unsubstantiated advertising [under California law]." *Id.* at 3-4; *see also* MTD at 13. In other words, the plaintiff relied solely on its lack of substantiation claim and did not provide any allegations to refute the truth of the defendant's statements or otherwise allege that the representations were false.

---

[3]      "Plaintiffs allege that Clorox engaged in 'fraudulent business acts and practices' though [sic] its television advertising. Compl. ¶¶87, 88; *see also id.* ¶73(d) (alleging Clorox sold Fresh Step 'with intent not to sell it as advertised'); *id.* ¶93 (alleging Clorox knew its advertising was false or misleading)." [MTD at 19].

1    Equally unavailing is Defendant's reliance on *Chavez v. Nestle USA, Inc.*, No. 09-9192-

2  GW-CW, 2011 WL 2150128, at *5 (C.D. Cal. May 19, 2011), in which the court granted

3  defendant's motion to dismiss plaintiffs' claims that "Nestle lacked substantiation for its claim

4  that DHA, an ingredient in its juice products, may help support early-age brain and eye

5  development" because "[p]rivate plaintiffs are not authorized to demand substantiation for

6  advertising claims."  MTD at 14-15; *Chavez*, 2011 WL 2150128, at *5.  As in *Barrera*, the

7  *Chavez* plaintiff alleged solely a lack of substantiation claim and did not set forth allegations of

8  falsity as Plaintiffs have done at length here.

9    The weakness of Defendant's position is highlighted by its reliance on *Stanley v. Bayer*

10  *Healthcare LLC*, No. 11cv862-IEG-BLM, 2012 WL 1132920 (S.D. Cal. Apr. 3, 2012), a case in

11  summary judgment.  There, plaintiff alleged that defendant's health claims that its probiotic

12  supplements "promote[] overall digestive health and help[] defend against occasional diarrhea

13  and other gastrointestinal problems" were false and misleading because "they lack[ed] proper

14  scientific substantiation" (*id.* at *4).  Rather than presenting any evidence that the claims were

15  actually false or likely to deceive a reasonable consumer, plaintiff's experts repeatedly pointed to

16  the lack of substantiation for defendant's claims.  Accordingly, the court held that "[p]laintiff has

17  failed to show there is a genuine issue of material fact ***precluding entry of summary judgment*** in

18  favor of Defendant on her false advertising claims under the UCL and CLRA."  *Id.* at *10.

19    In contrast, here, Plaintiffs do not allege that Defendant's claims merely lack

20  substantiation.    Instead, Plaintiffs' Complaint contains myriad detailed allegations that

21  Defendant's representations in its television commercials were clearly and provably ***false***.

22  Specifically, Plaintiffs allege that "[t]he superiority representations made in Clorox's

23  commercials . . . are false, misleading, and likely to deceive a reasonable consumer because, in

24  fact: (1) Fresh Step's carbon-containing cat litter is not more effective at eliminating cat odors

25  than other cat litters; and (2) cats do not 'choose' Fresh Step over other cat litters."[4]  [¶35].  In

26  ———————————————————

27  [4]    In this regard, Plaintiffs repeatedly allege that Defendant's representations of Fresh
Step's superiority are false and misleading.  *See, e.g.*, ¶¶2-3 ("***Despite the falsity of its claims***,

28  Clorox boasts about the purported 'superiority' of the odor eliminating capabilities of carbon
throughout its television advertising campaign."); ¶7 ("Clorox's superiority representations are

———————————————————

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT – 12-cv-00280-SC          - 6 -

1  addition, unlike the cases that Defendant improperly relies on, Plaintiffs explicitly allege that

2  "scientific studies *have shown* [that] carbon-based cat litter is not superior to other cat litters as

3  far as odor elimination is concerned, and moreover, cats *do not* 'choose' Fresh Step cat litter

4  over other, baking soda-based cat litters."  [¶7].  In fact, as Defendant conveniently ignores,

5  Plaintiffs devote an entire section of their Complaint summarizing two separate scientific studies

6  proving that Defendant's claims are false and misleading.[5]  [¶¶37-42].

7       Judge Lawrence K. Karlton of the Eastern District of California has recently upheld

8  claims similar to those alleged here.  In *Cardenas*, plaintiff claimed that "clinical cause and

9  effect studies have found no causative link between glucosamine hydrocholoride

10  supplementation and joint renewal or rejuvenation."  2012 WL 1593196, at *1.  Thus, the

11  plaintiff alleged that defendant's representations that taking the recommended number of Osteo

12  Bi-Flex tablets will help "promote mobility, renew cartilage, maintain healthy connective tissue,"

13  and "improve joint comfort" were, therefore, false and misleading.  *Id.* at *1-*2.  As in the

14  present case, the defendant attempted to argue that plaintiff's claims were for a mere lack of

15  substantiation and should therefore be dismissed.  Judge Karlton rejected that argument and held

16  that "[i]f Plaintiff's assertions are true, and [c]linical cause and effect studies have been unable to

17  confirm a cause and effect relationship between [defendant's product] and joint renewal or

18  rejuvenation, . . . then it stands to reason that Defendants' representations that [defendant's

19

20  false, misleading, and likely to deceive a reasonable consumer."); ¶28 ("These superiority claims
    went far beyond merely promoting the odor-eliminating capabilities of carbon.  Instead, *they are*

21  *false, misleading, and likely to deceive a reasonable consumer*.").

22  [5]    This section summarizes a study performed by C&D, the creator of Arm & Hammer's
    baking soda-based cat litter, Super Scoop, to determine the frequency with which cats would
    reject either litter when used in a cat's litter box.  The C&D Study conclusively proved that cats

23  do not reject baking soda-based cat litter more than they reject carbon-based cat litter, but, in
    fact, proved the opposite.  Additionally, in response to Defendant's claims in a commercial that

24  Defendant's carbon-containing Fresh Step cat litter is more effective at eliminating odors than
    other cat litters, C&D commissioned the Independent Study to run a sensory laboratory test to

25  compare the cat waste odor elimination performance of Fresh Step with carbon to one of Arm &
    Hammer's cat litters with baking soda, Double Duty.  In connection with the Independent Study,

26  panelists were asked to rate the odor emanating from the two litter boxes over the course of ten
    days.  On every single day of the ten-day study, the panelists rated Double Duty cat litter with

27  baking soda to have a lower odor rating than Clorox's Fresh Step litter.  As alleged in the
    Complaint, the results of these studies demonstrate that Defendant's commercials contained

28  false, misleading, and deceptive claims regarding Fresh Step's purported superiority.

product] help[s] with joint flare-ups are actually false." *Id.* at *9.  As in *Cardenas*, accepting as true, as the Court must on this motion, Plaintiffs' assertions that "scientific studies have shown carbon-based cat litter is not superior to other cat litters as far as odor elimination is concerned, and moreover, cats do not 'choose' Fresh Step cat litter over other, baking soda-based cat litter," then Plaintiffs have well-pled that Defendant's representations are actually false.  Accordingly, the Court should deny Defendant's motion.

### C.     Plaintiffs Do Not Seek Preclusive Effect in Connection with the New York Judge's Preliminary Injunction at This Time

Defendant argues that Plaintiffs cannot rely on the preliminary injunction issued by the District Court in the Lanham Act matter to claim that Defendant's claims violate California consumer protection laws.  Plaintiffs seek to do no such thing.  Plaintiffs are not seeking preclusive effect in connection with the preliminary injunction at this point in time.  Instead, Plaintiffs simply advance evidence used in the Southern District of New York action to support its allegations that Defendant's representations are actually false and misleading.

### III.     CLAIMS BASED ON DEFENDANT'S STATEMENTS THAT CATS "LIKE" OR "ARE SMART ENOUGH TO CHOOSE" ITS FRESH STEP  CAT LITTER ARE ACTIONABLE  CLAIMS

Defendant next contends that claims challenging its representations that cats are "smart enough" to choose its Fresh Step cat litter and that cats "know" that they "like" litter boxes with Fresh Step inside (together, "preference statements") should be dismissed as mere puffery.[6] Contrary to Defendant's position, however, these representations are the type of specific, measurable statements upon which a reasonable consumer would rely and which are routinely held to not constitute puffery.  Accordingly, Defendant's motion to dismiss claims involving the preference statements should be denied.

---

[6]     The preference statements are just some of the statements being challenged by Plaintiffs. [*See, e.g.*, ¶¶28, 32-34].  Notably, Defendant does not contend that the other statements are puffery, thereby conceding that at least some of the statements being challenged by Plaintiffs are actionable statements under the law.  In the event the Court determines that some of the statements are not actionable, the claims should nevertheless survive against the remaining statements.  "[W]here at least some actionable statements have been pled, a claim cannot be dismissed on the ground that some statements constitute mere puffery." *Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, CIV.S-09-580 FCD/JFM, 2009 WL 2462505, at *7 (E.D. Cal. Aug. 11, 2009).

1    Puffery is defined as "outrageous generalized statements, not making specific claims, that
2    are so exaggerated as to preclude reliance by consumers." *In re Ferrero Litig.*, 794 F. Supp. 2d
3    1107, 1115 (S.D. Cal. 2011) (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911
4    F.2d 242, 246 (9th Cir. 1990)) (holding it would not be appropriate to dismiss claims involving
5    certain false and misleading statements as puffery because "it would not be impossible for
6    Plaintiffs to prove that a reasonable consumer would be deceived by the statements"); *see also*
7    *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010) (holding that
8    the terms "wholesome" and "smart choices made easy" cannot be deemed to be puffery at the
9    pleading stage of the litigation because they could arguably mislead a reasonable consumer).
10   While product claims that are vague or highly subjective may amount to puffery,
11   "misdescriptions of specific or absolute characteristics of a product are actionable." *Southland*
12   *Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997); *see Ferrero*, 794 F. Supp.
13   2d at 1115.   Thus, a statement that is quantifiable and that makes a claim as to the specific
14   characteristics of a product may be an actionable statement of fact.   *See Autodesk, Inc. v.*
15   *Dassault Systemes Solidworks Corp.*, 685 F. Supp. 2d 1001, 1017 (N.D. Cal. 2009) (holding that
16   statement claiming that product will work with files created by any version of AutoCAD is a
17   measurable claim that does not constitute puffery).   Such is the case with the preference
18   statements at issue here – they are concrete, factual assertions that are measurable and describe a
19   specific characteristic of the product, and thus are capable of inducing consumer reliance.
20       The preference statements make a specific claim about a product characteristic that is
21   measurable – *i.e.*, what cats "prefer" or "like" in a cat litter.   Importantly, the preference
22   statements are not only verbally communicated in the commercials through an announcer's
23   voiceover, but also through various demonstrations.   These demonstrations visually
24   communicated the specific "preference" characteristic of Defendant's cat litter by showing cats
25   rejecting a litter box filled (and labeled) with a competitor's brand of cat litter and choosing
26   instead a litter box filled (and labeled) with Fresh Step cat litter.   [¶¶29-31; Exs. A-C].   For
27   example, one commercial depicted four different cats, each one purportedly rejecting the
28

1    competitor's cat litter for the so-called preferred Fresh Step cat litter.  [¶30; Ex. A].

2        Moreover, these unambiguous visual depictions showing a series of cats consistently

3    choosing Fresh Step cat litter over a competing brand give the impression that the preference

4    statements are based upon scientific testing and are not merely "outrageous" generalized

5    statements.  *See Southland*, 108 F.3d at 1145 ("A specific and measurable advertisement claim of

6    product superiority based on product testing is not puffery."); *see also W.L. Gore & Assocs., Inc.*

7    *v. Totes, Inc.*, 788 F. Supp. 800, 809 (D. Del. 1992) (numerical comparison that product is seven

8    times more breathable "gives the impression that the claim is based upon independent testing"

9    and "is not a claim of general superiority or mere puffing").  In fact, the preference statements at

10   issue here are not only provably false, but are also easily quantifiable.  In an action brought

11   against Defendant by one of its competitors, C&D, which challenged these same preference

12   statements as false and misleading, C&D commissioned a study to evaluate the performance of

13   its product versus Fresh Step.  [¶¶37-39].  Specifically, the C&D Study, which included 158 cats,

14   was designed to determine the frequency with which cats would reject either litter when used in

15   the cat's everyday litter box.  The results demonstrated that cats do not reject C&D's cat litter

16   (less than 4% of cats rejected) more than Defendant's cat litter (slightly more than 5% of cats

17   rejected), thus quantifying cats' preferences.     [¶38].    The measurability of Defendant's

18   preference statements makes them actionable as to whether they are false or misleading.  *See In*

19   *re Century 21-RE/MAX Real Estate Advertising Claims Litig.*, 882 F. Supp. 915, 926 (C.D. Cal.

20   1994) (holding the statement that RE/MAX agents outsell other agents "three to one" is a

21   specific assertion and does not constitute puffery); *Autodesk*, 685 F. Supp. 2d at 1018.

22       Defendant's contention that the preference statements constitute puffery because they are

23   "humorous" and "light-hearted" simply ignores the specific representations made in the

24   advertising, which would unquestionably lead a reasonable consumer to rely on them (as

25   Defendant intended) because of the impression of actual testing depicted in the demonstrations.

26   For all of the above reasons, Defendant's motion to dismiss the claims involving the preference

27   statements should be denied.

28

1

2

**IV.    PLAINTIFFS SUFFICIENTLY SATISFY RULE 9(B) IN THEIR STATUTORY CLAIMS**

3

Defendant argues, albeit unpersuasively, that Plaintiffs fail to satisfy Rule 9(b)'s

4

requirements.  Defendant is mistaken.  The purpose of Rule 9(b) is to require a plaintiff to be

5

"specific enough to give defendants notice of the particular misconduct which is alleged to

6

constitute the fraud charged so that they can defend against the charge and not just deny that they

7

have done anything wrong."  *Pelletier v. Pac. WebWorks, Inc.*, No. CIV S-09-3503 KJM KJN,

8

2012 WL 43281, at *3 (E.D. Cal. Jan. 9, 2012) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731

9

(9th Cir. 1985)).  Plaintiffs have clearly satisfied their pleading obligations.

10

In *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066 (E.D. Cal. 2010),

11

plaintiffs alleged that, during the class period, defendant made false or misleading

12

representations when it advertised that its Snapple beverages were "All Natural" and superior to

13

other juice drinks.  In support of their claims, plaintiffs submitted examples of the labels on

14

several Snapple beverage bottles all containing the term "All Natural."  Plaintiffs alleged that the

15

labeling deceived consumers because the juice drinks contained unnatural products.  In addition,

16

plaintiffs further claimed that if they had not been deceived by the labels on the products, they

17

would not have purchased defendant's juice drinks, but would have purchased alternative drink

18

products.  Judge Frank C. Damrell, Jr. held that "[t]hese allegation[s] are sufficient to establish

19

the 'time, place, and specific content' requirements of Rule 9(b)."  *Id.* at 1077.  Accordingly, the

20

court denied defendant's motion to dismiss plaintiffs' false advertising claims.  *Id.* at 1078.

21

Similarly, in *Vicuna v. Alexia Foods, Inc.*, No. C 11-6119 PJH, 2012 WL 1497507 (N.D.

22

Cal. Apr. 27, 2012), plaintiffs brought a class action lawsuit against defendant, who produced

23

frozen food products, including potato products, alleging that defendant misrepresented the

24

quality of its products.  *Id.* at *1-*2.  Judge Phyllis J. Hamilton held that the complaint

25

"adequately states a claim under the CLRA, the UCL, and the FAL."  *Id.* at *2.  In so deciding,

26

the court noted that "[w]hile some of the allegations of fraud and misrepresentation are rather

27

skimpy, the gist of the claims sounding in fraud is that plaintiffs were deceived by the

28

designation of 'All Natural' on the packages of potato products that they purchased . . . .  This is

1    sufficient to put Alexia on notice of the claims asserted against it, and the court finds overall that

2    the claims are pled sufficiently to withstand a Rule 12(b)(6) motion to dismiss." *Id*.  Judge

3    Hamilton added that "numerous factual issues make this matter inappropriate for decision on a

4    12(b)(6) motion." *Id.*

5            Likewise, Plaintiffs' allegations here are sufficiently particular to satisfy Rule 9(b)'s

6    requirements.  For instance, as in *Von Koenig*, in support of their allegations that Defendant's

7    claims that Fresh Step litter was superior to other cat litters were false and misleading, Plaintiffs

8    submitted examples of Defendant's nationwide advertising campaign consisting of multiple

9    television commercials.  Specifically, Plaintiffs submitted story board images of the following:

10   (1) Defendant's commercials which first aired around October 2010 where Defendant "overtly

11   stated that cats prefer Fresh Step over other litters, because cats 'know' Fresh Step is better at

12   eliminating odors than Arm & Hammer Super Scoop" [¶30; Ex. A]; (2) Defendant's December

13   27, 2010 and January 3, 2011 commercials depicting cats "choosing" Fresh Step over other,

14   carbonless brands [¶31; Exs. B-C]; and (3) Defendant's commercials that aired in February 2011

15   where Defendant expressly stated that  "Fresh Step Scoopable litter with carbon . . . is more

16   effective at absorbing odors than baking soda" [¶¶33-34; Exs. D-E].  In this regard, Plaintiffs

17   have alleged the "when" (the approximate dates the advertisements aired) [¶¶26-36], the "what"

18   (the specific content of such advertisements) [¶¶4-5, 26-36; Exs. A-E], and the "how" (via an

19   "extensive, nationwide marketing and advertising campaign") [¶1].  Moreover, Plaintiffs have

20   specifically alleged that each Plaintiff was "exposed to and saw Clorox's marketing and

21   advertising claims," and in reliance of such claims "purchased Fresh Step . . . , and suffered

22   injury" as a result.  [¶¶15-21].  Accordingly, Plaintiffs' claims are specific enough to put

23   Defendant on notice of the claims asserted against it and, therefore, should not be dismissed.

24   **V.    EXPRESS WARRANTY**

25          **A.    Breach of Express Warranty**

26          "Any affirmation of fact or promise made by the seller to the buyer which relates to the

27   goods and becomes part of the basis of the bargain creates an express warranty that the goods

28

1    shall conform to the affirmation or promise." *In re Hydroxycut Mktg. & Sales Practices Litig.*,

2    801 F. Supp. 2d 993, 1007 (S.D. Cal. 2011) (citing U.C.C. §2-313)).  Here, Plaintiffs allege that

3    Defendant made several affirmations of fact and/or promises regarding Clorox's Fresh Step to

4    consumers via its product labeling[7] and two series of television commercials.  [¶¶28-34, 158].

5          Specifically, Plaintiffs allege that Defendant made the following affirmations of fact

6    and/or promises regarding Clorox's Fresh Step: (1) Clorox's "Fresh Step Scoopable litter with

7    carbon is better at eliminating odors" than other cat litters containing baking soda; (2) Clorox's

8    Fresh Step Scoopable cat litter "has carbon, which is more effective at absorbing odors than

9    baking soda"; and (3) cats "are smart enough to choose" carbon-based Fresh Step "with less

10   odors" over other cat litters with baking soda.  [¶159].

11         Accordingly, Plaintiffs allege that Defendant's aforementioned affirmations of fact and/or

12   promises created an express warranty that Clorox's Fresh Step Scoopable litter would conform to

13   those affirmations and/or promises.  [*See* ¶158 ("The terms of that contract include the promises

14   and affirmations of fact made by Clorox on its product labels and through its marketing

15   campaigns, as described above.")].  Plaintiffs ultimately allege that "Clorox breached the terms

16   of this contract, including the express warranties, with Plaintiffs and the Class by not providing

17   the Fresh Step products as advertised and described above[,]" and that they were damaged as a

18   result of Defendant's breach.  [¶¶161-162, 164].

19         Despite these clear, detailed, and well-pled allegations of breach of express warranty,

20   Defendant argues that: (1) Plaintiffs have failed to "specifically allege[] which representations

21   [they] saw, heard, or read"; (2) Plaintiffs have failed to allege with adequate specificity their

22   "reasonable reliance on the particular commercial or advertisement[]"; (3) none of the challenged

23   statements constitute "an affirmation of fact or a promise[]"; and (4) Plaintiffs lack privity with

24   Defendant.  [MTD at 21-22].  As detailed below, each of these arguments is meritless.

25   _____

26   [7]     Defendant argues that "Plaintiffs have also abandoned their claims related to statements
     made on Fresh Step's packaging and on Clorox's website.  The amended complaint is thus
27   limited to Clorox's Fresh Step television commercials."  [MTD at 10 n.3].  This argument,
     however, ignores Plaintiffs' allegation that "[t]he terms of that contract include the promises and
     affirmations of fact made by Clorox on its ***product labels*** and through its marketing campaigns,
28   as described above."  [¶158].

     _____

### B.    Plaintiffs Have Specifically Alleged Which Representations They Were Exposed to

Citing *Hydroxycut* as support, Defendant summarily argues that Plaintiffs have failed to "specifically allege[] which representations [they] saw, heard, or read and, thus, formed the basis of their bargain."  [MTD at 21].  Even a cursory review of the Complaint demonstrates that Defendant is mistaken, and the *Hydroxycut* case only serves to highlight this.  There, consumers brought a class action against the manufacturer of 14 different Hydroxycut weight loss products, which plaintiffs alleged were falsely marketed as safe and effective. 801 F. Supp. 2d at 999.  The manufacturer conveyed its false statements to consumers "through an extensive advertising campaign in a variety of media, including television, newspapers, magazines, direct mail, the internet, point-of-sale displays, and on the product labels." *Id.* In their complaint, plaintiffs alleged, *inter alia*, that "each of the named Plaintiffs was exposed to and read Defendants' advertising claims, including the representations on the Products' labeling." *Id.* at 1000.

The court ultimately dismissed plaintiffs' express warranty claim because "Plaintiffs have not specifically alleged which representations they saw, heard, or read, Plaintiffs have not sufficiently pled which affirmations or promises formed the basis of their bargain."  *Id.* at 1008. The court explained that "[t]he FAC describes representations made on the hydroxycut.com website, a television commercial, GNC's website, and the Products' packaging.  However, it is unclear whether the same representations are made on the packaging of each of the 14 Hydroxycut products at issue.  The FAC does not distinguish between the Products." *Id.* at 1006.

The allegations in the instant case are markedly different from those which formed the basis of the court's decision in *Hydroxycut*.  Plaintiffs' claims here do not implicate more than 14 different products that were the subject of widely varying advertising campaigns.  Indeed, the instant case is much simpler: **one** product, **two** series of substantively similar commercials. There is simply no confusion with respect to "which affirmations or promises formed the basis of [the] bargain[,]" as Defendant's commercials and product labeling conveyed the same uniform messages, that: (1) Clorox's "Fresh Step Scoopable litter with carbon is better at eliminating odors" than other cat litters containing baking soda; (2) Clorox's Fresh Step Scoopable cat litter

1    "has carbon, which is more effective at absorbing odors than baking soda"; and (3) cats "are

2    smart enough to choose" carbon-based Fresh Step "with less odors" over other cat litters with

3    baking soda.  [*See* ¶159].

4              Defendant's citations to *Nabors v. Google, Inc.*, No. 5:10-CV-03897, 2011 WL 3861893,

5    at *4 (N.D. Cal. Aug. 30 2011), *McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD, 2011 WL

6    3862120, at *4 (N.D. Cal. Aug. 30, 2011), and *Edmunson v. Proctor & Gamble Co*., No. 10-CV-

7    2256-IEG NLS, 2011 WL 1897625, at *6 (S.D. Cal. May 17, 2011), likewise, do not support its

8    position.  *Nabors* and *McKinney* are two related cases where consumers brought class actions

9    against Google for the false and deceptive marketing of its 3G mobile phone.  In both cases,

10   plaintiffs alleged that while Google marketed its phone as possessing 3G capability, plaintiffs

11   experienced 3G connectivity only a fraction of the time.  *Nabors*, 2011 WL 3861893, at *1;

12   *McKinney*, 2011 WL 3862120, at *2.  Plaintiffs argued that the defendant's general assertion that

13   its phone "has 3G network capability" constituted an express warranty.  *Nabors*, 2011 WL

14   3861893, at *4; *McKinney*, 2011 WL 3862120, at *4.  The court dismissed plaintiffs' breach of

15   express warranty claim, holding that:

16              General assertions about representations or impressions given by Google about
              the phone's 3G capabilities are not equivalent to a recitation of the exact terms of
17             the underlying warranty . . . .  At the least, Nabors must identify the particular
              commercial or advertisement upon which he relied and must describe with the
18             requisite specificity the content of that particular commercial or advertisement.

19   *Id*.  The present Complaint does not suffer from any such infirmity, as Plaintiffs have pointed to

20   several specific representations upon which they relied, including the specific content of those

21   representations.

22          **C.     Plaintiffs Have Specifically Alleged Their Reasonable Reliance on
                  Defendant's Representations**

23

24             Defendant next contends, again, in summary fashion and without argument, that

25   "Plaintiffs have also failed to allege with adequate specificity their reasonable reliance on the

26   particular commercial or advertisement."  [MTD at 21].  Defendant is incorrect for at least two

27   reasons.  First, it is well-settled that "reliance" is not an element of an express warranty claim.

28   *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab.*

---

1    *Litig.*, 754 F. Supp. 2d 1145, 1182-83 (C.D. Cal. 2010) (holding that "Plaintiffs are not required

2    to allege reliance" in breach of express warranty claim); *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal.

3    App. 4th 1213, 1227 (2010) (holding that "[p]re–Uniform Commercial Code law governing

4    express warranties required the purchaser to prove reliance on specific promises made by the

5    seller. . . .  The California Uniform Commercial Code, however, does not require such proof.");[8]

6    *Keith v. Buchanan* 173 Cal. App. 3d 13, 23 (1985) (explaining that under the U.C.C., "a buyer

7    need not show that he would not have entered into the agreement absent the warranty or even

8    that it was a dominant factor inducing the agreement").

9         Second, regardless of whether or not reliance is required in an express warranty claim,

10   ***Plaintiffs have properly pled their reasonable reliance on Defendant's representations***:

11   "[Plaintiff] was exposed to and saw Clorox's marketing and advertising claims, purchased Fresh

12   Step ***based on those claims***, and suffered injury in fact because of the unfair and deceptive trade

13   practices described herein."   [¶¶15-21].   Plaintiffs and the Class were exposed to these

14   statements and ***reasonably relied upon them*** in their purchase of Fresh Step.  [¶160].

15        Judge Jacqueline H. Nguyen of the Central District of California recently certified a

16   nationwide breach of express warranty claim by dentists against a dental implant manufacturer.

17   *Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573, 576, 580-81 (C.D. Cal. 2011).  The

18   defendants in *Yamada* argued that the breach of express warranty claims would not be

19   susceptible to class-wide proof because there would be no way for the manufacturer's warranties

20   to become part of the "basis of the bargain" absent proof of reliance.  The court rejected this

21   argument noting, "because Plaintiff does assert reliance on the marketing literature and manual,

22   the Court declines to find otherwise."  *Id.*  The court also rejected the defendants' earlier-filed

23   motion to dismiss which had argued that the plaintiffs failed to state a breach of express warranty

24   claim because plaintiffs did not sufficiently identify the warranty's terms, and the statements

25

26   [8]    The *Weinstat* court went on to explain that the comments to Section 2313 indicate "[i]n actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement."  *Id.*  Further, that any "affirmation, once made, is part of the agreement unless there is clear affirmative proof that the affirmation has been taken out of the agreement."  *Id.* at 1229.

1    were mere "puffery."  *See Yamada v. Nobel Biocare Holding AG*, No. 2:10-cv-04849-JHN-

2    PLAx, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss First

3    Amended Class Action Complaint (C.D. Cal. Jan. 20, 2011), attached hereto as Exhibit A.  The

4    court concluded that statements that the implants offered reduced bone loss and less discomfort

5    than other implants and that they could be implanted in a specific manner constituted warranties.

6    *Id.* at 10.  Further, the court found that plaintiff had pled he bought the implants "in reliance" on

7    defendants' representations and that they formed the basis of the bargain.

8    **D.    Defendant's Representations Are Clear Affirmations of Fact and/or Promises**

9    Defendant also argues (incorrectly) that "none of the challenged statements constitute an

10    affirmation of fact or a promise."[9]  [MTD at 21].  In order to plead a claim of breach of express

11    warranty, a "plaintiff must allege the exact terms of the warranty."  *Edmunson*, 2011 WL

12    1897625, at *5.  Further, "[t]o constitute an express warranty, statements must describe specific

13    characteristics of a product; vague or highly subjective product superiority claims often amount

14    to non-actionable puffery."  *Id.*  An actionable affirmation of fact, as opposed to puffery is "a

15    specific factual statement which could be established or disproved through discovery."

16    *Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005); *see also Toyota*,

17    754 F. Supp. 2d at 1182-83 (holding claim that the vehicle's advanced technology throttle system

18    enhanced safety was specific enough to constitute warranty).

19    Here, Defendant's representations at issue are ***not*** mere puffery as they are "specific

20    factual statement[s] which could be established or disproved through discovery."  In fact, the

21    Independent Study commissioned by C&D has already disproved Defendant's representations.

22

---

23    [9]    Defendant appears to posit a nonsensical argument that the "contract claim is predicated
24    on the unsupported legal proposition that an advertising claim creates both a contractual
         obligation as to the claim's truthfulness ***and*** a contractually enforceable duty of the advertiser to
         have at hand scientific evidence to substantiate the claim."  *Fraker v. Bayer Corp.*, No. CV F 08-
25    1564 AWI GSA, 2009 WL 5865687, at *9 (E.D. Cal. Oct. 6, 2009) (emphasis in original)
         (dismissing claim that "Defendant's advertisements create[d] a set of express warranties and that
26    Defendant's failure to substantiate those advertising claims constitute[d] breach").    The
         Complaint clearly alleges that Plaintiffs are seeking redress for Defendant's ***false*** statements,
27    which can be and already have been disproved.  Clearly, if Defendant makes a false statement, it
         will also not have any substantiation for that false statement, but that is not the focus of this
28    action, and certainly not the focus of Plaintiffs' breach of express warranty claim.

Judge Nguyen's Order in *Yamada* is demonstrative.  There, a dentist who purchased dental implants from the defendant manufacturers sued the defendants for, *inter alia*, breach of express warranty alleging that the defendants' implants were defectively designed.  Ex. A at 2.  The court denied defendants' motion to dismiss the breach of express warranty claims, reasoning that:

> Plaintiff's express warranty cause of action incorporates Defendants' alleged representations regarding the NobelDirect.  Several of these representations constitute actionable affirmations of fact rather than puffery.  For example, Plaintiff alleged Defendants' representations that the implants offered reduced bone loss and *less discomfort than other implants.*  According to the FAC, Defendants also represented that the NobelDirect could be implanted without a surgical flap, through "the use of an easier gingival punch insertion site."  *These are both statements that could be proved or disproved through discovery and on which a consumer could reasonably rely in making a purchasing decision.*

*Id.* at 10.

In *Yamada*, defendants' statement that its implants offered less discomfort than other implants (which the court held is ***not*** puffery) is very similar to Defendant's representations in the instant case.  Indeed, Defendant similarly represented that: (1) Clorox's "Fresh Step Scoopable litter with carbon is better at eliminating odors" than other cat litters containing baking soda; (2) Clorox's Fresh Step Scoopable cat litter "has carbon, which is more effective at absorbing odors than baking soda"; and (3) cats "are smart enough to choose" carbon-based Fresh Step "with less odors" over other cat litters with baking soda.  These are all "specific factual statements which could be established or disproved through discovery," and thus, as the *Yamada* court held, this Court should similarly find that Defendant's claims are ***not*** puffery.

### E.    Privity Is Not Required in Plaintiffs' Express Warranty Claim

Finally, Defendant argues that Plaintiffs' "breach of warranty claim fails because there is no privity."  [MTD at 21].  While Defendant correctly notes the "general rule" that privity of contract is required for an action for breach of express warranty, Defendant ignores the exceptions to that general rule.  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (noting that "[t]here are several exceptions to the privity requirement").  "A plaintiff may state a claim for breach of express or implied warranty without alleging privity, therefore, if he alleges facts suggesting that his case falls into one of the recognized exceptions to the general rule."  *Garcia v. M-F Athletic Co., Inc.*, No. CIV. 11-2430 WBS, 2012 WL 531008,

1    at *2 (E.D. Cal. 2012) (citing *Margarita Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575,

2    580 (N.D. Cal. 1999)).

3         "The first [exception] arises when the plaintiff relies on written labels or advertisements

4    of a manufacturer."  *Id.*  That is the case here.  Plaintiffs clearly allege that they relied on

5    Defendant's "written labels or advertisements" for Clorox's Fresh Step.  "[Plaintiff] was exposed

6    to and saw Clorox's marketing and advertising claims, purchased Fresh Step **based on those**

7    **claims**, and suffered injury in fact because of the unfair and deceptive trade practices described

8    herein."  [¶¶15-21].  "Plaintiffs and the Class were exposed to these statements and **reasonably**

9    **relied upon them** in their purchase of Fresh Step."  [¶160].  Thus, privity is not required, and

10   Defendant's motion to dismiss should be denied.

11   **VI.    STANDING**

12        **A.    Plaintiffs Have Sufficiently Alleged a Nationwide Class**

13        Plaintiffs brought a nationwide class action under California consumer protection statutes

14   on behalf of "[a]ll persons or entities that purchased Fresh Step cat litter in the United States."

15   [¶49].  In the alternative to a nationwide class, Plaintiffs also brought the action on behalf of five

16   subclasses under consumer protection statutes in California, Florida, New York, New Jersey, and

17   Texas.  [¶¶50-55].  Defendant's motion to strike the nationwide class and subclass allegations

18   under Rule 12(f) is premature, unsupported by the law, and should be denied.

19        Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any

20   redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to

21   strike are regarded with disfavor, as they are often used as delaying tactics, and should not be

22   granted unless it is clear that the matter to be stricken could have no possible bearing on the

23   subject matter of the litigation."  *Collins v. Gamestop Corp.*, No. C10-1210-TEH, 2010 WL

24   3077671, at *2 (N.D. Cal. Aug. 6, 2010) (citing *Colaprico v. Sun Microsystems, Inc.*, 758 F.

25   Supp. 1335, 1339 (N.D. Cal. 1991)); *see also Shein v. Canon U.S.A., Inc.*, No. CV 08-07323

26   CASEX, 2009 WL 3109721, at *3 (N.D. Cal. Sept. 22, 2009) (holding motions to strike are

27   disfavored "because of the limited importance of pleadings in federal practice").  A court must

28

1   deny the motion to strike "if there is any doubt whether the allegations in the pleadings might be

2   relevant in the action." *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011

3   WL 2111796, at *13 (N.D. Cal. May 26, 2011).  When considering a motion to strike, the Court

4   must view the pleadings in a light most favorable to the non-moving party.  *Id.*  Here, Defendant

5   has not met this heavy burden, as it cannot demonstrate at this early stage in the litigation that the

6   nationwide class allegations clearly have no possible bearing in the action.

7           Defendant's motion should be denied for two reasons.  First, it is premature.  Class

8   allegations are generally not tested at the pleadings stage, but, rather, after one party has filed a

9   motion for class certification.  *See Collins*, 2010 WL 3077671, at *2; *see also Astiana*, 2011 WL

10  2111796, at *14; *Beal v. Lifetouch, Inc.*, No. CV 10-8454-JST MLGX, 2011 WL 995884, at *7

11  (C.D. Cal. Mar. 15, 2011) (holding motion to strike class allegations premature at the pleading

12  stage and refusing to strike such allegations because they are clearly relevant to the subject

13  matter of the litigation).  Courts in this District and in other districts in California routinely deny

14  attempts to strike nationwide class allegations under California consumer protection laws at the

15  pleading stage.  *See Gooden v. Suntrust Mortg., Inc.*, No. 2:11-CV-02595-JAM, 2012 WL

16  996513, at *8 (E.D. Cal. Mar. 23, 2012) (denying motion to strike nationwide class allegations at

17  the pleading stage and holding instead that "class definitions will be considered during the

18  certification process"); *In re Jamster Mktg. Litig.*, No. 05CV0819, 2009 WL 1456632, at *7

19  (S.D. Cal. May 22, 2009) (denying motion to strike nationwide class allegations at the pleading

20  stage because "[p]iece-meal resolution of issues related to the prerequisites for maintaining a

21  class action do not serve the best interests of the court or parties"); *see also Baba v. Hewlett-*

22  *Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *9 (N.D. Cal. Jun. 16, 2010) (denying

23  motion to strike class allegations as unmanageable at the pleading stage); *In re NVIDIA GPU*

24  *Litig.*, No. C 08-04312 JW, 2009 WL 4020104, at *13 (N.D. Cal. Nov. 19, 2009) (denying

25  motion to strike and holding that "[a] determination of the ascertainability and manageability of

26  the putative class in light of the class allegations is best addressed at the class certification stage

27  of the litigation").  Thus, it is most appropriate to decide this issue at the class certification stage

28

1   rather than the pleading stage, and Defendant's motion to strike should be denied.

2         Defendant's reliance on *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009), for

3   the proposition that courts may strike class allegations at the pleading stage does not compel the

4   striking of the nationwide allegations here.  Importantly, the *Sanders* court did not hold that the

5   sufficiency of class allegations must be decided at the pleading stage.  Thus, it is not surprising

6   that numerous courts have denied motions to strike nationwide class allegations, particularly

7   after considering or mentioning the *Sanders* decision.  *See Gooden*, 2012 WL 996513, at *8

8   (holding there is nothing in the *Sanders* decision that requires a court to consider the sufficiency

9   of class definitions during a motion to dismiss or strike and denying the motion as premature);

10  *Baba*, 2010 WL 2486353, at *9 (distinguishing *Sanders* and denying motion to strike class

11  allegations as premature); *Shein*, 2009 WL 3109721, at *8, *10 (same); *Collins*, 2010 WL

12  3077671, at *3 (same).

13        Second, Defendant's motion to strike should also be denied because it has not met its

14  burden to show that the nationwide class allegations clearly have ***no*** possible bearing or

15  relevance in the action.  Defendant's reliance on *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581

16  (9th Cir. 2012), for the proposition that a nationwide class cannot be certified under California

17  consumer protection laws is a misstatement of the law and, in any event, inapposite at this stage

18  of the proceedings.

19        The Ninth Circuit in *Mazza* did not hold that a nationwide class can never be certified

20  under California consumer protection laws.  This fact alone defeats Defendant's motion to

21  strike.[10]  *Mazza* was a class certification decision (*not* a decision on a motion to strike), in which

22  the Ninth Circuit vacated and remanded a district court's class certification order only after (1)

23  considering briefing that "exhaustively detailed" the class issues at hand, (2) applying an

24  independent choice-of-law analysis, and (3) cautioning that the decision was based on the "facts

25  and circumstances" of that case.  *See* 666 F.3d at 591-94.  For this reason, California district

26  courts have distinguished the *Mazza* decision in denying motions to strike class allegations.  In

27  
28  [10]    Defendant concedes as much, acknowledging that *Mazza* merely "strongly suggested" that a nationwide class could not be certified.  [MTD at 22].

1    *Donohoe v. Apple, Inc.*, No. 11-CV-05337 RMW, 2012 WL 1657119, at *7 (N.D. Cal. May 10,

2    2012), in denying defendant's motion to strike class allegations, the court determined that

3    "[a]lthough *Mazza* may influence the decision whether to certify the proposed class and subclass,

4    such a determination is premature.  At this stage in the litigation – before discovery and prior to

5    the parties submitting briefing regarding either choice-of-law or class certification – plaintiff is

6    permitted to assert claims under the laws of different states in the alternative."  Similarly, in

7    *Bruno v. Eckhart Corp.*, No. SACV 11-0173 DOC EX, 2012 WL 752090, at *1 (C.D. Cal. Mar.

8    6, 2012), the court held that the *Mazza* decision did not warrant reconsideration of its prior

9    decision certifying a nationwide class.  The court found that *Mazza* was distinguishable because,

10   among other things, the defendants in *Bruno* failed to exhaustively detail material differences in

11   state laws at the class certification stage (not the pleading stage, such as here).[11]  In sum,

12   Defendant's motion to strike the nationwide class allegations at the pleading stage should be

13   denied.

14        In the event the Court rejects Defendant's motion to strike the nationwide class

15   allegations, which it should for the reasons stated above, Defendant then curiously argues that

16   the subclass allegations should be stricken.  [MTD at 23].  However, Defendant does not cite a

17   single case in support of this proposition, *i.e.*, that subclass allegations can be stricken at the

18   pleading stage for being too "complex."[12]  *Id.*  For the same reasons as those involving the

19   ────────────────────────────

20   [11]    Defendant's reliance on two cases that followed *Mazza* are also inapposite.  In *Ralston v.
     *Mortg. Investors Group, Inc.*, No. 5:08-CV-00536-JF PSG, 2012 WL 1094633 (N.D. Cal. Mar.
21   30, 2012), the court was adjudicating a motion for class certification, not a motion to dismiss.
     The *Ralston* court also emphasized that it "need not determine whether a nationwide class is
22   precluded as a matter of law in *all* cases arising under California's UCL.  But it concludes that
     such a class is precluded in *this* case," thus re-affirming that these issues need to be determined
23   on a case-by-case basis at the class certification stage.  *Id.* at *4 (emphasis in original).  In *In re
     *High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2012 WL 1353057 (N.D. Cal.
24   Apr. 18, 2012), the court granted a motion to dismiss plaintiff's UCL claim on the grounds that
     plaintiff was not entitled to restitution under that claim.  After dismissing the claim on such
25   grounds, the court then mentioned in a conclusory footnote, with no analysis or discussion, that
     even if the UCL had not been dismissed, it would face hurdles at the class certification stage
26   under *Mazza*.  *Id.* at *54-*55, n.13.  The court did, as Defendant suggests, "follow[] *Mazza*."
     [MTD at 23].
27   [12]    The only case cited by Defendant, *Utility Consumers' Action Network v. Sprint Solutions,
     *Inc.*, 259 F.R.D. 484 (S.D. Cal. 2009), does not support its contention.  *Utility Consumers'* is a
28   case denying certification of a nationwide class, not dismissing a pleading or striking *subclass*
     allegations, such as Defendant argues here.

1    nationwide class allegations, Defendant's motion to strike the subclass allegations is premature

2    and not supported by the law.

3         Subclasses are, of course, permissible under Rule 23(c)(5) and have long been utilized in

4    class action litigation.  Plaintiff has alleged only five subclasses, comprising consumers in

5    California, Florida, New York, New Jersey, and Texas.  Defendant fails to provide any reason

6    (much less authority) as to why only five subclasses would be "complex and unmanageable,"

7    other than a conclusory statement.  *Id*.  As with the nationwide class, the appropriate time to

8    address subclass issues is at the class certification stage of the litigation, not at the pleading

9    stage.  *See Donohoe*, 2012 WL 1657119, at *7 (permitting plaintiff to assert claims under the

10   laws of different states in the alternative at the pleading stage); *see also Allen v. Hylands, Inc.*,

11   No. CV 12-01150 DMG MANX, 2012 WL 1656750, at *2 (C.D. Cal. May 2, 2012) (holding

12   *Mazza* "explicitly left open the possibility that a court could certify subclasses grouped around

13   materially different bodies of state law") (citing *Mazza*, 666 F.3d at 594).  Therefore, the Court

14   should deny Defendant's premature motion to strike the subclass allegations.

15        **B.    The Non-Resident Plaintiffs Have Standing to Sue Under California**
              **Consumer Protection Laws**

16

17        Defendant contends that the out-of state Plaintiffs do not have standing to bring claims

18   under California consumer protection and unfair business laws.  In support, Defendant makes a

19   blanket statement that California's consumer protection laws do not have force or operate

20   beyond the boundaries of California, relying on *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App.

21   4th 214 (1999).  This is an incomplete statement of the law.  As *Norwest* makes clear, California

22   statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful

23   conduct occurring in California.  *Id*. at 224-25.  Here, Plaintiffs allege a number of facts that

24   show that Defendant's wrongful conduct emanated from California.  [*See* ¶¶13, 68].  These

25   allegations provide a sufficient basis at the pleading stage for Plaintiffs to bring claims under

26   California consumer protection laws, and, thus, Defendant's motion should be denied.

27        The false and misleading misrepresentations and unfair business practices forming the

28   basis of Plaintiffs' claims emanated from California.  In support, Plaintiffs allege that: (1)

1   Clorox's principal place of business and corporate headquarters are located in California; (2)

2   Clorox manufactures Fresh step cat litter in California; (3) Clorox regularly conducts substantial

3   business in California; (4) significant decisions regarding the content and distribution of the

4   marketing and advertising at issue occurred in California; (5) Clorox's marketing, promotional

5   activities, and literature, including its warranties, were coordinated and/or developed at its

6   California headquarters; and (6) a significant number of class members are located in California.

7   *Id.* Thus, contrary to Defendant's contention [MTD at 25], Plaintiffs alleged that Defendant

8   engaged in the wrongful conduct in California, among other things, and such conduct emanated

9   from California.

10       Courts routinely permit non-resident plaintiffs to maintain claims under California

11   consumer laws where some or all of the challenged conduct emanates from California. *See In re

12   Mattel, Inc.*, 588 F. Supp. 2d 1111 (C.D. Cal. 2008) (holding alleged California connections

13   sufficient to state UCL and CLRA claims by non-resident plaintiffs where misrepresentations

14   made in advertising were reasonably likely to have come from or been approved by Mattel

15   corporate headquarters in California); *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 630

16   (N.D. Cal. 2011) (holding that plaintiff's allegations that defendant's misleading marketing and

17   advertising information were conceived, reviewed, approved, and otherwise controlled from

18   defendant's headquarters in California provided a sufficient basis at the pleading stage for the

19   invocation of California law by non-resident plaintiffs); *Sutcliffe v. Wells Fargo Bank, N.A.*, No.

20   C-11-06595 JCS, 2012 WL 1622665, at *16 (N.D. Cal. May 9, 2012) (holding Missouri couple's

21   injuries resulted from defendant's conduct in California where correspondence relating to loan at

22   issue came from defendant's address in California, among other things); *Fulford v. Logitech,

23   Inc.*, No. C-08-2041 MMC, 2008 WL 4914416, at *1 (N.D. Cal. Nov. 14, 2008) (holding non-

24   resident had standing to bring UCL and FAL claims because defendant's headquarters and its

25   public relations and marketing staff are located in California, and the representations in question

26   were disseminated from California); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589

27   (C.D. Cal. 2008) (holding application of California's UCL and CLRA appropriate by non-

28

1    residents where defendant has substantial presence in California, alleged misconduct emanated

2    from California, and a significant number of class members reside in California); *In re Intel*

3    *Laptop Battery Litig.*, No. C 09-02889 JW, 2010 WL 5173930, at *2 (N.D. Cal. Dec. 15, 2010)

4    (holding application by non-resident of California's UCL is appropriate where alleged wrongful

5    conduct originated in California, where both defendants were headquartered).

6         In *Mattel*, plaintiffs alleged that misrepresentations made in reports, company statements,

7    and advertising were reasonably likely to have come from or been approved by Mattel's

8    corporate headquarters in California. 588 F. Supp. 2d at 1119. The court found those allegations

9    sufficient to state claims under the CLRA by non-resident plaintiffs. *Id.* Similarly, Plaintiffs

10   here allege, among other California contacts, that the significant decisions regarding the content

11   and distribution of the marketing and advertising at issue occurred in California, and Defendant's

12   marketing, promotional activities, and literature, including its warranties, were coordinated

13   and/or developed at Defendant's California headquarters. [¶¶13, 68]; *see also Mazza*, 666 F.3d

14   at 590 (mentioning that non-resident class members had standing to bring California claims

15   because the advertising agency that produced the fraudulent misrepresentations, defendant's

16   corporate headquarters, and one-fifth of the proposed class members were located in California).

17        Defendants rely on several cases, none of which support its contention that the non-

18   resident Plaintiffs in this case do not have standing to bring claims under the UCL, CLRA, or

19   FAL.[13] Indeed, the cases cited by Defendants are materially different because plaintiffs in those

20   cases failed to allege *any* wrongful conduct that occurred or emanated from California. Here, on

21   the other hand, Plaintiffs have enumerated a wide array of such conduct. Thus, the Court should

22   deny Defendant's motion to dismiss the claims of non-resident Plaintiffs.

23   **VII.    CONCLUSION**

24        For the foregoing reasons, Plaintiffs respectfully request that Defendant's motion to

25   dismiss be denied in its entirety, and for any further relief as the Court deems just and proper.

26   _____

[13]      *See Morgan v. Harmonix Music Sys., Inc.*, C08-5211BZ, 2009 WL 2031765 (N.D. Cal.
27   July 30, 2009); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &
     Prods. Liab. Litig.*, 785 F. Supp. 2d 883 (C.D. Cal. 2011); *Tidenberg v. Bidz.com, Inc.*, CV 08-
28   5553 PSG(FMOx), 2009 WL 605249 (C.D. Cal. Mar. 4, 2009).

1  DATED:  June 15, 2012                    BERMAN DEVALERIO

2

3
                                                  /s/ Christopher T. Heffelfinger
4                                          CHRISTOPHER T. HEFFELFINGER

5                                          CHRISTOPHER T. HEFFELFINGER
                                           ANTHONY D. PHILLIPS
6                                          One California Street
                                           Suite 900
7                                          San Francisco, CA 94111
                                           Phone: (415) 433-3200
8                                          Fax: (415) 433-6382

9                                          *Counsel for Plaintiffs*

10                                         ROBBINS GELLER RUDMAN
                                             & DOWD LLP
11                                         SHAWN A. WILLIAMS
                                           Post Montgomery Center
12                                         One Montgomery Street, Suite 1800
                                           San Francisco, CA  94104
13                                         Telephone:  415/288-4545
                                           415/288-4534 (fax)
14
                                           ROBBINS GELLER RUDMAN
15                                           & DOWD LLP
                                           STUART A. DAVIDSON
16                                         MARK DEARMAN
                                           KATHLEEN BARBER
17                                         BAILIE L. HEIKKINEN
                                           CHRISTOPHER MARTIN
18                                         120 East Palmetto Park Road, Suite 500
                                           Boca Raton, FL  33432
19                                         Telephone:  561/750-3000
                                           561/750-3364 (fax)
20
                                           LABATON SUCHAROW LLP
21                                         HOLLIS L. SALZMAN
                                           GREGORY S. ASCIOLLA
22                                         140 Broadway
                                           New York, NY  10005
23                                         Telephone: 212/907-0700
                                           212/818-0477 (fax)
24
                                           *Co-Lead Counsel for Plaintiffs*
25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHEPHARD, FINKELMAN, MILLER
  & SHAH, LLP
JAMES C. SHAH
35 East State Street
Media, PA 19063
Telephone: 610/891-9880
610/891-9883 (fax)

HARKE CLASBY & BUSHMAN LLP
LANCE A. HARKE
SARAH C. ENGEL
HOWARD M. BUSHMAN
9699 NE Second Avenue
Miami, FL 33138
Telephone: 305/536-8220
305/536-8229 (fax)

FARUQI & FARUQI, LLP
DAVID E. BOWER
CHRISTOPHER B. HAYES
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Telephone: 424/256-2884
424/257-2885 (fax)

*Members of Plaintiffs' Executive Committee*