**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CLOROX CONSUMER LITIGATION | ) Master File No. 12-00280 SC<br>)<br>) ORDER GRANTING IN PART AND<br>) DENYING IN PART MOTION TO<br>) DISMISS |
| This Document Relates To:<br><br>    12-00764 SC<br>    12-00356 SC<br>    12-00649 SC<br>    12-01051 SC | )<br>)<br>)<br>)<br>)<br>)<br>) |

## I.    INTRODUCTION

Plaintiffs bring this putative, nationwide class action against Defendant The Clorox Company ("Clorox") in connection with its marketing and advertising of Fresh Step cat litter.  Clorox's Fresh Step uses carbon to eliminate cat odors, whereas other cat litter products typically use baking soda.  Clorox's marketing campaign allegedly conveys that (1) Fresh Step is more effective at eliminating cat odors than products that do not contain carbon, and (2) cats choose Fresh Step over these other cat litters.  Plaintiffs, consumers of Fresh Step from five different states, allege that these statements are false and misleading and are contradicted by scientific studies.

United States District Court
For the Northern District of California

Clorox now moves to dismiss Plaintiffs' Amended Consolidated Class Action Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  ECF No. 43 ("MTD").  As part of its motion to dismiss, Clorox asks the Court to strike Plaintiffs' class allegations from the complaint pursuant to Federal Rule of Civil Procedure 12(f).  The motion is fully briefed.  ECF Nos. 46 ("Opp'n"), 49 ("Reply").  Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for disposition without oral argument.  As detailed herein, Clorox's motion is GRANTED in part and DENIED in part.

## II.   BACKGROUND

In 1984, Clorox began producing Fresh Step cat litter, the "only litter that contains carbon."  ECF No. 29 ("Compl.") ¶ 27. The carbon particles in Fresh Step control cat waste odors.  See id. ¶ 25.  Other cat litter brands use different active ingredients to control these odors.  See id. ¶ 37.  For example, Church & Dwight ("C&D") markets Super Scoop, a cat litter which uses Arm & Hammer baking soda.  Id.

In October 2010, Clorox launched a new advertising campaign to promote Fresh Step.  Id. ¶ 28.  From October 2010 to January 2011, Clorox ran a television commercial featuring videos of playful cats jumping into large and small boxes, including several cats jumping into a litter box with Fresh Step.  Compl. Ex. A.; Schlesinger Decl. ¶ 1, Ex. A.[1]  Before jumping into the Fresh Step litter box,

---

[1] Jon Schlesinger ("Schlesinger"), the Director of Marketing for Litter, Food and Charcoal at The HV Food Product Co., a wholly owned subsidiary of Clorox, filed a declaration in support of Clorox's Motion to Dismiss.  ECF No. 43-1 ("Schlesinger Decl."). Exhibit A to the Schlesinger Declaration is a CD containing video

**United States District Court**
For the Northern District of California

some of the cats examine and apparently reject a nearby litter box filled with Super Scoop.  Id.  While this scene plays out, the words "dramatization" and "based on lab tests" appear at the bottom of the screen.  The commercial's voiceover states:  "Cats like boxes.  Big ones.  Little ones.  And ones with Fresh Step litter inside.  That's because Fresh Step's scoopable litter with carbon is better at eliminating odors than Arm & Hammer's Super Scoop.  Fresh Step.  Cats know what they like."  Id.  Clorox ran an abbreviated version of this ad from December 2010 to January 2011.  Schlesinger Decl. ¶ 2; Compl. Ex. B.

In early January 2011, Clorox ran another television commercial featuring videos of cats engaged in playful activities, such as opening jars of cat food, unlocking doors, and thwarting a dog from entering a house.  Compl. Ex. C; Schlesinger Decl. ¶ 3, Ex. A.  Like the earlier commercials, this commercial concludes by showing cats choosing a box of Fresh Step over a box of Super Scoop.  Compl. Ex. C.; Schlesinger Decl. Ex. A.  As the video plays, a voiceover states: "Cats are smart.  They can outsmart their humans.  Their canines.  And locked doors.  They're also smart enough to choose the litter with less odors.  That's because Fresh Step Scoopable Litter with carbon is better at eliminating litter box odors than Arm & Hammer Super Scoop.  Fresh Step, cats know what they like."  Id.

In response to these commercials (the "First Commercials"), C&D filed an action against Clorox in the Southern District of New

clips of Clorox's various Fresh Step commercials.  Exhibits A to E of the Complaint are storyboards of these commercials.

York in January 2011.  Compl. ¶ 43, RJN Ex. 1.[2]  C&D alleged that it had commissioned a study to determine the frequency with which house cats would reject Super Scoop and Fresh Step when used in the cat's everyday litter box.  Compl. ¶ 37, RJN Ex. 1 ¶ 24.  Of the 158 cats in the study, six rejected their litter box when it was filled with Super Scoop, while eight rejected their litter box when it was filled with Fresh Step.  Compl. ¶ 38; RJN Ex. 1 ¶ 25.  C&D alleged that the study showed that the litter preference claims in the First Commercials were false and misleading.  RJN Ex. 1 ¶ 27.  Among other things, C&D asserted a claim for false advertising in violation of the Lanham Act on the ground that the commercials were likely to mislead consumers into purchasing Fresh Step instead of Super Scoop.  Id. ¶¶ 41, 47-55.  Soon after the suit was filed, Clorox ceased airing the First Commercials and C&D voluntarily dismissed its action without prejudice.  Compl. ¶ 43.

In February 2011, Clorox began running a new set of commercials (the "Second Commercials").  Compl. ¶ 32.  These commercials also show cats engaged in playful activities.  Id. Exs.

---

[2] Clorox requests that the Court take judicial notice of various documents filed in C&D's lawsuits against Clorox in the Southern District of New York, as well as video clips of the Fresh Step commercials described in the Complaint.  ECF No. 44 ("RJN").  Plaintiffs have not opposed the motion.  Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of any fact that is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."  Fed. R. Ev. 201(b).  Relying on Rule 201, "[c]ourts routinely take judicial notice of legal documents filed in related litigation, including pleadings, motions, and judgments."  Ha v. U.S. Attorney Gen., No. 09-5281, 2010 WL 3001224, at *1 (N.D. Cal. July 29, 2010).  Further, under the incorporation by reference doctrine, the Court may take judicial notice of documents "whose contents are alleged in a complaint and whose authenticity no party questions."  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).  Accordingly, the Court GRANTS Clorox's request for judicial notice.

1    D-E; Schlesinger Decl. Ex. A.  They also depict two laboratory

2    beakers, one filled with a black substance labeled "carbon" and the

3    other filled with a white substance labeled "baking soda."  Id.

4    Green gas is then shown floating through the beakers; the green gas

5    in the carbon beaker rapidly dissipates, while the gas in the

6    baking soda beaker barely dissipates.  Id.  During this

7    demonstration, the voiceover states: "That's why Fresh Step

8    Scoopable has carbon, which is more effective at absorbing odors

9    than baking soda."  Id.  The following text appears at the bottom

10   of the screen during the demonstration: "Dramatization of cat waste

11   malodor after 1 day.  Based on sensory lab test."  Id.

12       In response to the Second Commercials, C&D filed a second

13   lawsuit against Clorox in the Southern District of New York.

14   Compl. ¶ 44, RJN Ex. 3.  C&D alleged that it had commissioned an

15   independent laboratory to conduct a ten-day sensory study involving

16   a panel of persons trained in odor evaluation that compared Fresh

17   Step to one of C&D's baking soda-based cat litters.  Compl. ¶¶ 40-

18   41; RJN Ex. 3 ¶ 8.  C&D further alleged that, on every single day

19   of the study, and overall across all days, the panelists' average

20   rating for C&D's baking soda-based litter was lower than the

21   average rating for Fresh Step, with a lower rating representing a

22   more palatable odor.  Compl. ¶ 41; RJN Ex. 3 ¶ 9.  Again, C&D

23   alleged that Clorox's commercials conveyed misleading information

24   about the respective merits of Fresh Step and C&D cat litter

25   products and asserted a Lanham Act claim.  RJN Ex. 3 ¶¶ 70-78.

26       On January 3, 2012, District Judge Jed. S. Rakoff ("Judge

27   Rakoff") granted C&D's motion for a preliminary injunction and

28   enjoined Clorox from further airing the Second Commercials.  Church

& Dwight Co., Inc. v. Clorox Co. ("C&D v. Clorox II"), 840 F. Supp. 2d 717, 723 (S.D.N.Y. 2012).  Clorox appealed the decision, but, before the Second Circuit could rule on the appeal, the parties reached a private settlement and C&D dismissed its claims with prejudice.[3]

A few weeks after Judge Rakoff issued a preliminary injunction in C&D v. Clorox II, Megan Sterritt filed the instant action against Clorox.  ECF No. 1.  Five additional cases were later filed in the Northern District of California and other out-of-state district courts.  ECF Nos. 20, 28.  These cases are now consolidated before this Court.  Id.  Plaintiffs are seven individuals from five different states -- California, Florida, New Jersey, New York, and Texas -- who purchased Fresh Step sometime after the First Commercials aired in October 2010.  Compl. ¶¶ 15-21.

Plaintiffs filed an Amended Consolidated Class Action Complaint (the "Complaint") on April 11, 2012.  Plaintiffs' Complaint adopts many of C&D's allegations concerning laboratory tests comparing C&D and Clorox litter products.  See id. ¶¶ 37-42. Plaintiffs seek certification of a nationwide class action under California consumer protection statutes on behalf of "[a]ll persons or entities that purchased Fresh Step cat litter in the United States."  Id. ¶ 49.  Specifically, Plaintiffs assert claims for violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 17500 et seq.; violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.;

---

[3] See Docket Entries 55 and 58 in C&D v. Clorox II, Case No. 11-cv-1865 (S.D.N.Y.).

**United States District Court**
For the Northern District of California

and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17200, 17250.  <u>Id.</u> ¶¶ 71-95.  In the alternative to a nationwide class, Plaintiffs bring this action on behalf of five subclasses under consumer protection statutes in California, Florida, New Jersey, New York, and Texas.  <u>Id.</u> ¶¶ 50-55, 96-156. In addition to violations of consumer protection statutes, Plaintiffs assert causes of action for breach of express warranty and unjust enrichment.  <u>Id.</u> ¶¶ 157-170.

### III. <u>LEGAL STANDARD</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 664 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 663. (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may

effectively defend against it" and "sufficiently plausible"
such that "it is not unfair to require the opposing party to
be subjected to the expense of discovery."  Starr v. Baca, 633
F.3d 1191, 1204 (9th Cir. 2011).

**IV.   DISCUSSION**

    **A.   Lack of Substantiation**

    Clorox argues that Plaintiffs' UCL, CLRA, and FAL claims fail
because they are predicated on allegations that Clorox's Fresh Step
marketing campaign conveyed factual statements which lack
substantiation.  MTD at 12-16.  Clorox contends that such
allegations are not cognizable under California law.  Before
analyzing the substance of these arguments, the Court reviews the
legal elements of a claim for false advertising under California's
UCL, CLRA, and FAL.

    The UCL prohibits "any unlawful, unfair or fraudulent business
act or practice and unfair, deceptive, untrue or misleading
advertising."  Cal. Bus. & Prof. Code § 17200.  The CLRA prohibits
"unfair methods of competition and unfair or deceptive acts or
practices."  Cal. Civ. Code § 1770(a).  The FAL makes it unlawful
to induce the public to enter into any obligation through the
dissemination of "untrue or misleading" statements.  Cal. Bus. &
Prof. Code § 17500.

    In evaluating false advertising claims under these statutes,
courts are guided "by the reasonable consumer test."  Williams v.
Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008).  Under this
test, a plaintiff "must show that members of the public are likely
to be deceived."  Id. (internal quotations omitted).  Defendants

**United States District Court**
For the Northern District of California

1  are liable for "not only advertising which is false, but also

2  advertising which[,] although true, is either actually misleading

3  or which has a capacity, likelihood or tendency to deceive or

4  confuse the public." Kasky v. Nike, Inc., 27 Cal. 4th 939, 951

5  (Cal. 2002) (internal quotations omitted).  "[W]hether a business

6  practice is deceptive will usually be a question of fact not

7  appropriate for decision on demurrer." Williams, 552 F.3d at 938.

8       Courts have been careful to distinguish between allegations

9  that a defendant's advertising claims are actually false and

10  allegations that such claims lack substantiation. See, e.g.,

11  Fraker v. Bayer Corp., No. 08-1564 AWI GSA, 2009 U.S. Dist. LEXIS

12  125633, at *22-23 (N.D. Cal. Oct. 2, 2009).  Consumer claims for a

13  lack of substantiation are not cognizable under California law.

14  See Stanley v. Bayer Healthcare LLC, 11CV862-IEG BLM, 2012 WL

15  1132920, at *3 (S.D. Cal. Apr. 3, 2012); Chavez v. Nestle USA,

16  Inc., No. 09-9192, 2011 WL 2150128, at *5 (C.D. Cal. May 19, 2011);

17  Fraker, 2009 U.S. Dist. LEXIS 125633, at *22.

18       This principle arises, at least in part, from California

19  Business and Professions Code section 17508.  Section 17508

20  establishes an administrative procedure whereby certain government

21  authorities may require a business to substantiate advertising

22  claims.  These authorities include the Director of Consumer

23  Affairs, the Attorney General, any city attorney, or any district

24  attorney.  Cal. Bus. & Prof. Code § 17508(b).  Section 17508 does

25  not authorize consumers or other private entities to make

26  substantiation demands.  See Nat'l Council Against Health Fraud,

27  Inc. v. King Bio Pharm., Inc., 107 Cal. App. 4th 1336, 1345 (Cal.

28  Ct. App. 2003).  The reasoning being that "[t]his limitation

**United States District Court**
For the Northern District of California

1    prevents undue harassment of advertisers and is the least

2    burdensome method of obtaining substantiation for advertising

3    claims."  Id.

4        Clorox argues that Plaintiffs' action runs afoul of this

5    limitation since "the primary focus of the complaint is the

6    supposed lack of substantiation for Clorox's claim that carbon is

7    more effective than baking soda at fighting odors."  MTD at 14.

8    Clorox contends that Plaintiffs have attempted to "conceal the

9    essence of their complaint" by deleting references to the word

10   "substantiation" that appeared in an earlier pleading filed by one

11   of the Plaintiffs before the case was consolidated.  Id. at 13.

12   Plaintiffs respond that the gravamen of their allegations is not

13   that Clorox's advertising claims are unsubstantiated, but that they

14   are provably false.

15       The Court finds Plaintiffs' position more persuasive.  As an

16   initial matter, Plaintiffs' operative complaint is the only

17   pleading relevant to Clorox's motion to dismiss.  Whether or not

18   Plaintiffs' prior, non-operative complaint stated a cognizable

19   claim is unimportant and Plaintiffs are free to change their legal

20   theories through amendment.  See The Fair v. Kohler Die & Specialty

21   Co., 228 U.S. 22, 25 (1913) ("the party who brings a suit is master

22   to decide what law he will rely upon").  Moreover, considering the

23   operative complaint as a whole, the Court cannot conclude that

24   Plaintiffs are merely alleging a lack of substantiation.  Rather,

25   the Complaint clearly alleges that the challenged representations

26   are false.

27       Specifically, Plaintiffs target Clorox's alleged

28   representations that: (1) carbon-based cat litter is more effective

**United States District Court**
For the Northern District of California

1    at eliminating cat odors than other brands that do not use carbon,

2    and (2) cats choose carbon-based cat litter over other litters.

3    See, e.g., Compl. ¶ 1.  Plaintiffs then allege that two scientific

4    studies commissioned by C&D directly contradict these

5    representations.  See, e.g., Compl. ¶ 7 ("as scientific studies

6    have shown, carbon-based cat litter is not superior to other cat

7    litters").  According to Plaintiffs, one study "conclusively

8    prove[s] that cats do not reject baking soda based cat litter more

9    than they reject carbon-based cat litter."  Id. ¶ 38.  The results

10   of the other study allegedly "demonstrate that [baking soda-based]

11   cat litter was significantly superior to Fresh Step at the 95%

12   confidence level in terms of cat waste odor elimination."  Id. ¶

13   41.  Thus, Plaintiffs do more than allege that there is no

14   competent scientific evidence to support Clorox's claims; they

15   allege that the competent scientific evidence shows that Clorox's

16   claims are objectively false.

17        **B.**   **Puffery**

18        Clorox also moves to dismiss Plaintiffs' action to the extent

19   that it is based on advertising claims that cats "like" or "are

20   smart enough to choose Fresh Step."  MTD at 18-19.  Clorox reasons

21   that these statements could not deceive a reasonable consumer since

22   they amount to mere puffery.  Id.

23        Puffery is "exaggerated advertising, blustering, and boasting

24   upon which no reasonable buyer would rely."  Southland Sod Farms v.

25   Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997).

26   "The distinguishing characteristics of puffery are vague, highly

27   subjective claims as opposed to specific, detailed factual

28   assertions."  Haskell v. Time, Inc., 857 F. Supp. 1392, 1399 (E.D.

United States District Court
For the Northern District of California

Cal. 1994).  "Advertising that amounts to 'mere' puffery is not actionable."  Id.  "Product superiority claims that are vague or highly subjective often amount to nonactionable puffery." Southland, 108 F.3d at 1145.  On the other hand, "[a] specific and measurable advertisement claim of product superiority based on product testing is not puffery."  Id.  Determining whether an alleged misrepresentation constitutes puffery is a question of law appropriate for resolution on a Rule 12(b)(6) motion to dismiss. Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008).

Plaintiffs argue that representations about what cats "like" or "choose" amount to measurable claims about cats' litter preferences.  Opp'n at 9.  Plaintiffs point out that one of the studies commissioned by C&D actually measured such preferences by determining the frequency with which cats reject Fresh Step as opposed to a baking soda-based cat litter.  Id.  Plaintiffs argue that the demonstrations depicted in the First Commercials also represent that cats prefer Fresh Step to other brands.  Id. Specifically, these demonstrations show cats rejecting a litter box filled with baking soda-based cat litter in favor of a litter box filled with Fresh Step.  Plaintiffs contend that these depictions "give the impression that the preference statements are based upon scientific testing and are not merely 'outrageous generalized statements.'"  Id. at 10.

The Court agrees that the First Commercials generally convey the message that cats prefer Fresh Step to other cat litter brands. However, the commercials provide no basis for the claim.  Contrary to Plaintiffs' assertion, the depiction of four or five cats

**United States District Court**
For the Northern District of California

1    choosing to playfully jump into a litter box of Fresh Step rather

2    than a litter box of the competitor's brand does not give the

3    impression of scientific testing -- especially since this

4    demonstration follows several videos of cats playing with boxes.

5    Further, the First Commercials do not make quantifiable claims

6    which could be proved or disproved.  The overall message of the

7    commercials is that cats prefer Fresh Step because they are "smart

8    enough to choose the litter with less odors."  No reasonable

9    consumer would consider such a message to be a statement of fact.

10        Though neither party addresses the issue, it is worth noting

11   that the voiceovers and images in the First Commercials are also

12   accompanied by text at the bottom of the screen.  Specifically,

13   while various cats are shown jumping into litter boxes of Fresh

14   Step, the following two statements appear:  "dramatization" and

15   "based on lab tests."  The "dramatization" disclaimer further

16   undercuts Plaintiffs' contention that reasonable consumers would

17   take the First Commercials' representations to be statements of

18   fact.  The statement "based on lab tests" has the potential to cut

19   the other way.  However, the commercials do not clearly identify

20   what representations are based on lab tests.[4]  Thus, this text does

21   not help Plaintiffs' case.

22        For the reasons set forth above, the Court dismisses

23   Plaintiffs' claims to the extent that they are based on the

24   statements that cats "like" or "are smart enough to choose Fresh

25   Step."

26   _____

27   [4] It appears that Clorox intended to convey that the statement
     "Fresh Step's scoopable litter with carbon is better at eliminating
     odors than Arm & Hammer's Super Scoop" is based on lab tests.  The

28   voiceover makes this statement as the text "based on lab tests"
     appears on the screen.

**United States District Court**
For the Northern District of California

### C.   **Rule 9(b) Pleading Requirements**

Clorox argues that Plaintiffs' UCL, CLRA, and FAL claims fail because Plaintiffs have not satisfied the heightened pleading requirements for fraud set forth in Federal Rule of Civil Procedure 9(b).  MTD at 19-20.  Specifically, Clorox contends that "[t]he complaint is devoid of basic facts of what alleged misrepresentations Plaintiffs saw, when they saw them, or where they saw them."  Id. at 19.  Plaintiffs do not contest that Rule 9(b) applies, but assert that they have met its heightened pleading requirements by submitting examples of the allegedly false and misleading commercials.  Opp'n at 11-12.

Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud or mistake."  "Thus, [a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).  Rule 9(b) serves three purposes: (1) "to provide defendants with adequate notice" and "deter plaintiffs from . . . filing . . . complaints as a pretext for the discovery of unknown wrongs"; (2) "to protect those whose reputation would be harmed as a result of being subject to fraud charges"; and (3) "to prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (internal quotations omitted).

In this case, requiring Plaintiffs to plead additional facts would not advance any of these goals.  The Complaint identifies each of the commercials upon which the Plaintiffs allegedly relied

and specifically describes their contents.  Compl. ¶¶ 28-34.

Plaintiffs allege when these commercials aired and provide detailed

storyboard images for each.  <u>Id.</u> ¶¶ 28-34, Exs. A-E.  Plaintiffs

also allege that they purchased Fresh Step in reliance on the

representations set forth in these commercials.  <u>Id.</u> ¶¶ 15-21.

This detailed information is sufficient to place Clorox on notice

of the basis of Plaintiffs' claims and demonstrates that Plaintiffs

are not on a fishing expedition.  Indeed, based upon Plaintiffs'

allegations, Clorox has already been able to locate and produce

videos of the commercials described in the Complaint.  <u>See</u>

Schlesinger Decl. Ex. A.  Accordingly, the Court finds that

Plaintiffs have satisfied the heightened pleading requirements of

Rule 9(b).

D.   **Breach of Express Warranty**

Clorox next moves to dismiss Plaintiffs' cause of action for

breach of warranty.  "To state a claim for breach of express

warranty under California law, a plaintiff must allege (1) the

exact terms of the warranty; (2) reasonable reliance thereon; and

(3) a breach of warranty which proximately caused plaintiff's

injury."  <u>Nabors v. Google, Inc.</u>, 5:10-CV-03897 EJD, 2011 WL

3861893, at *4 (N.D. Cal. Aug. 30, 2011).

Plaintiffs specifically identify two alleged warranties

arising out of the commercials described in the Complaint: (1)

carbon-based Fresh Step is better at eliminating and absorbing

odors than baking soda-based cat litters, and (2) cats "are smart

enough to choose" carbon-based Fresh Step over baking soda-based

cat litters.  Compl. ¶ 159.  Plaintiffs also allege that Clorox's

**United States District Court**
For the Northern District of California

1   product labels constitute express warranties, but they do not

2   provide any specifics concerning the labels' contents.   Id. ¶ 158.

3        The Court has already found that Clorox's statements that cats

4   are "smart enough" to choose Fresh Step amount to puffery and are

5   therefore not actionable under California's consumer protection

6   statutes.   See Section IV.B supra.   As puffery, these statements

7   are also not actionable under a theory of breach of express

8   warranty.   See Edmunson v. Procter & Gamble Co., 10-CV-2256-IEG

9   NLS, 2011 WL 1897625, at *5 (S.D. Cal. May 17, 2011).

10       Additionally, Plaintiffs' vague allegation concerning "product

11  labels" cannot support a claim for breach of warranty.   Since

12  Plaintiffs do not allege what these labels say, they have failed to

13  identify the exact terms of the warranty.   See Nabors, 2011 WL

14  3861893, at *4.   Plaintiffs' allegations in this area are not

15  sufficiently detailed to provide Clorox with meaningful notice.   As

16  the Complaint is currently pled, Clorox would need to guess at

17  which labels and which packaging form the basis of Plaintiffs'

18  claim.   This guesswork could be complicated by variations in Fresh

19  Step packaging over time.   In short, Plaintiffs' pleading in this

20  area falls far short of the plausibility and notice requirements

21  set forth in Iqbal and Twombly.   The Court GRANTS Plaintiffs leave

22  to amend to cure these deficiencies.

23       The Court reaches a different conclusion with respect to

24  Plaintiffs' claim that Clorox warranted that Fresh Step is better

25  at eliminating odors than other cat litters.   Plaintiffs allege the

26  specific contents of this warranty and that they reasonably relied

27  on the warranty when they purchased Fresh Step.   See Section IV.C

28  supra; Compl. ¶ 60.   Plaintiffs also allege that Clorox breached

United States District Court
For the Northern District of California

the warranty because scientific studies show that baking soda-based cat litters are better at eliminating odors.  Compl. ¶¶ 41-42. Finally, Plaintiffs allege that they were injured by this breach because they paid a premium for Fresh Step.  Id. ¶ 8.  These allegations are sufficient to state a plausible claim for breach of express warranty.

Clorox argues that the challenged statements comparing the odor reduction properties of baking soda and carbon-based cat litter are not actionable because they are "highly subjective product superiority claims."  MTD at 21.  The Court disagrees. Clorox's representation that "Fresh Step . . . is better at eliminating litter box odors than Arm & Hammer Super Scoop" is likely to be considered a statement of fact by a reasonable consumer.  Contrary to Clorox's argument, the statement is neither "vague" nor "highly subjective."  Clorox identifies both a point of comparison -- Arm & Hammer Super Scoop -- and a metric for comparison -- elimination of cat odors.  Further, the beaker comparison depicted in the Second Commercials gives the impression that this representation is based on the results of a scientific study.[5]  Clorox's apparent representation that this beaker test is "[b]ased on [a] sensory lab test" furthers this impression.  See Schlesinger Decl. Ex. A.

---

[5] Clorox also argues that this warranty claim fails because it is "predicated on the unsupported legal proposition that an advertising claim creates both a contractual obligation as to the claim's truthfulness and a contractually enforceable duty of the advertiser to have at hand scientific evidence to substantiate the claim."  MTD at 21 (quoting Fraker, 2009 U.S. Dist. LEXIS 125633, at *24).  However, as discussed in Section IV.A supra, Plaintiffs' claims are not predicated on an alleged lack of substantiation.

Clorox also argues that Plaintiffs' breach of warranty claim fails because there is no privity.  Under California law, "[t]he general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale."  Burr v. Sherwin Williams Co., 42 Cal. 2d 682, 695 (Cal. 1954); see also All W. Electronics, Inc. v. M-B-W, Inc., 64 Cal. App. 4th 717, 725 (Cal. Ct. App. 1998) (quoting Burr).  However, there are several exceptions to the privity requirement.  Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008).  "The first arises when the plaintiff relies on written labels or advertisements of a manufacturer."[6]  Id.  This is precisely what Plaintiffs have alleged here.  Accordingly, their claim for breach of express warranty does not fail for lack of privity.

In sum, Plaintiffs' breach of warranty claim fails to the extent that it is predicated on Clorox's representations that cats prefer Clorox or on unidentified statements appearing on Fresh Step's packaging.  The claim may proceed to the extent that it is predicated on Clorox's representations that Fresh Step is better at eliminating odor than other baking soda-based cat litters.

**E.   Class Allegations**

Plaintiffs bring this action on behalf of all persons that purchased Fresh Step in the United States between October 2010 and the date of the final disposition of this action.  Compl. ¶ 49.  In the alternative, Plaintiffs seek certification of five subclasses.

---

[6] Clorox argues that the exception is limited to written warranties.  Reply at 10.  However, it fails to cite any case law indicating that this exception should be so limited.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

Id. ¶¶ 50-55.  Each of these subclasses would be represented by a lead plaintiff from one of five states and would encompass "all persons or entities who purchased Fresh Step cat litter in the United States during the period between October 2010 and the date of the final disposition of this action."  Id.  Clorox now moves to strike Plaintiffs' nationwide class and subclass allegations pursuant to Federal Rule of Civil Procedure 12(f).  MTD at 22-25. Plaintiffs respond that Clorox's motion to strike is premature.[7] Opp'n at 20.

    Federal Rule of Civil Procedure 12(f) provides that a court may, on its own or on a motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike "are generally disfavored . . . [and] are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation."  Rosales v. Citibank, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).

    Class allegations typically are tested on a motion for class certification, not at the pleading stage.  See Collins v. Gamestop Corp., C10-1210-TEH, 2010 WL 3077671, at *2 (N.D. Cal. Aug. 6, 2010).  However, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).  Thus, some courts have struck class allegations where it is clear from the

_____

[7] Clorox does not respond to this argument or otherwise address Plaintiffs' class allegations in its reply brief.

**United States District Court**
For the Northern District of California

1   pleadings that class claims cannot be maintained.  <u>E.g.</u>, <u>Sanders v.</u>

2   <u>Apple Inc.</u>, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009).

3        Here, Clorox argues that Plaintiffs' class allegations should

4   be struck because the Ninth Circuit's decision in <u>Mazza v. American</u>

5   <u>Honda Motor Co.</u>, 666 F.3d 581 (9th Cir. 2012), "strongly

6   suggest[s]" that California's consumer protection laws cannot be

7   applied nationwide.  MTD at 22.  The plaintiffs in <u>Mazza</u> brought a

8   putative nationwide class action against Honda, alleging violations

9   of California's UCL, FAL, and CLRA related to Honda's marketing of

10  its collision mitigation braking system.  666 F.3d at 587.  The

11  district court certified a nationwide class, and the Ninth Circuit

12  reversed.  After engaging in a detailed analysis of California's

13  choice-of-law rules, the Ninth Circuit found that "the district

14  court abused its discretion in certifying a class under California

15  law that contained class members who purchased or leased their car

16  in different jurisdictions with materially different consumer

17  protection laws."  <u>Id.</u> at 590.  The court's decision was

18  influenced, in part, by briefing from Honda that "exhaustively

19  detailed the ways in which California law differs from the laws of

20  the 43 other jurisdictions."  <u>Id.</u> at 591.

21       Significantly, <u>Mazza</u> was decided on a motion for class

22  certification, not a motion to strike.  At this stage of the

23  instant litigation, a detailed choice-of-law analysis would be

24  inappropriate.  <u>See</u> <u>Donohue v. Apple</u>, Inc., 11-CV-05337 RMW, 2012

25  WL 1657119, at *7 (N.D. Cal. May 10, 2012) ("Although <u>Mazza</u> may

26  influence the decision whether to certify the proposed class and

27  subclass, such a determination is premature [at the pleading

28  stage].").  Since the parties have yet to develop a factual record,

**United States District Court**
For the Northern District of California

1    it is unclear whether applying different state consumer protection

2    statutes could have a material impact on the viability of

3    Plaintiffs' claims.  Further, unlike the defendant in Mazza, Clorox

4    has not explained how differences in the various states' consumer

5    protection laws would materially affect the adjudication of

6    Plaintiffs' claims or otherwise explained why foreign laws should

7    apply.  Accordingly, Clorox has failed to meet its burden.  See

8    Washington Mut. Bank, FA v. Super. Ct., 24 Cal. 4th 906, 921 (Cal.

9    2001) (class action opponent bears "the burden of demonstrating

10   that foreign law, rather than California law, should apply to class

11   claims").

12        Clorox also argues that the out-of-state Plaintiffs lack

13   standing to sue under California law.  MTD at 24.  As a general

14   rule, California statutes do not have force beyond the boundaries

15   of California.  See Morgan v. Harmonix Music Sys., Inc., C08-

16   5211BZ, 2009 WL 2031765, at *2 (N.D. Cal. July 7, 2009).  However,

17   "[California] statutory remedies may be invoked by out-of-state

18   parties when they are harmed by wrongful conduct occurring in

19   California." Norwest Mortgage, Inc. v. Super. Ct., 72 Cal. App.

20   4th 214, 224-25 (Cal. Ct. App. 1999).  In determining whether

21   California's consumer protection statutes apply to non-California

22   residents, courts consider "where the defendant does business,

23   whether the defendant's principal offices are located in

24   California, where class members are located, and the location from

25   which advertising and other promotional literature decisions were

26   made."  In re Toyota Motor Corp., 785 F. Supp. 2d 883, 917 (C.D.

27   Cal. 2011).  Here, Plaintiffs have alleged that Clorox conducts

28   substantial business in California and has its principal place of

1    business and corporate headquarters in the state, decisions

2    regarding the challenged representations were made in California,

3    Clorox's marketing activities were coordinated at its California

4    headquarters, and a significant number of class members reside in

5    California.  Compl. ¶ 68.  Thus, Plaintiffs have sufficiently pled

6    that Clorox's conduct originated in or had strong connections to

7    California.  See In re Mattel, Inc., 588 F. Supp. 2d 1111, 1119

8    (C.D. Cal. 2008) ("While [defendant's] connections [to California]

9    may, after a more thorough development of the facts, prove to be

10    specious or irrelevant, the Court finds that the alleged California

11    connections are sufficient to state claims by non-California

12    plaintiffs.").

13       Accordingly, the Court DENIES Clorox's motion to strike the

14    class allegations.

15

16    **V.**    **CONCLUSION**

17       For the reasons set forth above, the Court GRANTS in part and

18    DENIES in part The Clorox Company's motion to dismiss.  The Court

19    DISMISSES WITH PREJUDICE Plaintiffs' action to the extent that it

20    is predicated on Clorox's advertising claims that cats "like" or

21    "are smart enough to choose Fresh Step."  The Court also DISMISSES

22    Plaintiffs' claim for breach of express warranty to the extent that

23    it is predicated on product labels or other statements not

24    expressly identified in the Complaint.  Plaintiffs may amend the

25    breach of express warranty claim so as to specifically identify the

26    exact terms of the warranties upon which the claim is based within

27    thirty (30) days of this Order.  Finally, Clorox's motion to strike

28    Plaintiffs' class allegations is DENIED.

The Court hereby sets a case management conference for September 7, 2012 at 10:00 a.m. in Courtroom 1, 450 Golden Gate Avenue, San Francisco, California.  The parties are to file a joint case management statement no fewer than seven days prior.

IT IS SO ORDERED.

Dated:  August 24, 2012          

UNITED STATES DISTRICT JUDGE