United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CLOROX CONSUMER LITIGATION | ) Master File No. 12-00280 SC<br>)<br>) ORDER GRANTING IN PART AND<br>) DENYING IN PART MOTION FOR<br>) JUDGMENT ON THE PLEADINGS |
| This Document Relates To: | )<br>) |
| 12-00764 SC<br>12-00356 SC<br>12-00649 SC<br>12-01051 SC | )<br>)<br>)<br>)<br>) |

## I.   **INTRODUCTION**

Plaintiffs bring this putative class action against Defendant The Clorox Company ("Clorox") in connection with its marketing and advertising of Fresh Step cat litter.[1]  Clorox's advertising represents that Fresh Step is the only cat litter that uses carbon, and that Fresh Step is better at eliminating cat waste odors than other brands of cat litter that use baking soda.  Plaintiffs allege

---

[1] Plaintiffs are Megan Sterritt and Jose Segarra, citizens of Florida (collectively, the "Florida Plaintiffs"); Kristin Luszcz, a citizen of New York (the "New York Plaintiff"); Lori Kowalewski, a citizen of New Jersey (the "New Jersey Plaintiff"); Tina Butler-Furr and Catherine Lenz, citizens of Texas (the "Texas Plaintiffs"); and Susan Doyle, a citizen of California.  Each plaintiff seeks to represent a class of Fresh Step purchasers from his or her respective state.

that recent studies commissioned by Clorox's competitor, Church & Dwight ("C&D"), show that Clorox's advertisements are demonstrably false.  Clorox now moves for judgment on the pleadings, primarily on the ground that Plaintiffs have failed to allege an injury in fact.  ECF No. 71 ("Mot.").  The motion is fully briefed, ECF Nos. 74 ("Opp'n"), 76 ("Reply"), and appropriate for determination without oral argument per Civil Local Rule 7-1(b).  For the reasons set forth below, the Motion is GRANTED in part and DENIED in part.

## II.  __BACKGROUND__

In 2010 and 2011, Clorox aired a series of commercials representing that its carbon-based Fresh Step cat litter is "better at eliminating litter box odors" than C&D's Super Scoop, a rival brand of cat litter that uses Arm & Hammer baking soda.  Based on these commercials, C&D twice sued Clorox for violations of the Lanham Act.  In connection with these lawsuits, C&D alleged that it had commissioned an independent laboratory to conduct a ten-day sensory study, involving a panel of persons trained in odor evaluation, that compared Fresh Step to one of C&D's baking soda-based cat litters.  C&D further alleged that, on every single day of the study, and overall across all days, the panelists' average rating for C&D's baking soda-based litter was lower than the average rating for Fresh Step, with a lower rating representing a more palatable odor.  Both of C&D's suits settled before the court could render a judgment on the merits.

In the instant action, a number of consumers are attempting to piggyback on the studies commissioned in connection with the C&D lawsuits.  Plaintiffs allege that Clorox charges a premium for

Fresh Step, and that they would not have paid that premium but for Clorox's claims that carbon-based cat litter is superior to baking-soda-based cat litter.  Specifically, Plaintiffs allege that a 25-pound box of Clorox's Fresh Step costs $10.77, or $0.43 per pound, while a 25-pound box of Clorox's Scoop Away cat litter brand (which does not contain carbon) costs $9.37, or $0.37 per pound. Plaintiffs also allege that a 20-pound box of C&D's baking-soda-based Super Scoop costs $7.88, or $0.39 per pound.

Plaintiffs assert causes of action for violations of the consumer protection laws of California, Florida, New Jersey, New York, and Texas, as well as claims for breach of express warranty and unjust enrichment under the laws of those states.  Plaintiffs seek to certify California, Florida, New Jersey, New York, and Texas subclasses.  Clorox previously moved to dismiss.  ECF No. 43. On August 24, 2012, that motion was granted in part and denied in part.  ECF No. 55 ("Aug. 24 Order").  The Court left Plaintiffs' causes of action largely undisturbed to the extent that they were predicated on Clorox's carbon-superiority claims.  Id.  In its motion for judgment on the pleadings, Clorox raises a new set of arguments for dismissing Plaintiffs' causes of action.

III. **LEGAL STANDARD**

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  Hal Roach Studios,

Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).  Moreover, a motion for judgment on the pleadings is subject to the same standard of review as a motion to dismiss, and thus the pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Johnson v. Rowley, 569 F.3d 40, 43-44 (2d Cir. 2009); see also United States ex re. Cafasso v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1055 n. 4 (9th Cir. 2011) (citing Johnson).  A claim is plausible on its face when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

**IV.   DISCUSSION**

Defendants move for judgment on the pleadings on the grounds that Plaintiffs lack standing because they have not personally found Fresh Step to be less effective than other brands. Defendants also argue that the New Jersey, New York, Florida, and Texas claims should be dismissed.  The Court addresses each argument in turn.

**A.   Article III Standing**

Article III of the United States Constitution provides that the "judicial power of the United States" extends only to proper "cases" and "controversies."  The doctrine of standing that flows from this language limits the federal courts' exercise of the judicial power to those cases brought by plaintiffs who meet certain minimum requirements.  See Allen v. Wright, 468 U.S. 737,

750 (1984).

> The irreducible constitutional minimum of Article III standing contains three elements. First, the plaintiff must have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent." Second, there must be a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the action challenged. "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

Renee v. Duncan, 686 F.3d 1002, 1012 (9th Cir. 2012) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 (1992)) (internal quotation marks, brackets, and citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561.

Clorox argues that Plaintiffs have failed to plead injury in fact, since they do not allege (1) that Fresh Step did not work as advertised in reducing odors or (2) that they personally found Fresh Step to be less effective than other cat litter brands. Mot. at 5. Clorox reasons that Plaintiffs' injuries are hypothetical at best since they have not alleged that they compared Fresh Step to other brands. Id. at 8. Clorox further argues that Plaintiffs' only alleged harm is that C&D claimed that its brand of cat litter is more effective than Clorox's. Id. at 1. Plaintiffs concede that they do not allege that Fresh Step failed to reduce cat odors, but they argue that such allegations are unnecessary to establish standing. Opp'n at 6. Plaintiffs contend that they have pled an actual and concrete economic injury by claiming that Clorox deceived them into paying a premium for a cat litter that studies

United States District Court
For the Northern District of California

have shown is less effective at eliminating cat odors than other non-carbon-based cat litters.  Opp'n at 5.  In reply, Clorox argues that Plaintiffs' concession is fatal.  Clorox contends that Plaintiffs cannot show injury in fact if they never actually experienced the alleged inferiority of Fresh Step.  Reply at 4. Clorox further argues that C&D's claim that Fresh Step is inferior to Super Scoop and other baking-soda-based cat litters is irrelevant to determining whether Plaintiffs were harmed.  Id.

The Court agrees with Plaintiffs.  As an initial matter, even if Fresh Step did eliminate cat odors, it did not perform as advertised if it was worse at eliminating odors than other baking-soda-based cat litters.  Further, if Fresh Step is in fact objectively inferior at eliminating cat odors, it is irrelevant that Plaintiffs did not experience that inferiority first hand. Clorox's position implicitly requires the Court to assume that there is no way to objectively measure or compare the effectiveness of various cat litters.  Clorox is essentially arguing that a consumer cannot possibly know that Super Scoop is better or worse than Fresh Step at fighting odors until he or she personally tries both products.  According to Clorox, a person's taste in cat litter, like a person's taste in food, is a matter of personal preference.  That may be so.  However, at this stage, the Court must take all well-pleaded factual allegations as true.  According to the complaint, C&D studies show that baking-soda-based cat litters are objectively better at reducing cat odors than Fresh Step.  The notion that one cat litter is objectively better at fighting odors is not implausible.  Indeed, that is the very claim that Clorox makes in its own advertisements.  In sum, Clorox's

**United States District Court**
For the Northern District of California

arguments raise factual issues that are not suitable for determination on a motion for judgment on the pleadings.[2]

Clorox also cites to a number of cases finding a lack of standing where the plaintiffs alleged that they had purchased a defective or potentially dangerous product, but admitted that they had not been injured by the product or that the product had performed as advertised with respect to them.[3] For example, Rivera involved a pain medication which had been withdrawn from the market after reports of liver failure among long-term users. 283 F.3d at

---

[2] In its reply brief, Clorox offers a hypothetical example that purportedly shows that Plaintiffs have not suffered an injury in fact:

> PepsiCo unveils an ad touting that "taste tests show that seven out of ten adults prefer Pepsi to Coke." A consumer buys Pepsi, enjoys the drink, and continues to buy it. Coca-Cola then issues a competing advertising campaign based on its own consumer survey, proclaiming that Pepsi's taste tests were flawed. The Pepsi consumer -- who enjoyed the Pepsi he bought, never bought Coke, and never personally found Coke to be preferable to Pepsi -- plainly has no standing to sue PepsiCo because he has suffered no harm. The fact that Coca-Cola may dispute the accuracy of Pepsi's commercials has no bearing on whether that Pepsi consumer personally suffered any injury.

Reply at 3. The problem with this hypothetical is that the taste of a soft drink is not amenable to objective measurement. In contrast, according to Plaintiffs, the odor-fighting abilities of cat litter are amenable to objective measurement. Thus, a more apt hypothetical would involve Pepsi representing that its product had fewer calories than Coke. Such a representation could be proven true or false. Further, if the representation was false, it could potentially harm calorie-conscious consumers who choose Pepsi over Coke. These consumers need not try Coke to show it has fewer calories than Pepsi or otherwise prove injury.

[3] Mot. at 6-8 (citing Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315 (5th Cir. 2002); Bowman v. RAM Med., Inc., I O-CV-4403 DMC MF, 2012 WL 1964452 (D.N.J. May 31, 2012); In re McNeil Consumer Healthcare, Mktg. & Sales Practices Litig., MDL 2190, 2011 WL 2802854 (E.D. Pa. July 15, 2011); Whitson v. Bumbo, C 07-05597 MHP, 2009 WL 1515597 (N.D. Cal. Apr. 16, 2009); Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171, 172 (D.D.C. 2003)).

United States District Court
For the Northern District of California

317.  The plaintiff sought to represent a class of patients who ingested the drug but had not been injured by it.  Id.  The Third Circuit found that the plaintiff lacked standing, reasoning: "the wrongs [the plaintiff] and the class allege are those suffered by other, non-class member patients."  Id. at 320.  The other cases cited by Clorox differ only with respect to the products involved.  For example, Whitson concerned a child seat that allegedly caused severe physical injuries to a number of babies.  2009 WL 1515597, at *1-2.  The plaintiff sought to represent a class of the injured, but neither she nor her child had been harmed by the product.  Id. at *2.  Following the Third Circuit's lead in Rivera, this Court dismissed the action for a lack of standing.  Id. at *6.

Clorox's cases are inapposite.  Unlike the instant action, the advertisements in the cited cases did not compare the defendants' products to their competitors'.  Accordingly, none of Clorox's authority addresses the question presented here: does paying a premium for a product as a result of claims of product superiority constitute an injury in fact when the purportedly inferior product is cheaper and more effective?  To the extent that the cited cases discuss economic injuries, they are distinguishable.  For example, in Rivera, the court rejected the plaintiff's assertion that she had not received the benefit of her bargain, since, by her own admission, she had paid for and received an effective pain killer.  283 F.3d 320.  In contrast, here, Plaintiffs allege that they paid a premium for an inferior product as a result of Clorox's misleading advertising.  In Williams, the plaintiff alleged that, although he had not been physically harmed by the defendant's allegedly defective drug, he had suffered an injury because the

**United States District Court**
For the Northern District of California

1  defendants' promotional tactics drove up the price of the drug.

2  297 F. Supp. 2d at 176.  The court rejected this argument, in part

3  because the plaintiff had not alleged that he was deceived or even

4  saw defendant's advertising.  Id. at 177.  Such is not the case

5  here, since Plaintiffs have alleged that they would not have paid a

6  premium for Fresh Step but for Clorox's advertising.

7       The authority cited by Plaintiffs, while not on all fours with

8  the instant action, is more persuasive.  In Maya v. Centex

9  Corporation, 658 F.3d 1060, 1065 (9th Cir. 2011), the defendants

10  allegedly represented that they were building "stable family

11  neighborhoods," but were in fact selling homes to high risk buyers

12  who were more likely to default in times of economic hardship.  The

13  plaintiffs, a group of homeowners in the neighborhood, alleged that

14  the defendants' practices and the resulting foreclosures reduced

15  the economic value of their own homes.  Id. at 1066.  The

16  defendants argued that the plaintiffs had failed to adequately

17  allege standing.  Id. at 1067.  The Ninth Circuit disagreed,

18  holding that the plaintiffs had pled actual and concrete economic

19  injuries by alleging that they paid more for their homes than they

20  were worth at the time of sale, as well as alleging that the

21  defendants' actions caused their homes to lose value above and

22  beyond those losses caused by general economic conditions.  Id. at

23  1069, 1071.

24       Clorox contends that Maya is inapposite, reasoning that the

25  plaintiffs in that case suffered injury only because they purchased

26  homes with characteristics that they personally found undesirable.

27  Reply at 5.  In contrast, argues Clorox, Plaintiffs rely upon the

28  experiences of others to establish that the litter they purchased

United States District Court
For the Northern District of California

was allegedly worth less than they paid.  Id.  However, as discussed above, Plaintiffs need not allege that they personally experienced the inferiority of Fresh Step since they have alleged that C&D's studies show that Clorox's carbon-based cat litter is objectively worse at fighting cat odors.  Further, just as the plaintiffs in Maya did not need to purchase two homes to demonstrate one was worse than the other, Plaintiffs need not purchase two sets of cat litter to show injury.

For these reasons, the Court finds that Plaintiffs have adequately alleged an injury in fact and declines to dismiss this case for lack of standing.[4]

**B.   New Jersey Claims**

The New Jersey Plaintiff asserts the following claims on behalf of herself and the putative New Jersey class: (1) violation of the New Jersey Consumer Fraud Act (the "NJCFA"), N.J. Stat. § 56:8-1, et seq., (2) breach of warranty, and (3) unjust enrichment. Clorox argues that the NJCFA claim fails because Plaintiffs have not alleged an ascertainable loss, the breach of warranty claim should be dismissed for lack of pre-litigation notice, and the unjust enrichment claim should be dismissed because New Jersey does not recognize such a remedy for tortious conduct.

**1.   NJCFA**

The NJCFA was intended to address "sharp practices and dealings in the marketing of merchandise and real estate whereby

---

[4] Though it is not germane to this motion, the Court notes that Clorox's arguments raise questions about whether this case is appropriate for class certification.  If, as Clorox implies, measuring a cat litter's odor fighting abilities is a subjective exercise, then it is hard to see how Plaintiffs' complaints could be common to or representative of the alleged class.

United States District Court
For the Northern District of California

the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind[s] of selling or advertising practices." Daaleman v. Elizabethtown Gas Co., 390 A.2d 566, 569 (N.J. 1978). To state a claim under the NJCFA, a plaintiff must allege: (1) unlawful conduct by the defendant; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss. Mason v. Coca-Cola Co., 774 F. Supp. 2d 699, 702 (D.N.J. 2011).

Clorox argues that Plaintiffs have failed to satisfy the second element, which requires that a plaintiff plead an ascertainable loss "with enough specificity as to give the defendant notice of possible damages." Torres-Hernandez v. CVT Prepaid Solutions, Inc., 3:08-CV-1057-FLW, 2008 WL 5381227, at *7 n.3 (D.N.J. Dec. 17, 2008). Echoing its arguments on standing, see Section IV.A supra, Clorox contends that Plaintiffs cannot meet their burden because they have not alleged that they personally found Clorox's claims of carbon-superiority to be untrue. Mot. at 9.

Plaintiffs respond that they can show an ascertainable loss under the so-called benefit of the bargain theory, Opp'n at 8, which "requires nothing more than that the consumer was misled into buying a product that was ultimately worth less to the consumer than the product he was promised." Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 99 (D.N.J. 2011). A plaintiff may state a claim under the benefit of the bargain theory by alleging: "(1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised

and the one received can be reasonably quantified."  Id.

In reply, Clorox argues that Plaintiff cannot state a claim under the benefit of the bargain theory because their claims are based solely on the assertions of C&D and because they have no basis to claim that the box of litter they purchased was less effective than another brand of litter.  Reply at 7.  Clorox cites to Hoffman v. Nutraceutical Corp., CIV.A. 12-5803 ES, 2013 WL 2650611, at *2 (D.N.J. June 10, 2013), which dismissed NJCFA claims where the plaintiff alleged that the defendants' products were contaminated with lead but failed to allege that the product he used contained lead.  In that respect, Hoffman is similar to Rivera and the other no-injury products liability cases distinguished in Section IV.A supra.

Clorox is essentially repackaging its standing arguments.  As discussed in Section IV.A supra, these arguments miss the mark. Once again, Clorox is asking the Court to discount the C&D study and assume that baking-soda-based litter is not objectively better at reducing cat odors than carbon-based litter.  This the Court cannot do at the pleadings stage.  Accordingly, the NJCFA claim remains undisturbed.

### 2.  **Breach of Express Warranty**

New Jersey adopts the Uniform Commercial Code's notice requirement for express warranty claims.  Luppino v. Mercedes-Benz USA, LLC, CIV. 09-5582 DMC JAD, 2011 WL 2470625, at *3 (D.N.J. June 20, 2011).  Thus, "[w]here a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  N.J. Stat. § 12A:2-607(3)(a).  "[P]roviding

1  notice pursuant to this regulation is a condition precedent to

2  filing any suit for breach of contract under Article 2 of the

3  U.C.C. or its state counterparts." <u>Joc, Inc. v. Exxonmobil Oil</u>

4  <u>Corp.</u>, CIV 08-5344 (FSH), 2010 WL 1380750, at *4 (D.N.J. Apr. 1,

5  2010). Clorox argues that the New Jersey Plaintiff's claim for

6  breach of express warranty fails because she failed to provide

7  notice. Mot. at 11. Plaintiffs respond that Clorox had ample pre-

8  suit notice because of C&D's two earlier Lanham Act lawsuits.

9  Opp'n at 9-10 n.8. This argument is unavailing. The statute

10 specifically contemplates notice by the "buyer," in this case the

11 New Jersey Plaintiff. <u>See</u> N.J. Stat. § 12A:2-607(3)(a). The fact

12 that Clorox was sued in another jurisdiction, by another party, for

13 a different cause of action does not constitute sufficient notice

14 under the statute. Accordingly, the New Jersey Plaintiff's claim

15 for breach of express warranty is DISMISSED WITH PREJUDICE.

16        **3.**   <u>**Unjust Enrichment**</u>

17     Finally, Clorox moves for judgment on the pleadings on the New

18 Jersey Plaintiff's claim for unjust enrichment. To state a claim

19 for unjust enrichment under New Jersey law, a plaintiff must allege

20 "both that defendant received a benefit and that retention of that

21 benefit without payment would be unjust." <u>VRG Corp. v. GKN Realty</u>

22 <u>Corp.</u>, 641 A.2d 519, 526 (N.J. 1994). Moreover, "[t]he unjust

23 enrichment doctrine requires that the plaintiff show that it

24 expected remuneration from the defendant at the time it performed

25 or conferred a benefit on defendant and that the failure of

26 remuneration enriched defendant beyond its contractual rights."

27 <u>Id.</u>

28     A number of courts applying New Jersey law have held that an

**United States District Court**
For the Northern District of California

1   unjust enrichment claim should be dismissed where it is based on

2   tortious conduct and there appear to be no allegations that the

3   plaintiff expected or anticipated remuneration from the defendant.

4   See Williams v. BASF Catalysts LLC, CIV.A. 11-1754 SRC, 2012 WL

5   6204182, at *20 (D.N.J. Dec. 12, 2012); Mason v. Coca-Cola Co.,

6   CIV.A. 09-0220-NLH, 2010 WL 2674445, at *7 (D.N.J. June 30, 2010);

7   Torres-Hernandez v. CVT Prepaid Solutions, Inc., 3:08-CV-1057-FLW,

8   2008 WL 5381227, at *9 (D.N.J. Dec. 17, 2008).[5]  As Plaintiffs

9   point out, other district courts have allowed claims for unjust

10  enrichment to proceed in the false advertising context.  See

11  Stewart v. Beam Global Spirits & Wine, Inc., 877 F. Supp. 2d 192,

12  201 (D.N.J. 2012).

13      The Court finds more persuasive the line of cases dismissing

14  claims for unjust enrichment based on tortious conduct.

15  Accordingly, the New Jersey Plaintiff's claim for unjust enrichment

16  is DISMISSSED WITH PREJUDICE.

17      **C.**   **New York Claims**

18      The New York Plaintiff asserts the following claims on behalf

19  of herself and the putative New York class: (1) deceptive acts and

20  practices in violation of New York General Business Law ("GBL")

21  section 349; (2) false advertising in violation of GBL section 350,

22  et seq.; (3) breach of express warranty; and (4) unjust enrichment.

23  Clorox now moves for judgment on the pleadings on all four claims.

24      **1.**   **GBL Sections 349 and 350**

25      GBL section 349 provides: "Deceptive acts or practices in the

26

27  [5] See also Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.,
    CIV. 08-5380 (JLL), 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009)

28  (dismissing claim for unjust enrichment because it was essentially
    another way of stating a traditional tort claim).

conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349(a).  To state a prima facie case under section 349, a plaintiff must show that the defendant engaged in an act or practice that is deceptive or misleading in a material way to a reasonable consumer and that the plaintiff was injured by the defendant's act or practice.  Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 (N.Y. 2002).  "The standard for recovery under [GBL section] 350, while specific to false advertising, is otherwise identical to section 349."  Id. at 324 n.1.

Clorox first argues that the New York Plaintiff's GBL claims fail for a lack of cognizable injury.  Mot. at 13.  According to Clorox, New York courts have repeatedly rejected allegations of pecuniary loss arising solely from the purchase of a defendant's product.  Id.  However, even Clorox's own authority recognizes that a consumer might have a cognizable GBL claim where the consumer pays a higher price for a product as a result of a defendant's misrepresentations.  See Small v. Lorillard Tobacco Co., Inc., 94 N.Y.2d 43, 57 n.5 (N.Y. 1999).  Further, other courts have expressly held that a plaintiff has adequately pled an injury under the GBL by alleging that consumers paid a premium based on the defendants' misrepresentations.  See Ackerman v. Coca-Cola Co., CV-09-0395 (JG), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010).

Small, the case upon which Clorox relies, does not favor dismissal of Plaintiffs' GBL claims.  In that case, the plaintiffs alleged that tobacco companies had used deceptive marketing practices to sell cigarettes and suppressed research indicating that nicotine is addictive.  Small, 94 N.Y.2d at 51.  The

plaintiffs argued that they did not need to allege addiction to prove injury -- rather, they claimed that they only needed to allege that they would not have purchased defendants' cigarettes but for defendants' deceptive marketing.  Id. at 56.  The court disagreed, holding: "Without addiction as part of the injury claim, there is no connection between the misrepresentation and any harm from, or failure of, the product."  Id.  The court also reasoned that the plaintiffs had failed to allege that the cost of the cigarettes was affected by the defendants' alleged misrepresentation.  Id. at 56-57 & n.5.  In contrast, here, Plaintiffs have specifically alleged that Clorox was able to charge a premium for Fresh Step by representing that Fresh Step was more effective at reducing cat odors than its competitors.[6]

The other case cited by Clorox on this issue, Derbaremdiker v. Applebee's Int'l, Inc., 12-CV-01058 KAM, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012), does not demand a different result.  The plaintiff in that case brought GBL claims in connection with a sweepstakes offered by the restaurant chain Applebee's.  The plaintiff alleged that Applebee's implied that sweepstakes' participants would compete only against Applebee's customers, when they actually competed against the customers of thirty businesses.  2012 WL 4482057, at *2.  The court found that the plaintiff had failed to allege a cognizable injury, reasoning that the plaintiff needed to

---

[6] Clorox argues that Plaintiffs must plead more particularized facts about the alleged price premium, reasoning that Plaintiffs concede that Fresh Step is one of the most popular cat litter brands and thus would likely already command a price premium.  Mot. at 14 n.8.  The Court disagrees.  It is plausible that Clorox can charge more for Fresh Step because Clorox represents that Fresh Step is better at eliminating odors than other brands.  It is also plausible that Fresh Step became one of the most popular brands of cat litter through the success of Clorox's advertising.

United States District Court
For the Northern District of California

allege a harm that was separate and apart from the deception itself. Id. at *7. Since the sweepstakes entry made no representations about the pool of participants, the court also found that the plaintiff received exactly what was represented to him: the chance to win a prize. Id. Here, Plaintiffs have pled an actual pecuniary loss by alleging that Clorox charges a premium for Fresh Step. They have also alleged that they received a cat litter that is worse at reducing cat odors than the brands that Clorox represented to be inferior.

Next, Clorox argues that the New York Plaintiff's GBL claims fail because she has not alleged that she was deceived in New York. Both GBL sections 349 and 350 are only actionable where the defendant conducts activities "in this state," i.e., New York. N.Y. Gen. Bus. Law §§ 349(a), 350. Thus, "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." Goshen, 98 N.Y.2d at 325.

Plaintiffs respond that they meet this standard since they allege that the New York Plaintiff was a citizen of New York at all relevant times to this matter. Opp'n at 11. However, the "[GBL] analysis does not turn on the residency of the parties," but rather whether the alleged transactions took place in New York State. Goshen, 98 N.Y.2d at 325. In their opposition, Plaintiffs essentially ask the court to infer from the pleadings that the New York Plaintiff viewed Clorox's advertisements and purchased Fresh Step in New York because she is a resident of the state. See Opp'n at 11-12. In light of the pleading standards enunciated by New York courts, this Court declines to make the leap. Accordingly, the New York Plaintiff's GBL claims are DISMISSED, but the Court

United States District Court
For the Northern District of California

GRANTS Plaintiffs leave to amend to specifically allege where the New York Plaintiff was deceived.

### 2.  <u>Express Warranty</u>

To state a claim for breach of express warranty, a plaintiff must show an "affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase and that the warranty was relied upon." <u>Schimmenti v. Ply Gem Indus., Inc.</u>, 549 N.Y.S.2d 152, 154 (N.Y. App. Div. 1989) (quotations omitted).  The affirmation of fact or promise must have been false or misleading when made.  <u>DiBartolo v. Abbott Labs.</u>, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012).

Clorox contends that the New York Plaintiff's express warranty claim fails because she has not alleged that Clorox made an affirmation of fact or promise that was false when made.  Mot. at 15.  Pointing to a number of studies submitted into evidence in connection with the C&D litigation, Clorox argues that it believed and continues to believe that Fresh Step is more effective at reducing cat odors than other brands.  <u>Id.</u>  This is a question of fact, not appropriate for determination at the pleadings stage.

Next, Clorox argues that there was no breach because the New York Plaintiff has not alleged that she personally found that Fresh Step was ineffective at reducing cat odors.  <u>Id.</u> at 15-16.  However, as discussed at length in Section IV.A <u>supra</u>, the issue is not whether Fresh Step was ineffective, but whether it was less effective than its competitors.  Plaintiffs have plausibly alleged that Fresh Step is less effective by pointing to the studies commissioned by C&D.

///

**United States District Court**
For the Northern District of California

1    Accordingly, the New York Plaintiff's claim for breach of

2  express warranty remains undisturbed.

3         **3.    Unjust Enrichment**

4    New York's high court explained the limited circumstances in

5  which a plaintiff may state a claim for unjust enrichment in

6  Corsello v. Verizon New York, Inc.:

7

8         The basis of a claim for unjust enrichment is that the
          defendant has obtained a benefit which in "equity and
9         good conscience" should be paid to the plaintiff.  In
          a broad sense, this may be true in many cases, but
10        unjust enrichment is not a catchall cause of action to
          be used when others fail.  It is available only in
11        unusual situations when, though the defendant has not
          breached a contract nor committed a recognized tort,
12        circumstances create an equitable obligation running
          from the defendant to the plaintiff.  Typical cases
13        are those in which the defendant, though guilty of no
          wrongdoing, has received money to which he or she is
14        not entitled.  An unjust enrichment claim is not
          available where it simply duplicates, or replaces, a
15        conventional contract or tort claim.

16

17  18 N.Y.3d 777, 790 (N.Y. 2012) (citations omitted).

18    Based on Corsello, Clorox argues that the New York Plaintiff's

19  claim for unjust enrichment fails because it is duplicative of her

20  other claims for relief.  Mot. at 16.  Plaintiffs respond that it

21  would be premature to dismiss the claim at the pleading stage

22  because it is still unclear whether the New York Plaintiff will be

23  successful on her other claims.  Opp'n at 15.  The Court agrees

24  with Clorox.  This is not one of those unusual situations where the

25  Court could find that the defendant is guilty of no wrongdoing but

26  still received money to which it was not entitled.  If the New York

27  Plaintiff succeeds on her other claims, her claim for unjust

28  enrichment would be duplicative under New York law.  On the other

United States District Court
For the Northern District of California

hand, if the New York Plaintiff's other claims ultimately fail, then her claim for unjust enrichment must also fail since it is predicated on the same theory of deception.

Accordingly, the New York Plaintiff's claim for unjust enrichment is DISMISSED WITH PREJUDICE.

**D.   Florida Claims**

The Florida Plaintiffs assert the following causes of action on behalf of themselves and the putative Florida class: (1) violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, et seq.; (2) misleading advertising, id. § 817.41, et seq. (the "Florida Advertising Act"); (3) breach of express warranty, and (4) unjust enrichment.  Clorox now moves for judgment on the pleadings on all four claims.

**1.   FDUTPA**

The FDUTPA is intended to "prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of [Florida] without limitation." Millennium Commc'ns & Fulfillment, Inc. v. Office of Atty. Gen., 761 So. 2d 1256, 1262 (Fla. Dist. Ct. App. 2000).  To state a claim under the statute, a plaintiff must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Hill v. Hoover Co., 899 F. Supp. 2d 1259, 1264 (N.D. Fla. 2012).  Clorox moves for judgment on the pleadings on the grounds that (1) the Florida Plaintiffs have not alleged actual damages, and (2) the Florida Plaintiffs have not alleged that they were deceived in Florida.  Mot. at 17-18.

With respect the first argument, "[t]he measure of actual damages is the difference in the market value of the product or

service in the condition in which it was delivered and its market
value in the condition in which it should have been delivered
according to the contract of the parties." <u>Rollins, Inc. v.</u>
<u>Butland</u>, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006) (quotations
omitted). Clorox argues that the Florida Plaintiffs cannot
establish actual damages since they have not pled that Fresh Step
failed to meet their personal expectations. Clorox is once again
repackaging its standing arguments. The Court finds these
arguments unavailing for the reasons set forth in Sections IV.A,
IV.B.1, and IV.C.1 <u>supra</u>.

Clorox's second argument has more merit. An FDUTPA claim can
only be brought by Florida residents in connection with activities
occurring in Florida. <u>See Amar Shakti Enters., LLC v. Wyndham</u>
<u>Worldwide, Inc.</u>, 6:10-CV-1857-ORL-31, 2011 WL 3687855, at *3 (M.D.
Fla. Aug. 22, 2011). Here, the Florida Plaintiffs have not pled
where they viewed the allegedly deceptive advertising, or where
they purchased Fresh Step. Plaintiffs argue that they have alleged
that Clorox disseminated false information "throughout the United
States," and that the Florida Plaintiffs are citizens of Florida.
As discussed in Section IV.C.1, this is not enough. Accordingly,
Plaintiffs' FDUTPA claim is DISMISSED. The Court GRANTS the
Florida Plaintiffs leave to amend so that they may allege a
connection between Clorox's alleged misconduct and the state of
Florida.

### 2. The Florida Advertising Act

The Florida Advertising Act declares that the dissemination of
"any misleading advertisement" is "fraudulent and unlawful." Fla.
Stat. § 817.41. Clorox argues that the Florida Advertising Act

**United States District Court**
For the Northern District of California

1  claim is subject to the heightened pleading standards of Federal

2  Rule of Civil Procedure 9(b), because the claim sounds in fraud.

3  Mot. at 18.  Clorox further argues that the Florida Plaintiffs have

4  failed to meet the Rule 9(b) pleading standards set forth by the

5  Eleventh Circuit.  Id.

6  The Court addressed and rejected a similar argument when it

7  ruled on Clorox's earlier motion to dismiss, and it declines to

8  revisit the issue now.  See Aug. 24 Order at 14-15.  In any event,

9  the Eleventh Circuit decisions cited by Clorox -- neither of which

10  deals with the Florida Advertising Act -- are not binding here

11  since this Court sits in the Ninth Circuit.  The Court is bound to

12  follow the law of Florida, not the federal courts that sit in that

13  state.  Cf. 28 U.S.C. § 1652 ("The laws of the several states . . .

14  shall be regarded as rules of decision in civil actions in the

15  courts of the United States, in cases where they apply.").

16  Accordingly, the Florida Plaintiffs' Florida Advertising Act

17  claim remains undisturbed.

18  ### 3.  **Breach of Express Warranty**

19  Clorox moves for judgment on the pleadings on the Florida

20  Plaintiffs' breach of warranty claim on the ground that the Florida

21  Plaintiffs are not in privity with Clorox.  Florida courts have yet

22  to reach a consensus on the privity requirement for claims for

23  breach of express warranty.

24  In 1953, the Florida Supreme Court held that "[t]he general

25  rule that an ultimate purchaser may not sue the wholesaler [for

26  breach of warranty] is not an absolute one and it seems to be

27  losing force with the passage of time."  Hoskins v. Jackson Grain

28  Co., 63 So. 2d 514, 514 (Fla. 1953).  Hoskin's holding was called

**United States District Court**
For the Northern District of California

into question in <u>West v. Caterpillar Tractor Co., Inc.</u>, 336 So. 2d 80, 92 (Fla. 1976), which noted that "warranty law in Florida has become filled with inconsistencies and misapplications in the judiciary's attempt to provide justice to the injured consumer, user, employee, bystander, etc., while still maintaining the contract principles of privity."  The Florida Supreme Court has since held that <u>West</u> bars claims for breach of implied warranty where privity is lacking.  <u>Kramer v. Piper Aircraft Corp.</u>, 520 So. 2d 37, 39-40 (Fla. 1988).

However, whether or not privity is required for claims for breach of express warranty remains an open question.  Several courts have held that <u>Kramer</u> and <u>West</u> extend the privity requirement to claims for breach of express warranty.  <u>See</u> <u>T.W.M. v. Am. Med. Sys., Inc.</u>, 886 F. Supp. 842, 844 (N.D. Fla. 1995); <u>see also</u> <u>Hill v. Hoover Co.</u>, 899 F. Supp. 2d 1259, 1265 (N.D. Fla. 2012) (citing <u>T.W.M.</u>).  Other courts have found exceptions to the privity requirement where the retailer or "middleman" is unlikely to have relevant knowledge regarding the manufacturer's product. <u>See</u> <u>Smith v. Wm. Wrigley Jr. Co.</u>, 663 F. Supp. 2d 1336, 1343 (S.D. Fla. 2009) ("[I]t defies common sense to argue that purchasers of Eclipse gum presumed that the cashier at the local convenience store is familiar with the scientific properties of MBE"); <u>see also</u> <u>Mardegan v. Mylan, Inc.</u>, 10-14285-CIV, 2011 WL 3583743, at *6 (S.D. Fla. Aug. 12, 2011) (citing <u>Smith</u>).

The Court finds the latter line of cases persuasive.  Here, it is unlikely that retailers of cat litter have relevant knowledge about the odor-fighting abilities of Fresh Step relative to its competitors.  Accordingly, the Florida Plaintiffs' claim for breach

of express warranty remains undisturbed.

### 4.   Unjust Enrichment

Clorox argues that the Florida Plaintiffs' unjust enrichment claim fails since it is based on the same conduct as their FDUTPA and False Advertising Act claims.  Mot. at 19.  Plaintiffs decline to contest the issue.  Accordingly, the Florida Plaintiffs' unjust enrichment claim is DISMISSED WITH PREJUDICE.

### E.   Texas Claims

The Texas Plaintiffs assert the following claims on behalf of themselves and the putative Texas class: (1) violation of the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.50, et seq.; (2) breach of express warranty; and (3) unjust enrichment.

### 1.   DTPA

The DTPA allows consumers to bring causes of action in connection with three types of conduct: (1) false, misleading, or deceptive acts or practices; (2) breaches of express or implied warranty; and (3) any unconscionable action.  Tex. Bus. & Com. Code § 17.50(a).  Plaintiffs assert claims under all three prongs. Clorox argues that Plaintiffs have failed to allege sufficient facts to support any kind of claim under the DTPA.

With respect to the first and second prongs, Clorox argues that Plaintiffs fail to meet the heightened pleading requirements of Rule 9(b).  Mot. at 20-21.  Specifically, Clorox contends that Plaintiffs do not identify what characteristics, uses and benefits Clorox falsely represented Fresh Step as having.  The Court disagrees.  Plaintiffs specifically allege that Clorox falsely represented that Fresh Step was better at reducing odors than other

United States District Court
For the Northern District of California

baking-soda-based cat litters.  The other Rule 9(b) arguments
raised by Clorox -- that Plaintiffs do not identify which
advertising they saw or what material information Clorox withheld -
- have already been addressed by the Court.  See Aug. 24 Order at
14-15; Section IV.D.2 supra.

As to the third prong, unconscionability relates to "an act or
practice which, to a consumer's detriment, takes advantage of the
lack of knowledge, ability, experience, or capacity of the consumer
to a grossly unfair degree."  Tex. Bus. & Com. Code § 17.45(5).
This "requires a showing that the resulting unfairness was
glaringly noticeable, flagrant, complete and unmitigated."
Chastain v. Koonce, 700 S.W.2d 579, 584 (Tex. 1985).  "A slight
disparity between the consideration paid and the value received is
not unconscionable, a glaring and flagrant disparity is."  Id. at
583.  Thus, it is not enough to simply allege that a defendant took
unfair advantage of a plaintiff.  Id. at 582.  Plaintiffs' attempt
to characterize Clorox's alleged conduct as "grossly unfair" is a
stretch, especially since Plaintiffs concede that Fresh Step was
effective at reducing cat odor.  The Court finds that, for the
purposes of Texas law, it is not unconscionable to charge a premium
of a few cents per pound for an effective cat litter.

Accordingly, the Texas Plaintiffs' DTPA claim is DISMISSED
WITH PREJUDICE to the extent that is premised on unconscionable
conduct.  The claim remains undisturbed in all other respects.

## 2.   **Breach of Express Warranty**

Clorox moves to dismiss the breach of express warranty claim
as to the Texas Plaintiffs on the ground that they did not provide
pre-suit notice.  The Texas Business and Commerce Code provides

**United States District Court**
For the Northern District of California

1  that, upon acceptance of a tender, "the buyer must within a

2  reasonable time after he discovers or should have discovered any

3  breach notify the seller of [the] breach or be barred from any

4  remedy."  Tex. Bus. & Com. Code § 2.607(c)(1).  "The buyer is

5  required to notify the seller that a breach of warranty has

6  occurred in order to give the seller an opportunity to inspect the

7  product to determine whether it was defective and to allow the

8  seller an opportunity to cure the breach, if any."  Wilcox v.

9  Hillcrest Mem'l Park of Dallas, 696 S.W.2d 423, 424 (Tex. App.

10  1985).

11      Plaintiffs concede that they inadvertently neglected to notify

12  Clorox of their Texas warranty claims prior to commencing

13  litigation.  However, Plaintiffs claim that they cured this

14  omission by sending a demand letter to Clorox's counsel on April

15  22, 2013 -- over a year after this litigation commenced.  Opp'n at

16  23.  Citing to Texas Business and Commerce Code section 17.505(a),

17  Plaintiffs argue that failure to comply with the notice requirement

18  merely results in abatement of the claims, not in their dismissal.

19  Id. at 24.  However, as Clorox points out, section 17.505(a) is

20  inapplicable here since it relates to DTPA claims, not claims for

21  breach of warranty.  Even if post-suit notice were permitted, it

22  was provided too late.  The relevant statutory provision, section

23  2.607(c)(1), requires that a plaintiff provide notice "within a

24  reasonable time" after he or she learns of the breach.  Plaintiffs

25  allegedly learned of the defects in Fresh Step through the C&D

26  lawsuits, which were filed in early 2011, and Plaintiffs did not

27  provide notice until April 2013.

28      Accordingly, the Texas Plaintiffs' claim for breach of express

warranty is DISMISSED WITH PREJUDICE.

### 3.   Unjust Enrichment

Finally, Clorox argues that there is no independent cause of action for unjust enrichment under Texas law.  Mot. at 23 (citing Hancock v. Chicago Title Ins. Co., 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009)).  As Plaintiffs point out, some Texas courts have treated unjust enrichment as an independent cause of action.  See Newington Ltd. v. Forrester, 3:08-CV-0864-G, 2008 WL 4908200, at *4-5 (N.D. Tex. Nov. 13, 2008).  However, even this authority recognizes that many courts merely view unjust enrichment as a theory of recovery.  See id.  And in those cases, a plaintiff must still show that a defendant obtained a benefit through fraud, duress, or taking undue advantage.  See id.  Thus, to the extent that the Texas Plaintiffs can state a cause of action for unjust enrichment, that claim is duplicative of their other causes of action.  Accordingly, the Court sides with the majority of courts, and dismisses the Texas Plaintiffs' claim for unjust enrichment. See Vigo v. Reed, 3:11-CV-2044-G, 2013 WL 786925 (N.D. Tex. Mar. 4, 2013); Hancock, 635 F. Supp. 2d at 560.

## V.   CONCLUSION

For the foregoing reasons, Clorox's motion for judgment on the pleadings is GRANTED in part and DENIED in part.

- The New York Plaintiff's GBL claims are DISMISSED WITH LEAVE TO AMEND.

- The Florida Plaintiffs' FDUTPA claim is DISMISSED WITH LEAVE TO AMEND.

United States District Court
For the Northern District of California

- The Texas Plaintiffs' DTPA CLAIM is DISMISSED WITH PREJUDICE to the extent that is premised on unconscionable conduct and remains undisturbed in all other respects.
- Plaintiffs' claim for breach of express warranty is DIMISSED WITH PREJUDICE as to the New Jersey Plaintiff and the Texas Plaintiffs.
- Plaintiffs' claim for unjust enrichment is DISMISSED WITH PREJUDICE as to the New Jersey Plaintiff, the New York Plaintiff, the Florida Plaintiffs, and the Texas Plaintiffs.

Plaintiffs shall file an amended complaint within thirty (30) days of the signature date of this Order.  Failure to file an amended complaint may result in dismissal with prejudice of Plaintiffs' GBL and FDUTPA claims.  Plaintiffs' amendments should only address the pleading defects discussed above.  Any other amendments should be made in compliance with Federal Rule of Civil Procedure 15.

IT IS SO ORDERED.

Dated:  July 31, 2013

_____
UNITED STATES DISTRICT JUDGE