United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CLOROX CONSUMER LITIGATION | ) Master File No. 12-00280 SC |
| | ) |
| | ) ORDER DENYING MOTION FOR CLASS |
| | ) CERTIFICATION |
| | ) |
| This Document Relates To: | ) |
| | ) |
| ALL ACTIONS | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## I.  **INTRODUCTION**

Plaintiffs bring this putative class action against Defendant
The Clorox Company ("Clorox") in connection with its marketing and
advertising of Fresh Step cat litter.  Plaintiffs now move to
certify five plaintiff sub-classes, each distinguished by the state
in which the plaintiff purchased his or her cat litter.  ECF No. 89
("Mot.") (filed under seal) at 7-14.  The motion is fully briefed.[1]

[1] ECF Nos. 108-4 ("Opp'n") (filed under seal); 115-4 ("Reply")
(filed under seal); 127 ("Pls. Supp. Brief"); 128-4 ("Defs. Supp.
Brief") (filed under seal).  Clorox has moved to strike new
arguments and evidence from Plaintiffs' reply -- mainly regarding
ascertainability -- or, in the alternative, for leave to file a
surreply.  ECF No. 116 ("MTS").  Plaintiffs have opposed these
motions.  ECF No. 118 ("MTS Opp'n").  Because Clorox devoted a
large section of its brief to ascertainability, it was appropriate
for Plaintiffs to respond.  Additionally, one of the cases on which
Clorox primarily relies was decided only one day before Plaintiffs
filed their motion.  Thus the Court is willing to consider the

United States District Court
For the Northern District of California

1   Pursuant to Civil Local Rule 7-1(b), the Court finds this matter

2   appropriate for disposition without oral argument.  For the reasons

3   set forth below, Plaintiffs' motion is DENIED.

4

5   **II.    <u>BACKGROUND</u>**

6        A detailed discussion of this case's background appears in the

7   Court's order on Clorox's motion to dismiss.  <u>See</u> <u>In re Clorox</u>

8   <u>Consumer Litig.</u>, 894 F. Supp. 2d 1224, 1228-31 (N.D. Cal. 2012).

9   The basic facts are these: Clorox's Fresh Step cat litter uses

10  carbon to eliminate cat litter odors, whereas other cat litter

11  products typically use baking soda.  Clorox's marketing campaign

12  allegedly conveys that Fresh Step is more effective at eliminating

13  cat odors than products that do not contain carbon.  Plaintiffs,

14  consumers of Fresh Step from five different states, allege that

15  these statements are false and misleading and are contradicted by

16  scientific studies.

17       The lead plaintiffs in the case purport to represent five sub-

18  classes, each identified by the state in which the plaintiff

19  purchased his or her Clorox cat litter.  Specifically, Plaintiffs

20  seek certification of sub-classes including all purchasers of Fresh

21  Step between October 2010 and the present in the states of

22  California, Florida, New Jersey, New York, and Texas.  Mot. at 7-

23  14.

24  ///

25  ///

26  _____

    arguments and new evidence that Plaintiffs offer for the first time
27  on reply.  However, the Court's lenience should not deprive Clorox
    of an opportunity to respond.  Clorox's motion to strike is DENIED,
28  but its alternative motion to file a surreply is GRANTED.

**United States District Court**
For the Northern District of California

III.  **LEGAL STANDARD**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011) (internal quotations and citations omitted). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. (internal quotations and citations omitted). "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." Wolph v. Acer Am. Corp., 272 F.R.D. 477, 482 (N.D. Cal. 2011).

Under Rule 23(a), four prerequisites must be satisfied for class certification:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

A plaintiff also must satisfy one or more of the separate prerequisites set forth in Rule 23(b). Plaintiffs move for certification under Rule 23(b)(3), which requires that common questions of law or fact predominate and that the class action is superior to other available methods of adjudication.

**United States District Court**
For the Northern District of California

1       "Rule 23 does not set forth a mere pleading standard.  A

2   party seeking class certification must affirmatively

3   demonstrate his compliance with the Rule -- that is, he must

4   be prepared to prove that there are in fact sufficiently

5   numerous parties, common questions of law or fact, etc."

6   Dukes, 131 S. Ct. at 2551 (emphasis deleted).  Analysis of

7   these factors "generally involves considerations that are

8   enmeshed in the factual and legal issues comprising the

9   plaintiff's cause of action."  Id. at 2552 (internal

10  quotations and citations omitted).  "Nor is there anything

11  unusual about that consequence: The necessity of touching

12  aspects of the merits in order to resolve preliminary matters,

13  e.g., jurisdiction and venue, is a familiar feature of

14  litigation."  Id.

15

16  **IV.   DISCUSSION**

17      Plaintiffs' motion for class certification is denied because

18  the class is not ascertainable and because common questions do not

19  predominate, as required by Rule 23(b)(3).  Accordingly, this

20  discussion focuses mostly on those issues, but the Court mentions

21  the other class certification requirements (at least briefly) for

22  the sake of completeness.

23      **A.   Ascertainability**

24      "A class definition should be precise, objective, and

25  presently ascertainable."  O'Connor v. Boeing N. Am., Inc., 184

26  F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotations omitted).

27  "While the identity of the class members need not be known at the

28  time of certification, class membership must be clearly

1   ascertainable.   The class definition must be sufficiently definite

2   so that it is administratively feasible to determine whether a

3   particular person is a class member."   <u>Wolph</u>, 272 F.R.D. at 482

4   (internal citations omitted).   Though there is a split among

5   district courts in the Ninth Circuit on the issue, the undersigned

6   has followed the guidance of the Third Circuit in requiring

7   plaintiffs to "show, by a preponderance of the evidence, that the

8   class is currently and readily ascertainable based on objective

9   criteria."   <u>Carrera v. Bayer Corp.</u>, 727 F.3d 300, 306 (3d Cir.

10  2013) (internal quotation marks omitted).   In a consumer class

11  action, like this one, where Plaintiffs intend to rely on retailer

12  records, Plaintiffs must produce sufficient evidence to show that

13  such records can be used to identify class members.   <u>Sethavanish v.</u>

14  <u>ZonePerfect Nutrition Co.</u>, 12-2907-SC, 2014 WL 580696, at *4-6

15  (N.D. Cal. Feb. 13, 2014) (citing <u>Carrera</u>, 727 F.3d at 308-09).

16  Affidavits from consumers alone are insufficient to identify

17  members of the class.   <u>Carrera</u>, 727 F.3d at 306.

18      The problem Plaintiffs face is figuring out exactly who

19  purchased Fresh Step during the class period.   In their motion,

20  Plaintiffs do not propose any method for making this determination.

21  None of the named plaintiffs in this case, for example, kept

22  receipts for their purchases of Fresh Step.   ECF Nos. 108-8

23  ("Butler-Furr Depo.") at 39:3-5; 109-2 ("Lenz Depo.") at 14:22-24;

24  109-3 ("Luszcz Depo.") at 44:1-13; 109-4 ("Kowalewski Depo.") at

25  49:24-50:5; 109-5 ("Doyle Depo.") at 28:16-18.[2]   Nor do consumers

26  necessarily remember when they bought cat litter, or which sizes,

27
28  [2] One plaintiff, Ms. Kristin Luszcz, apparently began keeping
    receipts from her Fresh Step purchases <u>after</u> filing this lawsuit.
    Luszcz Depo. at 44:1-6.

types, or even brands of cat litter they purchased.  Butler-Furr
Depo. at 39:6-10; Kowalewski Depo. at 49:2-10; Doyle Depo. at
27:22-28:9.  One of the plaintiffs in this case apparently cannot
even recall whether she bought Fresh Step during the class period;
Ms. Doyle testified at her deposition that the last time she bought
Fresh Step was "around 2009."  Doyle Depo. at 36:14-18, 37:17-21,
54:14-55:21.  But the class includes only persons who purchased
Fresh Step between October 2010 and the present.  That is precisely
why affidavits from consumers are insufficient to identify the
class.

In their reply brief, Plaintiffs indicate that the classes
might be ascertained by obtaining records from Clorox or from the
retailers who sell Fresh Step.  Reply at 8.  Plaintiffs assert that
this method of ascertaining the classes will capture "a substantial
number of Class members."  Id.  To support their assertions,
Plaintiffs contacted sixteen Fresh Step retailers, which together
account for about 85 percent of Fresh Step sales nationwide.  ECF
No. 115-8 ("Dearman Decl.") (filed under seal) ¶ 15.  Of those
sixteen retailers, five have not responded or refused to turn over
any information.  Id. ¶¶ 17-19.  Six of the retailers do not have
any method for tracking Fresh Step purchases.  Id. ¶¶ 20.  Of the
five retailers who had relevant information and were willing to
provide it, few provided sufficient information to help Plaintiffs
ascertain the class.

Target is the most helpful for Plaintiffs.  It can identify
customers who made purchases with "trackable" cards.  Id. Ex. 16
(filed under seal).  In Target's case, the purchaser is
identifiable in about 67 percent of (approximately 18 million)

**United States District Court**
For the Northern District of California

1 Fresh Step transactions.  Dearman Decl. ¶ 21(b), Ex. 16.

2 Similarly, PetSmart can identify 2.1 million Fresh Step customers,

3 but it is not clear what portion of their Fresh Step sales those

4 identifiable customers represent.

5      Pet Supermarket, Inc. provided a spreadsheet containing

6 information on purchasers of Fresh Step since 2009.  Plaintiffs

7 claim that the spreadsheet identifies purchasers for 74,977 units

8 of Fresh step between 2010 and present.  Id. ¶21(a), Ex. 16 (filed

9 under seal).  Defendants counter, however, that "the vast majority"

10 of consumers identified on the spreadsheet are not members of any

11 putative class -- only five are from New Jersey, and only ten are

12 from New York.  ECF No. 117-3 ("Surreply") at 3.  Regardless, Pet

13 Supermarket can only identify purchasers who used the company's

14 loyalty card program.  Dearman Decl. Ex. 15 (filed under seal).

15 Those 74,977 units represent only a tiny fraction of Fresh Step

16 purchases.

17      Wal-Mart and Sam's Club estimate that approximately 4.3

18 million individuals may have purchased Fresh Step at their retail

19 locations or online.  However, in only about 18 percent of

20 transactions are the individual customers identifiable.  Dearman

21 Decl. ¶ 21(c).

22      Clorox itself does not sell Fresh Step directly to consumers,

23 but it does have a "Paw Points" loyalty program that Plaintiffs

24 argue might be able to identify some class members.  Reply at 8.

25 However, only about five percent of Fresh Step purchases in

26 California, New York, New Jersey, Texas, and Florida were

27 registered through the Paw Points program.  Even were this number

28 larger, the Paw Points program's utility in determining class

membership would be limited.  The program does not collect
information on the date of purchase, and the location it records is
the customer's address, rather than the location of the store where
the product was purchased.  Dearman Decl. ¶¶ 25-26.

Plaintiffs' evidence demonstrates quite clearly that there is
no administratively feasible method for ascertaining the plaintiff
classes.  Customers do not remember when they purchased Fresh Step
cat litter or how much they bought.  Of the retailers who responded
to Plaintiffs' inquiries, six do not have any way of identifying
Fresh Step purchasers.  Five can track some customers through
loyalty programs or store credit cards, but three of those five can
identify customers in only a small minority of Fresh Step
transactions.  Ultimately, only two of the sixteen retailers
Plaintiffs contacted can help identify a substantial number of
plaintiffs.  The Court finds that there is no administratively
feasible method of determining membership for the vast majority of
potential members of Plaintiffs' proposed sub-classes.  Therefore,
Plaintiffs' proposed classes are not ascertainable.  On this ground
alone, their motion is DENIED.

**B.   Rule 23(a) Requirements**

Rule 23(a) requires numerosity, commonality, typicality, and
adequacy of representation.  See Mazza v. Am. Honda Motor Co.,
Inc., 666 F.3d 581, 588 (9th Cir. 2012).

**1.   Numerosity**

Federal Rule of Civil Procedure 23(a)(1) requires that the
proposed classes be "so numerous that joinder of all members is
impracticable."  Generally, "classes of forty or more are
considered sufficiently numerous."  Delarosa v. Boiron, Inc., 275

1   F.R.D. 582, 587 (C.D. Cal. 2011).  Plaintiffs demonstrate using

2   sales figures that at least tens of thousands of people purchased

3   Fresh Step in each of the relevant states.  Defendants do not

4   contest these claims.  The Court finds that the numerosity

5   requirement of Rule 23 is met.

6          **2.   <u>Commonality</u>**

7       Rule 23 also requires that "there be questions of law or fact

8   common to the class." Fed. R. Civ. P. 23(a)(2).  "This does not

9   mean merely that [all plaintiffs have] suffered a violation of the

10  same provision of law. . . .  Their claims must depend upon a

11  common contention . . . .  That common contention, moreover, must

12  be of such a nature that it is capable of classwide resolution --

13  which means that determination of its truth or falsity will resolve

14  an issue that is central to the validity of each one of the claims

15  in one stroke." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541,

16  2551 (2011).  Nonetheless, "Rule 23(a)(2) has been construed

17  permissively." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th

18  Cir. 1998).

19      Plaintiffs argue that there are a number of common questions

20  of law and fact that govern the claims of all members of the

21  proposed classes.  These questions mostly concern Clorox's claims

22  that Fresh Step is superior to other cat litter brands -- such as

23  the truthfulness and materiality of those claims, and whether they

24  were likely to deceive a reasonable consumer.  Mot. at 18.  In

25  response, Clorox argues that those questions are not actually

26  common to all members of the proposed classes.  Plaintiffs'

27  proposed classes include all purchasers of Fresh Step.  Clorox

28  argues that some Fresh Step purchasers likely never saw the

**United States District Court**
For the Northern District of California

1    allegedly misleading statements, did not rely on them, or did not

2    actually find them to be false.  Therefore, Clorox contends,

3    questions regarding those claims are not common to the entire

4    class.

5         The Court need not resolve this issue.  Rule 23(b)(3) includes

6    a related, but additional, requirement that these common questions

7    predominate over questions affecting only individual class members.

8    "The commonality preconditions of Rule 23(a)(2) are less rigorous

9    than the companion requirements of Rule 23(b)(3)."  Hanlon, 150

10   F.3d at 1019.  Consequently the Court assumes arguendo that at

11   least one of these questions is common to the proposed classes.

12   But, as discussed in Part IV.C.1, below, the Court finds that the

13   questions Plaintiffs cite as common to the classes do not

14   predominate over individual concerns.

15             **3.   <u>Typicality</u>**

16        The Ninth Circuit has interpreted the typicality requirement,

17   like the commonality requirement, permissively.  Typicality

18   requires that the class representatives' claims be "reasonably co-

19   extensive with those of absent class members; they need not be

20   substantially identical."  Hanlon, 150 F.3d at 1020.  Clorox argues

21   that Plaintiffs' claims are not typical because consumers of Fresh

22   Step used and experienced the product differently.  For example,

23   one plaintiff claims that Fresh Step did not work at all, while

24   another says it was as effective as any other brand of cat litter

25   (just not better).  See Lenz Depo. at 76:4-19; ECF No. 109-1

26   ("Sterritt Depo.") at 131:6-14; see also Opp'n at 39-40.

27        The Court finds these arguments unconvincing.  "In determining

28   whether typicality is met, the focus should be on the defendants'

**United States District Court**
For the Northern District of California

conduct and plaintiff's legal theory, not the injury caused to the plaintiff.  Typicality does not require that all class members suffer the same injury as the named class representative." <u>Simpson v. Fireman's Fund Ins. Co.</u>, 231 F.R.D. 391, 396 (N.D. Cal. 2005). All of the claims that plaintiffs bring here are similar: they all allege that they saw Clorox's allegedly misleading statements, purchased Fresh Step because of those statements, paid more for Fresh Step than they would have for other brands, and did not find Fresh Step to work better than other brands. <u>See</u> Reply at 13. Clorox's alleged conduct and Plaintiffs' legal theories are the same, regardless of variations in their individual experiences with Fresh Step.

Of course, these similarities apply only to the extent that class members have any claim at all.  Plaintiffs' proposed classes are hopelessly overbroad and include many persons who likely never saw the allegedly misleading statements.  Those class members therefore could not have relied on the alleged misrepresentations to purchase Fresh Step.  However, the clearest analytical framework for the over breadth of the proposed classes is the predominance issue (again, see Part IV.C.1, below).

### 4. <u>Adequacy of Representation</u>

The Ninth Circuit applies a two-part test to determine the adequacy of class representation.  First, the representative plaintiffs and their counsel must not have conflicts of interest with other class members.  Second, the representative plaintiffs and their counsel must prosecute the action vigorously on behalf of the class. <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 957 (9th Cir. 2003).

There is no evidence of conflicts of interest between the lead plaintiffs, their counsel, and other class members. To the extent that members of the proposed classes have claims against Clorox, those claims all arise under the same legal theories and substantially similar facts. Thus, there is no indication that their theories of liability or legal arguments will create any sort of conflict.

With regard to the second part of the test, there is again nothing to suggest that the lead plaintiffs or their counsel will fail to adequately represent the class. Plaintiffs' attorneys are experienced class action litigators who have prosecuted this litigation since it was filed in early 2012.

Clorox argues in a footnote that Plaintiffs do not adequately represent their sub-classes for a variety of reasons including lack of typicality, lack of membership in the proposed classes, criminal history, and credibility concerns. Opp'n at 40 n.19. Because the Court denies Plaintiffs' motion on other grounds, it declines to examine these specific claims.

**C.  Rule 23(b)(3) Requirements**

In addition to satisfying the requirements of Rule 23(a), a class action must fit at least one of the categories defined in Rule 23(b). Plaintiffs assert that this class action qualifies under Rule 23(b)(3). Mot. at 22. That Rule requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating controversy." Fed. R. Civ. P. 23(b)(3).

United States District Court
For the Northern District of California

12

**United States District Court**
For the Northern District of California

1

### 1. <u>Predominance</u>

The burden of demonstrating that common questions predominate lies with the party seeking class certification. <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1188 (9th Cir. 2001). Plaintiffs argue that questions common to all class members predominate here. These questions mostly concern Clorox's claims that Fresh Step is superior to other cat litter brands. Mot. at 18. Clorox argues that common issues do not predominate for a variety of reasons, including that many, or even most, members of the proposed classes did not see, much less rely upon, the allegedly misleading superiority claims. Opp'n at 25-30. The Court finds that these individual questions predominate; Plaintiffs cannot demonstrate that enough members of the proposed classes saw the allegedly misleading messages.

This inquiry is complicated by the fact that Plaintiffs have amended their complaint, adding new statements they claim were misleading to consumers. Plaintiffs' original complaint only identified allegedly misleading statements in Clorox's television commercials. ECF No. 1 ¶¶ 1-8. Five days after moving to file certain portions of their class certification motion under seal, Plaintiffs filed their third amended complaint, alleging that some variants of Fresh Step packaging also included misleading statements. ECF No. 93 ("TAC") ¶¶ 2-9. However, the third amended complaint still defines the beginning of the class period by the airdate of the first television commercials, and the bulk of Plaintiffs' allegations still focuses on the commercials. <u>Id.</u> ¶¶ 6-9, 33-39.

///

13

**United States District Court**
For the Northern District of California

Clorox argues that the television commercials reached only a very limited audience.  The four commercials Plaintiffs identify ran for a total of only sixteen months.  Reply at 1.  Additionally, in mid-2011, several months before this class action was filed, Clorox commissioned an advertising analytics company to assess the commercials' effectiveness.  The results indicated that "not enough people are seeing, or possibly remembering, the advertising."  <u>See</u> ECF No. 108-25, at CL1560 (filed under seal); Opp'n at 9-10.  Plaintiffs counter that the misleading statements also appear on Fresh Step packaging, resulting in a "uniform message to consumers."  Reply at 1.

That is not the case.  The allegedly misleading statements are limited to claims that Fresh Step eliminates odors <u>better</u> than other brands because it contains carbon.  The complaint does <u>not</u> allege that statements that Fresh Step contains carbon, or even that claims that carbon eliminates odor, were misleading.  According to the complaint, only claims that Fresh Step is superior to other brands because of its carbon content is misleading.  This so-called "superiority message" appeared only on the <u>back</u> of <u>some</u> Fresh Step packaging during the proposed class period.  Plaintiffs provide two examples of such packaging; Clorox has submitted ten versions of Fresh Step packaging that express no superiority claims.[3]  Plaintiffs do not produce any evidence as to the

---

[3] Clorox asserts that "nearly <u>ten dozen</u> different packagings were used during the proposed class <u>period</u>, almost all of which did <u>not</u> include the carbon superiority language." Opp'n at 13.  However, Clorox does not cite to the record in support of this proposition. Nonetheless, Plaintiffs do not dispute Clorox's figure.  Plaintiffs provide only two examples of packaging containing the "superiority message," while Clorox provides ten that do not.  <u>See</u> TAC ¶ 5, ECF No. 109 ("Lee Decl.") Exs. 39-44, 50-53.

**United States District Court**
For the Northern District of California

percentage of Fresh Step units that included the allegedly misleading messages. Moreover, Clorox has provided evidence that only 11 percent of consumers read the back panel of cat litter packaging.[4] ECF No. 108-41, at CL5029 (filed under seal).

The effect that this lack of a consistent message has on Plaintiffs' motion varies according to state law. The consumer protection laws in California, Texas, New York, New Jersey, and Florida differ significantly in the protection they offer to potential class action plaintiffs. Generally speaking, however, two concepts are crucial: exposure and causation. That is, plaintiffs must be <u>exposed</u> to allegedly misleading statements, and those statements must <u>cause</u> them harm. All states require both, though the required proof of causation varies greatly; indeed, some states require <u>reliance</u> rather than <u>causation</u>. For example, New Jersey law infers causation in many instances, while Texas generally requires proof that each individual plaintiff relied on the allegedly misleading statements. Plaintiffs do not distinguish between reliance and exposure, and they offer no individualized proof of either. Though Plaintiffs may be entitled to a class-wide presumption of reliance in some states, a plaintiff can only reasonably be presumed to rely upon information he actually received. The problem Plaintiffs face is that there is powerful evidence that most members of the proposed classes probably never

---

[4] At least, that is how Clorox interprets the survey data. <u>See</u> Opp'n at 13. However, the Court's reading of the evidence is that only 11 percent of customers who read the packaging <u>at all</u> read the back panel. Only 37 percent of customers read the packaging at all, and only 11 percent <u>of those</u> read the back panel. Thus it appears that only about <u>four percent</u> of all cat litter customers read the back panel. Regardless, the percentage of customers who read the back panel is very low.

**United States District Court**
For the Northern District of California

saw the allegedly misleading statements. The television commercials ran for only a small part of the class period, and the superiority claims appeared in small print on the back of a minority of Fresh Step packages. Regardless of the generosity of the various states' causation or reliance requirements, Plaintiffs simply cannot demonstrate that the proposed classes were uniformly exposed to the allegedly misleading messages. The Court proceeds to analyze each proposed sub-class by state.

### i. <u>California</u>

Under California law, a class-wide presumption of reliance upon an allegedly misleading message may be appropriate in some cases. Plaintiffs urge the Court to "presume[] that all class members relied on Clorox's odor superiority misrepresentation." Reply at 10. Bizarrely, Plaintiffs cite a California Supreme Court case for the proposition that "[i]t is well-settled in the Ninth Circuit that class-wide reliance is presumed where a misrepresentation is 'material.'" <u>Id.</u> It is possible that Plaintiffs meant to argue that California Supreme Court precedent governs the application of California law when federal courts apply it.[5] Even if that were Plaintiffs' intended argument, they read the case they cite for a much broader proposition than it supports.

---

[5] Plaintiffs also cite a single case from this District that followed the California case on a different issue, holding that unnamed class members in an action brought under California's Unfair Competition Law need not establish standing. Reply at 10 (citing <u>Chavez v. Blue Sky Natural Beverage Co.</u>, 268 F.R.D. 365, 376 (N.D. Cal. 2010)). The issue here is not standing but predominance, and the Ninth Circuit has made clear that they are distinct inquiries. <u>See</u> <u>Mazza</u>, 666 F.3d at 595-96 (class had standing despite lack of proof of reliance or injury, but lack of evidence of reliance still meant that individual questions predominated).

**United States District Court**
For the Northern District of California

Plaintiffs appear, remarkably, to argue that any materially misleading product advertisement is automatically presumed under California law to reach and influence all of the product's customers. See Id. (citing In re Tobacco II Cases, 46 Cal. 4th 298, 326-27 (Cal. 2009)). The presumption established in Tobacco II was much more limited, and it applied only to reliance, not exposure. That is, it may be justified to presume that consumers who actually saw a materially misleading advertisement relied upon it. However, Tobacco II does not mean that Plaintiffs are entitled to a presumption that every purchaser of Fresh Step during the class period was exposed to the misleading statements.

Tobacco II involved cigarette advertising, and presumptions of exposure and reliance were justified by a "decades-long campaign of the tobacco industry to conceal the health risks of its product." Tobacco II, 46 Cal. 4th at 327. Since Tobacco II, both California state courts and federal courts in the Ninth Circuit -- when applying California law -- have refused to presume so broadly in other contexts. See, e.g., Mazza, 666 F.3d at 595 (presumption of reliance not justified under California law where it was likely that "many class members were never exposed to the allegedly misleading advertisements"); ConAgra Foods, C 12-01633 CRB, 2014 WL 2702726, at *14 (N.D. Cal. June 13, 2014) (examining treatment of Tobacco II in the Ninth Circuit and reaching same conclusion); Cohen v. DIRECTV, Inc., 178 Cal. App. 4th 966, 973 (Cal. Ct. App. 2009) ("An inference of classwide reliance cannot be made where there is no showing that representations were made uniformly to all members of the class.").

///

**United States District Court**
For the Northern District of California

1    "In the absence of the kind of massive advertising campaign at

2   issue in Tobacco II, the relevant class must be defined in such a

3   way as to include only members who were exposed to advertising that

4   is alleged to be materially misleading." Mazza, 666 F.3d at 596.

5   A sixteen-month television advertising campaign combined with

6   messages in small print on the back of a small minority of Fresh

7   Step packaging does not even approach the "massive advertising

8   campaign" at issue in Tobacco II. Plaintiffs' proposed class --

9   which includes all purchasers of Fresh Step in California over a

10  period of almost four years -- is not defined so as to include only

11  members who were exposed to the allegedly misleading material.

12  Without any evidence that Clorox included its superiority message

13  on a significant portion of Fresh Step products, or that consumers

14  actually saw it, Plaintiffs have no basis for their claim that

15  Clorox presented a uniform message to its customers. See also

16  ConAgra Foods, 2014 WL 2702726, at *14 (variations in labeling of

17  food products precluded cohesion among class members necessary for

18  class-wide presumption of reliance).

19      The Court finds that Plaintiffs are not entitled to a class-

20  wide presumption of reliance. Therefore, Plaintiffs must define

21  their classes to include only persons exposed the allegedly

22  misleading advertisement. Because Plaintiffs fail to do so,

23  "common questions of fact do not predominate where an

24  individualized case must be made for each member showing reliance."

25  Id. at 596. Plaintiffs' motion to certify the California sub-class

26  is DENIED because issues common to all class members do not

27  predominate over questions applicable only to individual members.

28  ///

### ii.  __Texas__

Plaintiffs' Texas sub-class brings a claim under the Texas Deceptive Trade Practices -- Consumer Protection Act Section 17.50(a)(1) ("DTP-CPA").  Pls. Supp. Brief. at 6.  The DTP-CTA requires a showing of reliance.  Tex. Bus. & Com. Code § 17.50(B). Individualized proof is required for Plaintiffs' claim under the DTP-CPA.  See Peltier Enters., Inc. v. Hilton, 51 S.W.3d 616, 624 (Tex. App. 2000) ("This claim requires individualized proof because reliance is an essential element of this DTPA claim.").  By requiring individual proof of reliance, the Texas Supreme Court "did not entirely preclude class actions in which reliance was an issue, but it did make such cases a near-impossibility."  Fid. & Guar. Life Ins. Co. v. Pina, 165 S.W.3d 416, 423 (Tex. App. 2005).

Plaintiffs' only response is to urge the court to "infer[] that no reasonable consumer would pay more for cat litter that said it provided superior odor control if it did not, in fact, provide that benefit."  Pls. Supp. Brief at 7 (emphasis in original).  That sort of inference is inappropriate under Texas law.  See Pina, 165 S.W.3d at 424 ("Despite the fact that the misrepresentation clearly occurred and the purchases were then made by all class members, the class also had to show that every purchaser relied on the misrepresentation in making the purchase.").  Even if such an inference were permitted, Clorox has provided sufficient evidence to rebut any claim that the inference would apply uniformly across the Texas sub-class.  This strict interpretation of Texas consumer protection laws has precluded class certification due to lack of predominance in cases analogous to this one.  See, e.g., Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 694 (Tex. 2002) ("[T]he

**United States District Court**
For the Northern District of California

1   plaintiffs in this case have failed to show that individual issues

2   of reliance do not preclude the necessary finding of

3   predominance . . . ."); <u>Pina</u>, S.W.3d at 425 ("[A]ppellees failed to

4   show that individualized determinations of reliance would not

5   predominate over common questions of law or fact."); <u>Ford Motor Co.</u>

6   <u>v. Ocanas</u>, 138 S.W.3d 447, 454 (Tex. App. 2004) ("[A]ppellee failed

7   to show that individualized determinations will not predominate

8   over common questions of law or fact . . . .").[6]

9        The Court finds that Texas law also precludes a presumption of

10   reliance in Plaintiffs' favor.  Accordingly, the Court DENIES

11   Plaintiffs' motion as to the Texas sub-class because issues common

12   to all class members do not predominate over questions applicable

13   only to individual members.

14        **iii.  <u>New York</u>**

15        The New York sub-class brings claims under New York General

16   Business Law Sections 349 and 350.  Neither of these claims

17   includes a reliance requirement.[7]  Even so, New York law requires

18   that "[i]n a class action alleging deceptive acts and practices and

19   false advertising, the proof must show that each plaintiff was

20   reasonably deceived by the defendant's misrepresentations or

21   omissions and was injured by reason thereof."  <u>Solomon v. Bell Atl.</u>

---

[6] These cases applied Texas Rule of Civil Procedure 42(b)(3), which
is virtually identical to Federal Rule of Civil Procedure 23(b)(3).

[7] Plaintiffs' briefs are contradictory on this issue.  <u>Compare</u> Mot.
at 12 ("A claim under Section 349 does not require a demonstration
of reliance, although a claim under Section 350 does.") <u>with</u> Pls.
Supp. Brief at 4 ("Reliance is not an element of either <u>claim</u>.").
According to New York law, the latter statement is accurate.  <u>See</u>
<u>Koch v. Acker, Merrall & Condit Co.</u>, 18 N.Y.3d 940, 941 (N.Y. <u>2012</u>)
("To the extent that the Appellate Division order imposed a
reliance requirement on General Business Law §§ 349 and 350 claims,
it was error.").

1 Corp., 9 A.D.3d 49, 52 (N.Y. App. Div. 2004).  Plaintiffs argue

2 that "causation does not require individualized proof and can be

3 resolved on a classwide basis where, as here, a misrepresentation

4 is made uniformly to the class."  Mot. at 13.  Once again,

5 Plaintiffs are stymied by the fact that the alleged

6 misrepresentations were not made uniformly to the class.

7      Solomon illustrates this problem as it applies to cases, like

8 this one, where allegedly misleading statements did not necessarily

9 reach every member of a putative class.  The Solomon court held

10 that "class certification is not appropriate where the plaintiffs

11 do not point to any specific advertisement or public pronouncement

12 by the [defendants] which was undoubtedly seen by all class

13 members."  Solomon, 9 A.D.3d at 53 (citing Small v. Lorillard

14 Tobacco Co., Inc., 252 A.D.2d 1, 9 (N.Y. App. Div. 1998), aff'd, 94

15 N.Y.2d 43 (N.Y. 1999)).  Federal courts have followed these New

16 York cases in denying class certification:

17

18      Plaintiffs' proposed class makes no attempt to limit the
       class   to   persons   who   saw   or   heard   a   common
19     misrepresentation . . . .  Distinguishing   between   the
       different representations made to putative class members
20     would require individualized inquiries not suitable for
       class litigation.  Accordingly, this element supports
21     denying class certification.

22 In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II), CIV.A.

23 03-4558, 2012 WL 379944, at *14 (D.N.J. Feb. 6, 2012).  Like the

24 plaintiffs in Ford, Solomon, and Small, Plaintiffs in this case

25 failed to limit their proposed classes to persons who saw or heard

26 a common misrepresentation.  As in Solomon, "the individual

27 plaintiffs did not all see the same advertisements; some saw no

28 advertisements at all."  Solomon, 9 A.D.3d at 53.  Nor do

**United States District Court**
For the Northern District of California

1   Plaintiffs point to any specific advertisement that was seen by all

2   class members.  Rather, Plaintiffs point to a series of television

3   commercials and statements that appeared on a small minority of

4   Fresh Step packaging.  Plaintiffs have produced no evidence

5   whatsoever as to which or how many members of their proposed

6   classes ever saw these misrepresentations.  Nor do they attempt to

7   limit any of their proposed classes to persons who saw these

8   alleged misrepresentations.  As a result, common questions do not

9   predominate over individual issues under New York law, either.

10  Plaintiffs' motion to certify the New York sub-class is therefore

11  DENIED.

12              **iv.   New Jersey**

13      The parties agree that New Jersey imposes an "ascertainable

14  loss" requirement, rather than a reliance element through its

15  Consumer Fraud Act ("NJCFA").  Pls. Supp. Brief at 5-6; Defs. Supp.

16  Brief at 8-9; see also Elias v. Ungar's Food Prods., Inc., 252

17  F.R.D. 233, 239 (D.N.J. 2008) ("In place of the traditional

18  reliance element of fraud and misrepresentation, we have required

19  that plaintiffs demonstrate that they have sustained an

20  ascertainable loss.") (quoting Int'l Union of Operating Eng'rs

21  Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372, 391

22  (N.J. 2007)).  Thus stating a claim under the NJCFA requires

23  alleging three elements: (1) unlawful conduct; (2) an ascertainable

24  loss; and (3) a causal relationship between the defendants'

25  unlawful conduct and the plaintiff's ascertainable loss.  Merck,

26  192 N.J. at 389.

27      To establish the required causal relationship, the New Jersey

28  plaintiffs rely upon "a presumption of reliance and/or causation"

22

1   developed in <u>Varacallo v. Massachusetts Mutual Life Insurance Co.</u>,

2   752 A.2d 807, 817-18 (N.J. Super. Ct. App. Div. 2000).  <u>Varacallo</u>

3   specifically dealt with that presumption in situations where

4   "omissions of material fact are common to the class."  <u>Id.</u> at 817.

5   However, at least one federal court has extended the <u>Varacallo</u>

6   presumption to affirmative misrepresentations.  <u>See</u> <u>Elias</u>, 252

7   F.R.D. at 238.  Even assuming that the <u>Elias</u> court correctly

8   extended <u>Varacallo</u>, Plaintiffs in this case are still not entitled

9   to that presumption.  In <u>Elias</u>, the court wrote that the allegedly

10  misleading "statements to each purchaser are finite and readily

11  identifiable."  <u>Id.</u>  Additionally, the <u>Elias</u> court found that

12  "defendants' conduct subjected each purchaser to the same wrongful

13  course of conduct and thereby produced the same claims, supported

14  by the same evidence and responded to by defendants with the same

15  defenses."  <u>Id.</u> at 238-39.

16       The record simply does not support such a finding here.  The

17  alleged misrepresentations were made in television advertisements

18  that ran for about 16 months of the nearly four-year class period

19  and in small print on the back of a minority of Fresh Step

20  packagings.  It is likely that the majority of members of the New

21  Jersey sub-class never saw the allegedly misleading claims.

22  Consequently, Clorox's statements to each purchaser are <u>not</u> readily

23  identifiable; Clorox's conduct did <u>not</u> subject each purchaser to

24  the same wrongful conduct; and individualized evidence will be

25  required to support the New Jersey plaintiffs' claims.  Those

26  individual questions preclude a finding that questions common to

27  the New Jersey sub-class predominate over individualized issues.

28  Plaintiffs' motion to certify the New Jersey sub-class is DENIED.

**United States District Court**
For the Northern District of California

### v.   **Florida**

Florida consumer protection law does not require reliance but does require causation.  The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") permits a person "who has suffered a loss as a result of a violation of this part" to recover actual damages. Fla. Stat. § 501.211(2) (emphasis added).  One key Florida case on the reliance issue is Davis v. Powertel, Inc., 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000) ("A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.").  However, the Powertel decision has since been criticized for its failure to analyze the causation element. See Pop's Pancakes, Inc. v. NuCO2, Inc., 251 F.R.D. 677, 686-87 (S.D. Fla. 2008) (collecting cases).  Equally important, the Powertel court has since clarified that "[i]t does not follow, however, that because class litigation is possible in a statutory action for a deceptive trade practice, that it will always be appropriate. . . . We did not suggest otherwise in Powertel." Egwuatu v. S. Lubes, Inc., 976 So. 2d 50, 53 (Fla. Dist. Ct. App. 2008).  In Egwatu, the court concluded "that class litigation would be impractical because there would be many differences in the facts supporting the claims of the individual plaintiffs. This conclusion was based on the fact that the defendants have employed a variety of methods over the years to inform customers [of the alleged misrepresentation]."  Id.

Similarly, Plaintiffs allege here that Clorox employed a variety of methods over the years -- three different television commercials and two varieties of Fresh Step packaging -- to claim that Fresh Step is superior to other brands.  The Court finds that,

**United States District Court**
For the Northern District of California

as in <u>Egwatu</u>, there will be "many differences in the facts supporting the claims of the individual plaintiffs." <u>Id.</u>  Many members of the proposed Florida sub-class never saw the alleged misrepresentations.  Determining whether any individual member of the Florida sub-class has a claim against Clorox will therefore depend upon whether that person actually saw the misrepresentation. If a class member never saw Clorox's superiority message, it is impossible that he suffered damages as a result of Clorox's conduct.  The Court finds that questions common to the Florida sub-class do not predominate over such individualized issues. Accordingly, Plaintiffs' motion to certify the Florida sub-class is DENIED.

### 2.   <u>Measurement of Damages on a Class-Wide Basis</u>

The Supreme Court has interpreted Rule 23(b)(3) predominance to include a requirement that plaintiffs establish "that damages are capable of measurement on a classwide basis." <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426 (2013).  The parties disagree as to whether Plaintiffs had made that showing.  Plaintiffs have submitted two expert reports, one of which includes a class-wide damages measurement.  <u>See</u> Mot. at 24-25; ECF No. 89-6 ("Preston Rpt.") (filed under seal).  Clorox has moved to exclude both of Plaintiffs' expert reports on the grounds that the experts used unreliable methods.  ECF Nos. 114 (redacted version), 108-6 (unredacted version filed under seal).  Because the Court denies Plaintiffs' motion on other grounds, the thorough examination of the experts' reports required to resolve this objection is unnecessary.  Clorox's motion to exclude the expert testimony is therefore DENIED as moot.

**United States District Court**
For the Northern District of California

### 3.   **Superiority of Class Action**

The final Rule 23(b)(3) requirement is that a class action is superior to other available methods for fairly and effectively adjudicating the controversy.  Relevant to determining the superiority of the class action are: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23; see also ConAgra Foods, 2014 WL 2702726, at *23-24.

The problems Plaintiffs face with ascertainability and predominance are both pertinent to superiority as well.  The immense difficulty of determining class membership will make managing this case as a class action extremely complicated.  That alone may be sufficient to preclude a finding that a class action is the superior method for resolving this case.  See ConAgra Foods, 2014 WL 2702726, at *24 (finding it "not at all clear" that a class action was superior because "Plaintiffs have not proposed an adequate means of identifying each class member, which products each class member purchased, and how many products each class member purchased").  Additionally, the variations in Clorox's Fresh Step packaging during the proposed class period, and the fact that most class members likely never saw the allegedly misleading statements at all, create individualized questions that render a class action unmanageable.  See id. (variations in product labels

during the proposed class period were relevant to manageability of class action).

V.   **CONCLUSION**

For the reasons set forth above, Plaintiffs' motion for class certification is DENIED with respect to all five proposed sub-classes.


IT IS SO ORDERED.


Dated:  July 28, 2014                    _____

                                         UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California